**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TONI FIORE, JADE D'AMARIO, SEAN DUNN, and JOSHUA DUNN on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNIVERSITY OF TAMPA,<br><br>Defendant. | Case No. 7:20-cv-03744-CS<br><br>**AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Toni Fiore, Jade D'Amario, Sean Dunn, and Joshua Dunn ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant The University of Tampa ("UT" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1.     This is a class action lawsuit on behalf of all people who paid tuition and fees for the Spring 2020 academic semester at UT, and who, because of Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the education for which they paid, and/or the services or which their fees were paid, without having their tuition and fees refunded to them.

2.     Plaintiffs and UT entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees and UT, in exchange, would provide in-person educational services, experiences, opportunities, and other related facilities to Class Members, including Mr. Joshua Dunn. The terms of the contractual agreement where set forth in various

2

publications from UT, including but not limited to UT's Spring Semester 2020 Course Catalog

("Course Catalog"),[1] UT's Course Schedule Search and Registration,[2] course-specific syllabi,

and course schedules.

       3.     When Plaintiffs and Class Members sought to enter into a contractual agreement

with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs

and Class Members viewed the Course Catalog and Course Schedule Search and Registration to

make specific course selections prior to registering and paying for selected courses.

       4.     The Course Catalog provided Plaintiffs and Class Members with information

regarding every course offered for the Spring 2020 semester under a section called "Course

Descriptions."[3]  Indeed, in the entire Spring 2020 Course Catalog, only two course descriptions

mention online learning:  EDL 606 Educational Leadership Internship[4] and EDU 403

Technology in Education II.[5]  No other course description within the 590-page document makes

any mention of online instruction.  Moreover, the Course Catalog specifically allowed for

students to search for Spring Semester 2020 courses to enroll in based on "Method," with options

including "General Classroom," "Hybrid," and "Online."  An exemplar is pasted below:



---

[1] http://ut.smartcatalogiq.com/en/2019-2020/catalog
[2] https://www.ut.edu/academics/schedule-and-registration/course-schedule-search
[3] http://ut.smartcatalogiq.com/en/2019-2020/catalog/Course-Descriptions
[4] The EDL 606 Course Description says in part that "[t]he internship is accompanied by a hybrid/blended (50% face-to-face, 50% online) seminar…"
[5] The EDU 403 Course Description states that "[s]tudents form design and development teams to create an engaging online based learning experience."

5.      UT's Course Schedule Search and Registration also provided Plaintiffs and Class Members with information concerning a course's delivery mode (i.e., in-person), instructor, the days and times during which the courses would be held, and the location (including the building and room number) in which courses would be held.  Here too, UT makes no mention of online instruction and specifically references in-person education, as depicted in the screenshots below:



6.      Indeed, for every Spring 2020 class Joshua Dunn and Jade D'Amario registered for, UT represented that the "Delivery Mode" would be "In-Person."

7.      Furthermore, once students enrolled in classes, they would receive a course

4

schedule, which reinforced the in-person nature of the classes registered for by providing the on-campus building and classroom number where the course was to be held, along with the date, time, and instructor, as pictured below:

**Spring Term 2020 (01/21/2020 - 05/08/2020) - All Programs**

| Course | Title | Credits | Grading Type | Faculty/Meeting | | Dates | Room |
|---|---|---|---|---|---|---|---|
| BAC 100-1 | BACCALAUREATE DIGITAL SKILLS | 0.0 | SU | Lopez, Megan ✉ | 00:00-00:00AM | 01/21/2020 - 03/16/2020 | MAIN / / |
| BAC 101-B2 | FIRST YEAR SEMINAR I | 1.0 | LT | Mitryk, Caitlyn A. ✉ | T 08:00-08:50AM | 01/21/2020 - 05/08/2020 | MAIN / HSHP / 110 |
| CHE 150-I | CHEMISTRY FOR HEALTH CARE PROF | 4.0 | LT | Scharf, Nathan ✉ | MWF 02:30-03:45PM | 01/21/2020 - 05/08/2020 | MAIN / SFB / 287 |
| PHL 202-E | ETHICS | 4.0 | LT | Arvan, Marcus ✉ | MWF 11:30AM-12:40PM | 01/21/2020 - 05/08/2020 | MAIN / PH / 210 |
| PSY 101-G | GENERAL PSYCHOLOGY | 4.0 | LT | Stasio, Michael J ✉ | MWF 01:00-02:10PM | 01/21/2020 - 05/08/2020 | MAIN / PH / 220 |
| SOC 100-P2 | INTRO TO SOCIOLOGY | 4.0 | LT | Engelman, Douglas ✉ | TR 04:00-05:50PM | 01/21/2020 - 05/08/2020 | MAIN / SFB / 287 |

     8.     Other publications from UT reference the in-person nature of the Spring Semester 2020 course offerings, including course-specific syllabi, UT's General Attendance Policy within UT's Academic Policies and Procedures,[6] and UT's Faculty Policies and Procedures Handbook (the "Faculty Handbook").[7]  For instance, course-specific syllabi set forth the physical on-campus classroom where the course is to be held, along with the course's dates and meeting times.

     9.     Moreover, UT's General Attendance Policy describes expectations of UT

---

[6] ut.smartcatalogiq.com/2019-2020/catalog/Academic-Policies-and-Procedures/General-Attendance
[7] https://ut.smartcatalogiq.com/Faculty-Handbook/Faculty-Policies-and-Procedures-Handbook

students, stating that "Students are expected to attend classes. An academic program or individual instructor may require a specified level of attendance as a condition for successfully completing a course.  Likewise, instructors may assign a portion of final course grades based on attendance and/or participation.  Faculty must inform students of attendance requirements on syllabi."[8]

10.     UT's Faculty Handbook further states that "Faculty members are expected to be available to their students and to the University during the weeks of instruction of the fall and spring semesters" and that "[d]uring the fall and spring terms, faculty members are expected to keep a minimum of five office hours per week.  Scheduled office hours must be included in all course syllabi."[9]

11.     In addition, UT's Tuition and Fee Schedule provides many of the policies and procedures regarding tuition and fees, and the in-person nature of such.[10]  For example, the mandatory Student Service Fee "[p]rovides support for a number of student services, programs and activities."  *Id.*  And the mandatory Student Government Fee "[p]rovides basic support to student government, student productions, publications and other student-sponsored organizations."  *Id.*

12.     UT is a private university with a total enrollment of approximately 9,300 students. UT's campus is located in Tampa, Florida.  The university offers over 200 undergraduate and graduate degree programs.

---

[8] ut.smartcatalogiq.com/2019-2020/catalog/Academic-Policies-and-Procedures/General-Attendance
[9] https://ut.smartcatalogiq.com/Faculty-Handbook/Faculty-Policies-and-Procedures-Handbook/Chapter-3-Responsibilities-of-Faculty-Members/I-Instructional-Responsibilities-of-Faculty-Members/C-The-Faculty-Workday-and-Faculty-Office-Hours
[10] https://www.ut.edu/admissions/tuition-and-costs

13.     On March 11, 2020, Defendant, through a news release, announced that because of the global COVID-19 pandemic, all classes would move to online and remote instruction starting March 16.

14.     On March 17, 2020, Defendant informed students that all classes would be held remotely via online format through the end of the Spring 2020 Semester.

15.     UT's Spring Break was from March 8, 2020 to March 15, 2020.  Thus, UT has not held any in-person classes since Friday, March 6, 2020.  Classes that have continued have only been offered in an online format, with no in-person instruction.   Thus, UT did not provide in-person education, experiences, or related services for approximately 50% of the Spring Semester 2020.

16.     As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiffs and the putative class contracted and paid for.  The online learning options being offered to UT students are subpar in practically every aspect, from the lack of facilities, materials, and access to faculty. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.  The remote learning options are in no way the equivalent of the in-person education that Plaintiffs and the putative class members contracted and paid for.

17.     Plaintiffs and the putative class are therefore entitled to a refund of tuition and fees for in-person educational services, facilities, access and/or opportunities that Defendant has not provided.  Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

18.     Through this lawsuit Plaintiffs seek, for themselves and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the

7

amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided.  Plaintiffs seek a return of these amounts on behalf of themselves and the Class as defined below.

### PARTIES

19.     Plaintiff Toni Fiore is a citizen of New York.  Ms. Fiore is the parent of an undergraduate student at UT.  Ms. Fiore's daughter is pursuing a degree in Nursing.  The Nursing program at UT relies extensively on in-person instruction, peer collaboration, and access to other university facilities, including laboratories and affiliated clinical agencies and practices. None of these resources are available to Ms. Fiore's daughter while in-person classes are suspended.  Ms. Fiore paid Defendant approximately $11,205.04 in tuition, fees, meals, and housing for Spring 2020 Semester.  UT has not provided Ms. Fiore any refund of tuition or other mandatory fees, despite the fact that in-person classes were not held since March 6, 2020.

20.     Plaintiff Jade D'Amario is a citizen of New York. She is a full-time undergraduate student at UT, pursuing a degree in Nursing.  The Nursing program UT relies extensively on in-person instruction, peer collaboration, and access to UT's facilities, among others.  None of these resources were available to Ms. D'Amario while in-person classes are suspended.  Ms. D'Amario paid approximately $8,000 in tuition, fees, meals and housing to Defendant for the Spring 2020 semester.  Fees paid include a $425 Student Health Fee, a $96 Student Government Fee, and $480 Student Service Fee.  UT's Tuition and Fee Schedule provides that the mandatory Student Service Fee "[p]rovides support for a number of student services, programs and activities" and the mandatory Student Government Fee "[p]rovides basic support to student government, student productions, publications and other student-sponsored

organizations."[11] Thus, these mandatory fees are specifically intended to cover access to programs, facilities, activities, computing labs, and access to on-campus events, all of which Plaintiffs and Class Members could no longer partake in.  Ms. D'Amario has not been provided a refund of any tuition or other mandatory fees, despite the fact that in-person classes were not held since March 6, 2020.

21.     Prior to beginning the Spring Semester 2020, and prior to paying tuition and fees, Ms. D'Amario consulted the Course Catalog and Course Schedule and Registration and enrolled in courses for the Spring Semester 2020.  In consulting the Course Catalog and Course Schedule Search and Registration, Ms. D'Amario understood and believed that every course in which she enrolled was to be taught in-person.  Her understanding and belief was based on the course specifying an on-campus location where the course would be taught, as well as that the courses did not display a "Method" or "Delivery Mode" of "Online" on the Course Catalog or Course Schedule and Registration.  Thus, the in-person nature of the courses was part of the benefit of the bargain, and Ms. D'Amario would not have paid as much, if any, tuition and fees for the Spring Semester 2020 at UT had she known that the courses would not, in fact, be taught in-person.

22.     Plaintiff Sean Dunn is a citizen of Connecticut.  Mr. Dunn is the parent of an undergraduate student at UT.  Mr. Dunn's son is pursuing an undergraduate degree in Biology. The Biology program at UT relies extensively on in-person instruction, peer collaboration, and access to UT's laboratory facilities, among others.  None of these resources were available to Mr. Dunn's son while in-person classes are suspended.  Mr. Dunn paid approximately $12,500 in tuition, fees, meals and housing to Defendant for the Spring 2020 semester.  Mr. Dunn has not

---

[11] https://www.ut.edu/admissions/tuition-and-costs

been provided a refund of any tuition or other mandatory fees, despite the fact that in-person classes were not held since March 6, 2020.

23.    Plaintiff Joshua Dunn is a citizen of Connecticut. He is a full-time undergraduate student at UT, pursuing a degree in Biology.  The Biology program UT relies extensively on in-person instruction, peer collaboration, and access to UT's laboratory facilities, among others. None of these resources were available to Mr. Dunn while in-person classes are suspended.  Mr. Dunn paid approximately $7,000 in tuition, fees, meals and housing to Defendant for the Spring 2020 semester.  Fees paid include a $425 Student Health Fee, a $96 Student Government Fee, and a $480 Student Service Fee.  UT's Tuition and Fee Schedule provides that the mandatory Student Service Fee "[p]rovides support for a number of student services, programs and activities" and the mandatory Student Government Fee "[p]rovides basic support to student government, student productions, publications and other student-sponsored organizations."[12] Thus, these mandatory fees are specifically intended to cover access to programs, facilities, activities, computing labs, and access to on-campus events, all of which Plaintiffs and Class Members could no longer partake in.  Mr. Dunn has not been provided a refund of any tuition or other mandatory fees, despite the fact that in-person classes were not held since March 6, 2020.

24.    Prior to beginning the Spring Semester 2020, and prior to paying tuition and fees, Mr. Dunn consulted the Course Catalog and Course Schedule and Registration and enrolled in courses for the Spring Semester 2020.  In consulting the Course Catalog and Course Schedule Search and Registration, Mr. Dunn understood and believed that every course in which he enrolled was to be taught in-person.  His understanding and belief was based on the course specifying an on-campus location where the course would be taught, as well as that the courses

---

[12] https://www.ut.edu/admissions/tuition-and-costs

did not display a "Method" or "Delivery Mode" of "Online" on the Course Catalog or Course

Schedule and Registration.  Thus, the in-person nature of the courses was part of the benefit of

the bargain, and Mr. Dunn would not have paid as much, if any, tuition and fees for the Spring

Semester

26.    Defendant The University of Tampa is a private university with is principal place

of business at 401 W. Kennedy Blvd., Tampa, Florida 33606.

## JURISDICTION AND VENUE

26.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A),

as modified by the Class Action Fairness Act of 2005, because at least one member of the Class,

as defined below, is a citizen of a different state than Defendant, there are more than 100

members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of

interest and costs.

27.    This Court has personal jurisdiction over Defendant because many of the acts and

transactions giving rise to this action occurred in this District, and because Defendant conducts

substantial business in this District and has sufficient minimum contacts with New York.

Defendant has solicited students residing in New York to attend its institution; has accepted

money, including application fees, tuition, and other fees from students residing in New York,

has websites accessible to students in New York, has entered into contracts with New York

residents, and generally has minimum contacts in New York sufficient to satisfy the Due Process

Clauses of the New York and United States Constitutions.

28.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the

acts and transactions giving rise to this action occurred in this District, and because Plaintiff

Fiore is a resident of this District.

## FACTUAL ALLEGATIONS

### *Plaintiffs And Class Members Paid Tuition And Fees For Spring Semester 2020*

29.    Plaintiffs and Class members are individuals who paid the cost of tuition and other mandatory fees for the Spring 2020 Semester at UT.

30.    Spring Semester 2020 classes at UT began on or about January 21, 2020.  Final exams for the Semester concluded on May 8, 2020.

31.    Plaintiffs and Class members paid the cost of tuition for the Spring Semester 2020, as well as associated fees and costs.

32.    Examples of approximate tuition costs at UT for the Spring Semester 2020 are as follows:

- Undergraduate:  $14,401
- Executive MBA:  $12,528.75
- Physician Assistant Medicine:  $14,000

33.    Fees paid by or on behalf of UT students vary based on program of study. However, all full-time undergraduate students pay mandatory fees of approximately $2,082.

34.    The tuition and fees described in the paragraphs above are provided by way of example; total damage amounts – which may include other fees that are not listed herein but that were not refunded – will be proven at trial.

35.    Prior to beginning the Spring 2020 semester, and prior to paying tuition and fees, Plaintiffs consulted the Course Catalog and Course Schedule Search and enrolled in courses for the Spring 2020 semester.  In consulting the Course Catalog and Course Schedule Search and Registration, Plaintiffs understood and believed that every course in which they enrolled was to be taught in-person.  Plaintiffs' understanding and belief was based on the course specifying an on-campus location where the course would be taught, an "in-person" delivery mode of

12

instruction, and that the courses were neither designated nor described as online courses.  Thus, the in-person nature of the courses was part of the benefit of the bargain, as confirmed by course-specific syllabi and course schedules issued by UT.  Plaintiffs would not have paid as much, if any, tuition and fees for the Spring 2020 semester at UT had they known that the courses would not, in fact, be taught in-person.

### *In Response To COVID-19, UT Closed Campuses And Cancelled All In-Person Classes*

36.     On March 11, 2020, Defendant, through a news release, announced that because of the global COVID-19 pandemic, all classes would move to online and remote instruction starting March 16.

37.     On March 17, 2020, Defendant informed students that all classes would be held remotely via online format through the end of the Spring 2020 Semester.

38.     UT has not held any in-person classes since March 6, 2020 (the last academic day prior to Spring Break).  Classes that have continued have only been offered in an online format, with no in-person instruction.

39.     As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiffs and the putative class contracted and paid for.  Plaintiffs and the putative class are therefore entitled to a refund of all tuition and fees for services, facilities, access and/or opportunities that Defendant has not provided.  Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

40.     Plaintiffs and members of the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's institution and enroll on an in-person basis.

13

41.     Defendant markets UT on-campus experience as a benefit of enrollment on UT's

website:



## Experiential Education: Learn by Doing

Experiential learning allows you to act on what you have learned and to use the theories and skills gained in the classroom to solve real-world problems. It also gives you an edge on the competition for jobs and graduate school. The University of Tampa has a long history of valuing experiential education. Our balanced approach toward theory and practice starts at new student orientation and extends beyond graduation. UT keeps class sizes small, fosters individual attention from faculty and emphasizes active learning both in the classroom and beyond, creating an environment where education through application thrives.



42.    The online learning options being offered to UT students are subpar in practically every aspect, from the lack of facilities, materials, and access to faculty.  Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

43.    The remote learning options are in no way the equivalent of the in-person education putative class members contracted and paid for.  The remote education being provided is not even remotely worth the amount charged class members for Spring Semester 2020 tuition. The tuition and fees for in-person instruction at UT are higher than tuition and fees for other online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

- Face to face interaction with professors, mentors, and peers;

- Access to facilities such as libraries, laboratories, computer labs, and study room;

- Student governance and student unions;

- Extra-curricular activities, groups, intramural sports, etc.;

- Student art, cultures, and other activities;

15

- Social development and independence;

- Hands on learning and experimentation;

- Networking and mentorship opportunities.

44.     Through this lawsuit Plaintiffs seek, for themselves and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided.  Plaintiffs seek return of these amounts on behalf of themselves and the Class, as defined below.

## CLASS ALLEGATIONS

45.     Plaintiffs seek to represent a class defined as all people who paid UT Spring Semester 2020 tuition and/or fees for in-person educational services that UT failed to provide, and whose tuition and fees were not refunded (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

46.     Plaintiffs Fiore and D'Amario also seek to represent a subclass consisting of Class members who reside in New York (the "New York Subclass").

47.     Plaintiffs Sean and Joshua Dunn also seek to represent a subclass consisting of Class members of reside in Connecticut (the "Connecticut Subclass") (collectively, the "Subclasses").

48.     Subject to additional information obtained through further investigation and

16

discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

49.     **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are tens of thousands of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiffs, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through records in Defendant's possession.

50.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant accepted money from Class and Subclass members in exchange for the promise to provide services;

(b)     whether Defendant has provided the services for which Class and Subclass members contracted;

(c)     whether Class and Subclass members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide;

(d)     whether Defendant has unlawfully converted money from Plaintiffs, the Class and Subclass; and

(d)     whether Defendant is liable to Plaintiffs, the Class, and Subclass for unjust enrichment.

51.     **Typicality.**  Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further,

17

there are no defenses available to Defendant that are unique to Plaintiffs.

52.     **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Class and Subclass.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclass.

53.     **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

54.     In the alternative, the Class and Subclasses may also be certified because:

(a)     the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

18

(b)     the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

### COUNT I
### Breach Of Contract
### (On Behalf Of The Class And Subclasses)

55.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

56.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclasses against Defendant.

57.     Plaintiffs and Defendant entered into a contractual relationship where Plaintiffs would provide payment in the form of tuition and fees, and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services. The terms of the parties' contractual relationship are set forth in publications from Defendant, including the Spring Semester 2020 Course Catalog, UT's Course Schedule Search, UT's course-specific syllabi, and Spring Semester 2020 class schedules issued by UT.

58.     When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs and Class Members viewed the Course Catalog to make specific course selections prior to registering and paying tuition and fees for those selected courses.  Defendant's Course Catalog and Course Schedule Search constitute an offer to enter a contractual agreement.

19

59.     The Course Catalog and Course Schedule Search provided Plaintiffs and Class Members with information regarding the courses offered, the instructor, the days and times during which the courses would be held, and the location (including the building and room number) in which the courses would be held.

60.     Indeed, the Course Catalog specifically noted which classes were in online format within the "Course Description" section, and allowed Plaintiffs and Class Members to search for Spring Semester 2020 courses based on "Method" of instruction, which included options like "General Classroom," "Hybrid," or 'Online."  The Course Schedule Search and Registration function similarly represented that the delivery mode of classes would be "in-person." Moreover, course-specific syllabi and class schedules issued by UT confirmed the in-person nature of classes by providing on-campus locations (by building and classroom) and meeting times for each class.

61.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above.  Plaintiffs, Class, and Subclass members fulfilled their end of the bargain when they paid monies due for Spring Semester 2020 tuition.  Tuition for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020.  In exchange for tuition monies paid, Class and Subclass members were entitled to in-person educational services through the end of the Spring Semester.

62.     Defendant materially breached the parties' contractual agreement by failing to provide in-person education services for the entirety of the Spring Semester 2020.  The provisions of the contract breached by Defendant include, but are not limited to, the provision setting forth the details of in-person educational services as described in the Spring Semester

2020 Course Catalog, Course Schedule Search and Registration, course-specific syllabi, and class schedules.  All of these documents indicated classes would be administered in an in-person, on-campus setting.  None of these documents made any reference to the administration of these courses in an online format.

63.     In addition, UT's Tuition and Fee Schedule provides many of the policies and procedures regarding tuition and fees, and the in-person nature of such.[13]  For example, the mandatory Student Service Fee "[p]rovides support for a number of student services, programs and activities."  *Id.*  And the mandatory Student Government Fee "[p]rovides basic support to student government, student productions, publications and other student-sponsored organizations."  *Id.*

64.     Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above by failing to provide in-person educational services from March 6, 2020 through the end of the Spring 2020 semester.  Defendant has retained monies paid by Plaintiffs and the Class for their Spring Semester 2020 tuition and fees, without providing them the benefit of their bargain.

65.     Plaintiffs and members of the Class and Subclass have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the education, experience, and services to which they were promised and for which they have already paid.

66.     As a direct and proximate result of Defendant's breach, Plaintiffs, the Class, and Subclass are entitled to damages, to be decided by the trier of fact in this action, to include but no be limited to reimbursement of certain tuition, fees, and other expenses that were collected by

---

[13] https://www.ut.edu/admissions/tuition-and-costs

Defendant for services that Defendant has failed to deliver.  Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since UT has not held in-person classes since March 6, 2020.

67.     Defendant's performance under the contract is not excused due to COVID-19. Indeed, Defendant should have refunded the pro-rated portion of any education services not provided.  Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services it will not provide.

68.     Therefore, Defendant should return a pro-rata share of the tuition and fees paid by Plaintiffs and Class Members that relate to those in-person educational services that were not provided after UT suspended in-person classes since March 6, 2020.  In-person educational services were not provided for approximately 50% of the Spring Semester 2020.

## COUNT II
### Unjust Enrichment
### (On Behalf Of The Class And Subclasses)

69.     Plaintiffs hereby incorporate by reference the allegations contained all preceding paragraphs of this complaint.

70.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclasses against Defendant.

71.     Plaintiff and members of the Class and Subclasses conferred a benefit on Defendant in the form of monies paid for Spring Semester 2020 tuition and other fees in exchange for certain service and promises.  Tuition for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020.  In exchange for tuition monies paid, Class members were entitled to in-person educational services through the end of the Spring Semester.

72.    Defendant voluntarily accepted and retained this benefit by accepting payment.

73.    Defendant has retained this benefit, even though Defendant has failed to provide the education, experience, and services for which the tuition and fees were collected, making Defendant's retention unjust under the circumstances.  Accordingly, Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since UT shut down on March 6, 2020.

74.    It would be unjust and inequitable for Defendant to retain the benefit, and Defendant should be required to disgorge this unjust enrichment.

**COUNT III**
**Conversion**
**(On Behalf Of The Class And Subclasses)**

75.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

76.    Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclasses against Defendant.

77.    Plaintiffs and members of the Class and Subclasses have an ownership right to the in-person educational services they were supposed to be provided in exchange for their Spring Semester 2020 tuition and fee payments to Defendant.

78.    Defendant intentionally interfered with the rights of Plaintiffs, the Class, and Subclass when it moved all classes to an online format and discontinued in-person educational services for which tuition and fees were intended to pay.

79.    Plaintiffs and members of the Class and Subclass demand the return of the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since UT shut down on March 6, 2020.

80.     Defendant's retention of the fees paid by Plaintiffs and members of the Class and Subclasses without providing the educational services for which they paid, deprived Plaintiffs, Class and Subclass members of the benefits for which the tuition and fees paid.

81.     This interference with the services for which Plaintiffs and members of the Class and Subclass paid damaged Plaintiffs and Class members in that they paid tuition and fees for services that will not be provided.

82.     Plaintiffs, Class and Subclass members are entitled to the return of pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since UT shut down on March 6, 2020.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class and Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclasses;

(b)     For an order finding in favor of Plaintiffs and the Class and Subclasses on all counts asserted herein;

(c)     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For injunctive relief as pleaded or as the Court may deem proper; and

(g)     For an order awarding Plaintiffs, the Class, and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: September 15, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    _/s/ Philip L. Fraietta_
        Philip L. Fraietta

Philip L. Fraietta
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com
      aleslie@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice* forthcoming)
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot @bursor.com

*Attorneys for Plaintiffs*

25