**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

TONI FIORE, JADE D'AMARIO, SEAN
DUNN, and JOSHUA DUNN on behalf of
themselves and all others similarly situated,

                               Plaintiffs,

           -against-

THE UNIVERSITY OF TAMPA,

                            Defendant.

Civil Action No.: 7:20-cv-03744 (CS)

---------------------------------------------------------------------x


## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT


JACKSON LEWIS P.C.

    44 South Broadway, 14th Floor
    White Plains, N.Y. 10601
    (914) 872-8060

    *-and-*

    666 Third Avenue
    New York, N.Y. 10017
    (212) 545-4000

    *ATTORNEYS FOR DEFENDANTS*

Attorneys of Record:
    Felice B. Ekelman, Esq.
    Jonathan M. Kozak, Esq.
    Ryan C. Chapoteau, Esq.

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 4

ARGUMENT ......................................................................................................................... 5

POINT I .................................................................................................................................. 5

    MOTION TO DISMISS PLEADING STANDARDS UNDER  FED. R. CIV. P. 12 (B)(1)
AND (B)(6) ......................................................................................................................... 5

POINT II ................................................................................................................................. 6

    THE PARENT PLAINTIFFS LACK STANDING................................................................ 6

POINT III ................................................................................................................................ 7

    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT ..................... 7

        A.  Plaintiffs' Amended Complaint Fails To Establish A Valid Contract.......................... 7

            1.  Plaintiffs Fail to Plead the Essential Terms of a Contract Providing
Exclusively In-Person, On-Campus Instruction in Return for Tuition ........... 10

            2.  The University's Policies Do Not Create A Contractual Promise For
Exclusively On-Campus Education ................................................................. 12

            3.  Plaintiffs Fail to Plead the Essential Terms of a Contract Requiring Specific
Services or for Prorated Refunds for Flat Semester-Wide Fees .................... 13

        B.  Plaintiffs' Fail to Allege a Material Breach ................................................................ 15

        C.  Plaintiffs' Fail to Allege Actionable Damages ........................................................... 17

        D.  Plaintiffs Ratified Any Alleged Breach ...................................................................... 18

POINT IV................................................................................................................................ 20

    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT ...................... 20

        A.  Plaintiffs' Claim Fails Because There Is An Adequate Remedy at Law .................... 20

        B.  Plaintiffs Cannot Establish It Would Be Inequitable For The University To Retain
Tuition And Fees Under the Circumstances ............................................................... 22

POINT V ................................................................................................................................. 24

    PLAINTIFFS FAIL TO STATE A CLAIM FOR CONVERSION ...................................... 24

CONCLUSION....................................................................................................................... 245

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

AIM Recycling Fla., LLC v. Metals USA, Inc.,
  No. 18-60292-Civ-Zloch, 2019 U.S. Dist. LEXIS 78027 (S.D. Fla. Mar. 4, 2019) ................ 22

Al-Ghena Int'l Corp. v. Radwan,
  No. 13-61557, 2014 U.S. Dist. LEXIS 199129 (S.D. Fla. Apr. 154 2014) ............................ 25

Alhassid v. Bank of Am., N.A.,
  60 F. Supp. 3d 1302 (S.D. Fla. 2014) ...................................................................... 20

Ashcroft v. Iqbal,
  556 U.S. 662, 678 (2009) ........................................................................................ 6

Bell Atl. Corp. v. Twombly,
  550 U.S. 544, 555 (2007) ..................................................................................... 5, 6

Cabana on Collins, LLC v. Regions Bank,
  No. 11-21204, 2011 U.S. Dist. LEXIS 168846 (S.D. Fla. Jun 7, 2011) .................................. 24

Chong v. Northeastern Univ.,
  No. 20-10844-RGS, 2020 U.S. Dist. LEXIS 181622 (D. Mass. Oct. 1, 2020) ............... 8, 9, 14

Coleman v. CubeSmart,
  328 F. Supp. 3d 1349 (S.D. Fla. 2018) ...................................................................... 22

Doe v. The University of the South,
  687 F. Supp. 2d 744, (E.D. Tenn. 2009) ..................................................................... 6

Duty Free World, Inc. v. Miami Perfume Junction, Inc.,
  253 So. 3d 689 (Fla. 3d DCA 2018) ......................................................................... 22

Fineberg v. Kline,
  542 So. 2d 1002 (Fla. 3d DCA 1988) ....................................................................... 20

Frankenmuth Mut. Ins. Co. v. Magaha,
  769 So. 2d 1012 (Fla. 2000) ................................................................................... 18

Gasparini v. Pordomingo,
  972 So. 2d 1053 (Fla. 3d DCA 2008) ....................................................................... 25

Gebhardt v. Allspect, Inc.,
  96 F. Supp. 2d 331 (S.D.N.Y. 2000) ........................................................................... 5

Ginsberg v. Lennar Fla. Hldg., Inc.,
  645 So. 2d 490 (Fla. 3d DCA 1994) ......................................................................... 25

HB v. Monroe Woodbury Cent. Sch. Dist.,
    No. 11-CV-5881(CS), 2012 U.S. Dist. LEXIS 141252 (S.D.N.Y. Sept. 27, 2012) .................. 6

Head v. Lane,
    495 So. 2d 821 (Fla. 4th DCA 1986) ........................................................................... 20

Horrigan v. Eastern Michigan Univ. et al.,
    Michigan Court of Claims, Docket No. 20-000075-MK (Sept. 24, 2020) .......................... 9, 14

In re Standard Jury Instructions – Contract & Bus. Cases,
    116 So. 3d 284 (Fla. 2013) ........................................................................................ 18

Kelley v. Metro. Life Ins. Co.,
    No. 13-61864-Civ-Cohn, 2013 U.S. Dist. LEXIS 154239 (S.D. Fla. Oct. 28, 2013) ............... 7

Lesti v. Wells Fargo Bank, N.A.,
    960 F. Supp. 2d 1311 (M.D. Fla. 2013) ....................................................................... 25

Makarova v. United States,
    201 F.3d 110 (2d Cir. 2000) ........................................................................................ 5

McCabe v. Marywood University,
    166 A.3d 1257 (Pa. Super. Ct. 2017) .......................................................................... 23

McCormick v. Dresdale,
    C.A. No. 09-474 S, 2010 U.S. Dist. LEXIS 41848 (D.R.I. Apr. 28, 2010) .............................. 6

MDS (Can.), Inc. v. RAD Source Techs., Inc.,
    720 F.3d 833 (11th Cir. 2013) .................................................................................... 15

Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.,
    14 F.3d 1507 (11th Cir. 1994) ............................................................................... 20, 22

Morrison v. Nat'l Austl. Bank Ltd.,
    547 F.3d 167 (2d Cir. 2008) ........................................................................................ 5

Nova Cas. Co. v. Waserstein,
    424 F. Supp. 2d 1325 (S.D. Fla. 2006) .................................................................... 12, 15

Orzechowitz v. Nova Southeastern Univ.,
    No. 13-62217-CIV-LENARD/O'SULLIVAN, 2014 U.S. Dist. LEXIS 43674
    (S.D. Fla. Mar. 31, 2014) ........................................................................................... 11

Pinero v. Zapata,
    No. 3D20-759, 2020 Fla. App. LEXIS 11755 (3d App. Aug. 19, 2020) ................................ 15

Richter v. Catholic University of America,
    No. 18-00583, 2019 U.S. Dist. LEXIS 20150 (D.D.C. Feb. 5, 2019) ................................... 11

Rood Co. v. Board of Public Instruction,
    102 So. 2d 139 (Fla. 1958)......................................................................... 19, 20

Schachter v. U.S. Life Ins. Co. in City of New York,
    77 F. App'x 41 (2d Cir. 2003) ........................................................................ 5

Silver Crown Invs., LLC v. Team Real Estate Mgmt., LLC,
    349 F. Supp. 3d 1316 (S.D. Fla. 2018) ......................................................... 21

Spokeo, Inc. v. Robins,
    136 S. Ct. 1540 (2016)................................................................................... 6

Stensby v. Effjohn Oy Ab,
    806 So. 2d 542 (Fla. 3d DCA 2001) ............................................................ 17

Vega v. T-Mobile USA, Inc., 5
    64 F.3d 1256 (11th Cir. 2009) ...................................................................... 7

Villard v. Capella Univ.,
    No. 6:17-cv-1429-Orl-41GJK, 2017 U.S. Dist. LEXIS 220541
    (M.D. Fla. Dec. 21, 2017).......................................................................... 7, 21

Whitesell Corp. v. Electrolux Home Prods.,
    No. CV 103-050, 2014 U.S. Dist. LEXIS 131899 (S.D. Ga. Sept. 18, 2014) ......... 21

Zwiker v. Lake Superior State Univ.,
    No. 20-000070-MK, 2020 Mich. Ct. Cl. LEXIS 2 (MI Ct. Cl. Aug. 31, 2020) ........ 9, 14

**Rules**

Fed R. Civ. P. 12 (b)(1)....................................................................................... 1, 5

Fed. R. Civ. P. 12 (b)(6)...................................................................................... 1, 5

Defendant, The University of Tampa ("UT" or "the University") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Amended Complaint (the "Amended Complaint") filed by Plaintiffs Toni Fiore, Jade D'Amario, Sean Dunn, and Joshua Dunn ("Plaintiffs")[1] pursuant to Fed. R. Civ. P. 12 (b)(1) and (b)(6) .

## **PRELIMINARY STATEMENT**

Plaintiffs, two current undergraduate students at UT, and two of their parents, filed this lawsuit seeking to recover tuition and fees they claim to be owed as a result of UT's decision to move to remote learning beginning March 17, 2020 for the remainder of the Spring 2020 Semester as a result of the response to the COVID-19 pandemic.  The University's decision to transition to remote learning to safeguard the health and safety of its students, professors, staff, and community in response to this unprecedented pandemic was made to comply with state Executive Orders as well as guidelines issued by the Centers for Disease Control and Prevention ("CDC").  While the Student Plaintiffs completed the Spring 2020 semester, Plaintiffs now claim they should not be required to pay for the education and services received because it continued virtually, instead of in-person and on-campus.  Plaintiffs' claims are not viable, and should be dismissed.

The COVID-19 pandemic that swept the country in March 2020 required every person, business, organization, and institution to make immediate and largely unprecedented changes to daily interactions.  Like virtually all institutions of higher education, and all organizations generally—including this Court—UT was forced to take prompt, strategic actions to protect the health and safety of its students, faculty, and staff and to comply with the Florida Governor's Executive Orders and CDC recommendations.  Fortunately, UT was able to seamlessly transition

---

[1] Plaintiffs Toni Fiore and Sean Dunn are referred to herein as "Parent Plaintiffs", and Plaintiffs Jade D'Amario and Joshua Dunn are referred to herein as "Student Plaintiffs."

to virtual education and services where students were able to continue to interact with each other and with faculty and access University resources.

For the second half of its Spring 2020 Semester, UT delivered information, education, comradery, services, and ultimately credit hours to its students virtually rather than physically in-person and on-campus.  Classes continued live (as opposed to recorded videos), lectures were personally delivered, exams were administered, projects were completed and submitted, and students continued to learn, albeit in different ways.  After the pandemic hit, the University fostered opportunities for students to connect, bond, communicate, and build relationships despite a nationwide lockdown and social distancing orders which prohibited physically in-person interactions.  As a result, despite an unprecedented public health crisis, UT's students remained connected to the University and obtained the educational and other services they sought and paid for: credit for their Spring 2020 Semester courses, advancing them toward a degree.

After the pandemic hit, educational and other services still were delivered live and in-person[2] (albeit differently) for the remainder of the Spring 2020 Semester.  The Amended Complaint does not allege otherwise.  Contrary to Plaintiffs' conclusory allegations, UT did not breach any specific contractual obligation to Plaintiffs.  The express written agreement between UT and the Student Plaintiffs is contained in a Financial Responsibility Statement ("FRS"), which was electronically signed by the Student Plaintiffs before Spring 2020 Semester classes.  By

---

[2] Plaintiffs make various allegations that educational services were not provided in-person, but rather were only offered "online".  Plaintiffs' ambiguous pleading lacks descriptive factual allegations and, as a result, is inaccurate and misleading.  Virtual learning services are live and in-person, even where the student and the teacher are in different or remote locations.  In fact, UT was able to facilitate continued synchronous learning.  Live-streams, instant messaging, live chats, webinars, and video conferencing all were utilized to allow students and faculty to communicate, collaborate, and learn in real time.  Thus, even though the pandemic prevented students and faculty from being physically together on campus for the second half of the Spring 2020 Semester, learning unquestionably continued.  Plaintiffs do not allege otherwise.

executing the FRS, students expressly agree: to "accept full responsibility to pay all tuition, fees and other associated costs assessed as a result of my registration and/or receipt of services." (Declaration of Jeanne K. Gregory dated October 15, 2020 ("Gregory Dec."), Ex. A.)  The FRS incorporates by reference the University's tuition refund schedule, and further provides that a student's failure to attend class does not absolve the student of any financial obligation.  Finally, the FRS makes clear that it is the "entire agreement" concerning the matters therein.  There is no reference in the FRS (or anywhere else for that matter) to any promise by the University to provide *only* physically present, on-campus educational instruction or to otherwise provide for *any specific modality by which services* would be provided, much less exclusively in-person and on-campus.

Plaintiffs' Amended Complaint does not identify the FRS or any specific agreement between the Plaintiffs and the University superseding or replacing the FRS.  Instead, Plaintiffs claim a contractual obligation arises from their subjective interpretations and expectations of various UT publications, including the Course Catalog, Course Schedule Search and Registration tool, course specific syllabi and course schedules.  (Amended Complaint, ¶ 2).  Thus Plaintiffs completely disregard the existence of the unambiguous commitment detailed in the FRS.  Further, the documents Plaintiffs rely on do *not* contain any terms limiting educational instruction or services to any particular modality, or commit UT to only provide instruction live, physically present and on-campus.  Plaintiffs only espouse their unilateral expectations and hopes of same.  Even if Plaintiffs could identify a contract promising educational services be delivered only in their single preferred manner, it is uncontroverted that the Student Plaintiffs accepted remote learning services, completed the semester, and earned credits towards their chosen degrees, thereby ratifying any alleged breach by the University.  UT delivered the benefits promised and Plaintiffs received and accepted them.  The law does not permit Plaintiffs or the Court to now rewrite the

3

terms of UT's refund policy, the FRS, or to otherwise allow Plaintiffs to accept the benefits of the bargain (i.e., educational services and credit), and still seek the return of the consideration paid.

Plaintiffs' claims for breach of contract, unjust enrichment, and conversion are simply not cognizable as a matter of law based upon the contract at issue and the allegations in the Amended Complaint.  For these reasons, as discussed more fully below, Plaintiffs' Amended Complaint must be dismissed for lack of standing and failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

The Parent Plaintiffs are parents of the Student Plaintiffs who are currently enrolled at the University.  (Amended Complaint, ¶¶ 19, 22).  The Student Plaintiffs were enrolled for the entire Spring 2020 Semester.  (Amended Complaint, ¶¶ 20, 23).  The Spring 2020 Semester began with on-campus and in-person instruction on or about January 21, 2020, transitioned to live remote learning as a result of the COVID-19 pandemic on March 17, and concluded on May 8, 2020. (Amended Complaint, ¶ 30, 37).  The Amended Complaint does not contain any allegation that the Student Plaintiffs failed to receive educational instruction and credit for their Spring 2020 Semester classes or that they were not provided any specific service they expected to receive.

Plaintiffs rely upon certain University documents in an unsuccessful attempt to cobble together a claim that the University breached a contractual obligation to provide only on-campus learning for the entirety of the Spring 2020 Semester regardless of the circumstances.  The Student Plaintiffs allege, in advance of registering, they reviewed the University's 2019-2020 Course Catalog (the "Catalog") and Course Schedule Search and Registration, and the University's Tuition and Fee Schedule and the descriptions therein.  They claim further, because course descriptions identified classroom locations, they expected their chosen courses to be taught only in-person and on-campus, and not by any other means. (Amended Complaint, ¶¶ 20-21, 23-24; see, generally, Amended Complaint).  Plaintiffs also make reference to various other University

marketing materials, course-specific syllabi, course schedules, and the University's General Attendance policy in an attempt to buttress their claims.  (Amended Complaint, ¶¶ 2-9, 41).

Plainly, the FRS contains no limitation regarding the manner by which education and other services would be delivered during the semester.  Plaintiffs' conclusory factual and legal allegations, derived from their alleged expectations, are insufficient to sustain their claims.

## ARGUMENT

### POINT I

### MOTION TO DISMISS PLEADING STANDARDS UNDER FED. R. CIV. P. 12 (b)(1) AND (b)(6)

"A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12 (b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008).  Courts lack subject matter jurisdiction when a plaintiff does not have Article III standing.  See Schachter v. U.S. Life Ins. Co. in City of New York, 77 F. App'x 41, 42 (2d Cir. 2003).  The plaintiff bears the burden of establishing standing.  See Morrison v. Nat'l Austl. Bank Ltd., supra.

Under Rule 12 (b)(6), "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). To avoid dismissal, the plaintiff must do more than plead mere "conclusory allegations or legal conclusions masquerading as factual conclusions." Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000).  After the Court winnows conclusory statements from a complaint and assumes any remaining factual allegations to be true, the Court

must determine whether the complaint pleads "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).

## POINT II

### THE PARENT PLAINTIFFS LACK STANDING

The Parent Plaintiffs lack standing to bring the claims alleged within the Amended Complaint.  A plaintiff with no injury in fact lacks standing to bring suit.  See, e.g., Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  The Parent Plaintiffs are not students and have not alleged any contractual relationship with the University.  The Amended Complaint clearly alleges the Student Plaintiffs reviewed and agreed to the documents Plaintiffs rely upon to support their contractual claim.  (Amended Complaint, ¶¶ 21, 24).  All allegations in the Amended Complaint regarding communications about these alleged contracts were with the Student Plaintiffs. (Amended Complaint, ¶ 21, 24, 37).

Courts have held generally that parents lack standing to assert claims against educational institutions where their child, the student, is over the age of eighteen.  See, e.g., McCormick v. Dresdale, C.A. No. 09-474 S, 2010 U.S. Dist. LEXIS 41848, at *7 (D.R.I. Apr. 28, 2010); Doe v. The University of the South, 687 F. Supp. 2d 744, (E.D. Tenn. 2009) (no standing for parents of majority age student to bring claim against university); see also HB v. Monroe Woodbury Cent. Sch. Dist., No. 11-CV-5881(CS), 2012 U.S. Dist. LEXIS 141252, *60 (S.D.N.Y. Sept. 27, 2012) ("[A]lthough parents may sue on behalf of their minor child, they do not have standing to assert claims on their own behalf for a violation of their child's right").  Therefore, the Parent Plaintiffs should be dismissed with prejudice from this litigation, as they lack the requisite standing to proceed.

## POINT III

## PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT

### A.    Plaintiffs' Amended Complaint Fails To Establish A Valid Contract

Plaintiffs' Amended Complaint does not sufficiently plead a breach of contract because it does not specify the essential terms of the relevant alleged contractual agreement between the University and the Student Plaintiffs.  See Kelley v. Metro. Life Ins. Co., No. 13-61864-Civ-Cohn, 2013 U.S. Dist. LEXIS 154239, at *5 (S.D. Fla. Oct. 28, 2013) (quoting Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009)).  To avoid the dismissal of a breach of contract claim, a student must specify the *particular* rule or procedure the university allegedly violated.  See Villard v. Capella Univ., No. 6:17-cv-1429-Orl-41GJK, 2017 U.S. Dist. LEXIS 220541, at *5 (M.D. Fla. Dec. 21, 2017).  Dismissal is appropriate where a complaint fails to reference a proper contract.  See id. (dismissing claim for breach of implied contract against a university where the plaintiff failed to sufficiently allege the contract's essential terms).

Plaintiffs' breach of contract claim asserts that the University agreed to provide the Student Plaintiffs with "in-person educational services, experiences, opportunities, and other related facilities" in exchange for payment of tuition and fees.  (Amended Complaint, ¶ 2).  While the Student Plaintiffs hoped for these terms (and the University would have offered them under "normal" circumstances), this claim fails because Plaintiffs do not identify, produce, or refer to any particular writing in which the University actually made a promise (sufficiently specific to amount to a contract) to provide such items *exclusively* in-person and on-campus.  Critically, Plaintiffs fail to allege the promised education and services were not provided.  They only contend education was delivered differently (i.e. UT's synchronous learning), and  was not comparable.

Significantly, claims based on similar allegations have been expressly *rejected* by a Massachusetts district court in Chong v. Northeastern Univ., No. 20-10844-RGS, 2020 U.S. Dist.

LEXIS 181622 (D. Mass. Oct. 1, 2020).[3]  In <u>Chong</u>, a student claimed Northeastern University breached an alleged contractual obligation to its students upon moving to remote learning in response to the pandemic.  Chong's claims were dismissed because he could not "plausibly establish that the parties' contract included any right to in-person instruction." <u>Id.</u> at *9.

Here the contractual agreement between the Student Plaintiffs and the University is contained within the FRS, signed by the Student Plaintiffs prior to the Spring 2020 Semester. Specifically, the FRS provides in pertinent part as follows:

PAYMENT OF FEES/PROMISE TO PAY

I understand that <u>when I register for any class at The University of Tampa or receive any service from The University of Tampa, I accept full responsibility to pay all tuition, fees and other associated costs assessed as a result of my registration and/or receipt of services</u>. I further understand and agree that my registration and acceptance of these terms constitutes a promissory note agreement (i.e., a financial obligation in the form of an educational loan as defined by the U.S. Bankruptcy Code at 11 U.S.C. §523(a)(8)) in which <u>The University of Tampa is providing me educational services</u>, deferring some or all of my payment obligation for those services, and I promise to pay for all assessed tuition, fees and other associated costs by the published or assigned due date.[)]

I understand and agree that if I drop or withdraw from some or all of the classes for which I register, I will be responsible for paying all or a portion of tuition and fees in accordance with the published tuition refund schedule at www.ut.edu/academiccalendar.  I have read the terms and conditions of the published tuition refund schedule and understand those terms are incorporated herein by reference. I further understand that my failure to attend class or receive a bill does not absolve me of my financial responsibility as described above.

*        *        *

ENTIRE AGREEMENT

<u>This agreement supersedes all prior understandings, representations, negotiations and correspondence between the student and The</u>

---

[3] <u>See</u> Declaration of Jonathan M. Kozak dated October 15, 2020 ("Kozak Dec."), Ex. B.

> University of Tampa, constitutes the entire agreement between the
> parties with respect to the matters described, and shall not be
> modified or affected by any course of dealing or course of
> performance. . . .

(Gregory Dec., Ex. A) (emphasis added).[4]   The foregoing unambiguous language contains no

limitation to the modality or method by which educational and other services may be provided.

The promise alleged by Plaintiffs of exclusively on-campus instruction and services simply does

not exist.

The UT refund policy also makes clear that no refunds to tuition would be provided, under

any circumstances, after February 10, 2020. (http://ut.smartcatalogiq.com/2019-

2020/catalog/Costs-and-Financial-Information/Dropping-Courses-Withdrawals-and-

Refunds/Refunds; see also http://ut.smartcatalogiq.com/2019-2020/catalog/Academic-Calendar).

While UT maintains a detailed policy, titled "Dropping Courses, Withdrawals and Refunds,"

discussing the circumstances under which it provides refunds, nothing in those policies states that

if UT changes the course delivery format, a student may obtain a refund; refunds are only provided

if a student withdraws and requests a refund within the first five days after the beginning of the

semester, or two weeks thereafter. (http://ut.smartcatalogiq.com/2019-2020/catalog/Costs-and-

Financial-Information/Dropping-Courses-Withdrawals-and-Refunds). The University's express

refund policy, which under Florida law is part of student-university contract, belies Plaintiffs'

breach of contract claims which would require the Court to create a new contract and new refund

---

[4]  The relevant provisions of UT's FRS in this case are nearly identical to the "Annual Financial
Responsibility Agreement" in Chong v. Northeastern Univ., supra, as well as the "Tuition
Agreement" discussed in an Opinion and Order dismissing similar claims in Horrigan v. Eastern
Michigan Univ. et al., Michigan Court of Claims, Docket No. 20-000075-MK (Sept. 24, 2020),
and the "Tuition Contract" referenced in Zwiker v. Lake Superior State Univ., No. 20-000070-
MK, 2020 Mich. Ct. Cl. LEXIS 2 (MI Ct. Cl. Aug. 31, 2020). See Kozak Dec., Exs. B-D.

policy based on Plaintiffs' subjective expectations as opposed to any specific agreement between the parties.

The contractual obligation Plaintiffs claim was breached when UT was required to transition to virtual learning and services does not exist. Rather, the unambiguous language in the FRS and the refund policy are wholly at odds with Plaintiffs' theory.

1.  Plaintiffs Fail to Plead the Essential Terms of a Contract Providing Exclusively In-Person, On-Campus Instruction in Return for Tuition

Plaintiffs attempt to support their breach of contract claim by relying upon documents and information that do not give rise to contractual commitment. Plaintiffs' claim is founded on a smattering of promotional materials from the University's website regarding the general benefits of living on campus. None offer a contractual promise. (Amended Complaint, ¶ 41).

Plaintiffs' heavy reliance on the University's Course Schedule Search and Registration, course-specific syllabi, and course schedules also are red herrings. (See, generally, Amended Complaint, ¶¶ 2-9). These documents do not create contractual promises, because there is no specific statement where the University promised in-person educational instruction in exchange for tuition and fees. Also, the published locations of classes held under non-pandemic circumstances do not create a legally binding commitment that a particular class or lecture can *only* be held in that location and at that time. If so, the University might be in breach of contract by simply moving instruction from one classroom to another, or as the result of a necessary schedule change. The premise is nonsensical under the best of circumstances, because listing a lecture hall in a syllabus or course registry is not, and cannot reasonably be construed to be, a material term of a contractual promise by the University as to how all education would generally be delivered in exchange for tuition. Similarly, Plaintiffs' reliance on the *Faculty* Handbook's statement that professors are expected to be "available" to students and keep "office hours"

similarly fails.  Mandating that faculty be available to students says nothing about any right to expect, nor a contractual promise *to students* to provide, only physically in-person and on-campus availability.  Plaintiffs do not allege that faculty were not available to them following the transition to virtual instruction through any number of method's used in UT's synchronous learning plan. There are no allegations pointing to any UT materials specifically giving rise to a contractual right to exclusively on-campus educational services.

Courts that have considered contract claims in the higher education context require far more to establish that an institution's materials create a legally cognizable contractual promise. For example, in Richter v. Catholic University of America, No. 18-00583, 2019 U.S. Dist. LEXIS 20150 (D.D.C. Feb. 5, 2019), the plaintiff, relying on documents outlining students' obligations, argued that the university entered into an enforceable contract where it guaranteed the plaintiff the "right to meet regularly" with his professors to give the plaintiff the "best chance possible to improve his grades."  Id. at *10-*11.  The court dismissed the plaintiff's breach of contract claim with prejudice, noting that the notion that the university "somehow bound itself contractually [to these specific items] borders on the absurd."  Id. at *11.  Similarly, in Orzechowitz v. Nova Southeastern Univ., No. 13-62217-CIV-LENARD/O'SULLIVAN, 2014 U.S. Dist. LEXIS 43674, at *8-9 n.2 (S.D. Fla. Mar. 31, 2014), a Florida district court said it could find "no legal support [whatsoever] for the proposition that a course syllabus creates a binding contract between a student and his or her professor or with the university."  Id.

The foregoing directly undercuts the central theme in Plaintiffs' Amended Complaint that a contract for exclusively on campus education existed because certain expectations and course syllabi mentioned a room number where classes would be held, absent a global pandemic or other emergent circumstance.  None of these cherry-picked statements from non-contractual documents

meet the standard to establish an agreement, especially one that the University could be found to have breached as a result of its transition to virtual learning for part of the Spring 2020 Semester.

> 2. The University's Policies Do Not Create A Contractual Promise For Exclusively On-Campus Education

The cherry-picked portions of the Catalog that Plaintiffs weave into the Amended Complaint reference:  (1) the University's General Attendance policy stating that students are expected to attend classes; and (2) the University's course descriptions that may include a "method" of learning for certain classes (*i.e.* general classroom; general classroom--dual; hybrid; independent study; internship; lab only; and online).   (Amended Complaint, ¶¶ 4, 9; http://ut.smartcatalogiq.com/2019-2020/catalog/Academic-Policies-and-Procedures/General-Attendance).   As a general matter, the Catalog expressly provides that it is provided "for informational purposes" and that it "should not be construed as the basis of a contract between the student       and       this       institution."       (http://ut.smartcatalogiq.com/2019-2020/catalog/PolicyCompliance).  Thus, except to the extent specifically incorporated in the FRS with respect to the refund policy, as discussed above, the Catalog does not constitute a contract. Even if the Catalog created a contract, however, there is no term thereof requiring or promising exclusively in-person, on-campus education or services.

Regarding the General Attendance policy, Plaintiffs improperly imply verbiage essential to their claim which does not exist.  Courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties."  Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1333 (S.D. Fla. 2006).  There is *no* language supporting Plaintiffs' claim that this policy required in-person and on-campus attendance only.  The policy contains no bar to virtual/remote attendance.  Presence may be accomplished in a number of ways other than physical presence at the same location.  There is nothing in the General Attendance

policy that distinguishes on-campus or live remote presence. Plaintiffs do not allege that the Student Plaintiffs were unable to attend classes that continued remotely via synchronous learning. The General Attendance policy does not in any manner preclude remote learning.

Moreover, for the "method" of learning in a course description to establish an actionable breach, Plaintiffs must show that the University was *contractually bound* to *only* provide classes in the listed location and was *contractually prohibited*, and that it was barred from changing the location or modality under any circumstances. Again, Plaintiffs' conclusory allegations are illogical and fall short of a cognizable claim.

   3.  <u>Plaintiffs Fail to Plead the Essential Terms of a Contract Requiring Specific Services or for Prorated Refunds for Flat Semester-Wide Fees</u>

Plaintiffs also fail to plead the essential terms of a contract requiring prorated refunds of costs for student services, programs, and activities (the "Fees"). Plaintiffs cite to the University's "Tuition and Fee Schedule" (Amended Complaint, ¶ 11; http://ut.smartcatalogiq.com/2019-2020/catalog/Costs-and-Financial-Information/Total-Costs). Plaintiffs have not identified any contractual term within the "Tuition and Fee Schedule" that supports the pro-rated return of Fees that Plaintiffs seek, particularly where the Student Plaintiffs completed their courses and received all credits. This fee-related claim fails for several reasons.

First, Plaintiffs have not identified any specific promise by the University to provide a specific service, for a specific number of days, and in a specific delivery format (i.e., in-person and on campus only) in exchange for a specific fee. Instead, as Plaintiffs themselves admit, the fee is a flat fee charged by the University "to provide support for" various services. But charging students to help offset the cost of having certain non-specific services is not the same as a promise to provide, in exchange for a specific fee, a particular service, for a particular number of days, in a specific format such that failing to do so would amount to a contractual breach. <u>See</u>, <u>e.g.</u>, <u>Chong</u>

v. Northeastern Univ., supra; Horrigan v. Eastern Michigan Univ. et al., supra; Zwiker v. Lake Superior State Univ., supra.

Second, these additional promises *manufactured* by Plaintiffs are directly contrary to the FRS, which states that "when I register for any class at The University of Tampa or receive any service from The University of Tampa, I accept full responsibility to pay all tuition, fees and other associated costs assessed as a result of my registration and/or receipt of services." (Gregory Dec., Ex. A).  By its plain terms, the agreement between the parties did not promise any specific service, for any specific duration, nor promise a method of delivery. These Fees, by the terms stated within the FRS and the "Tuition and Fee Schedule," are flat *per-semester* fees that apply by dint of registering at the University and are charged regardless of how much or how little a student uses  a  particular service or receives a particular benefit.  (Amended Complaint, ¶ 11 n.10) (https://www.ut.edu/admissions/tuition-and-costs at "Students are charged each semester for the following mandatory fees (as appropriate)").  And these fees are not refundable once the refund date passes.  Plaintiffs failed to include *any* allegations in the Amended Complaint to show otherwise or how they are entitled to any refund of amounts paid for the Spring 2020 Semester.

When the Student Plaintiffs commenced the Spring 2020 semester, they agreed to be responsible for the semester-wide fees in their entirety.  (See id.).  Plaintiffs' Amended Complaint seeks to revise the terms of the University's FRS and Tuition and Fee Schedule to transform mandatory fees to an à la carte menu of "daily" Fees and require the University to refund a portion for the days the Student Plaintiffs received remote education.  This position lacks any merit because it is clear each fee is a single flat per semester fee, regardless of how much or how little a

student uses a particular benefit.[5]  Plaintiffs' Fee claim further fails because: (1) Plaintiffs did not identify a contractual term requiring the University to provide any specific service, for any specific number of says, in any specific format, or a pro-rated refund; and (2) the actual terms of the FRS and Tuition and Fee Schedule required the Student Plaintiffs to pay semester-wide Fees, regardless of use, and do not permit the refunds Plaintiffs seek.  Neither Plaintiffs nor this Court can *post facto* inject a term for prorated refunds and, as such, dismissal with prejudice is warranted.  See Pinero v. Zapata, No. 3D20-759, 2020 Fla. App. LEXIS 11755, at *5 (3d App. Aug. 19, 2020) (ruling courts cannot rewrite contracts even in light of the COVID-19 pandemic); see also Nova Cas. Co. v. Waserstein, supra.

In sum, as Plaintiffs failed to plead the existence of a contract requiring exclusively on-campus instruction and services, Plaintiffs' claim should be dismissed with prejudice.

### B.    Plaintiffs' Fail to Allege a Material Breach

Even if the Court ignored the lack of a valid contractual term promising what Plaintiffs claim was not provided, Plaintiffs fail to allege that the lack of in-person classes as a *material* breach.  To constitute a material breach, a party's failure to perform must "go to the essence of the contract."  MDS (Can.), Inc. v. RAD Source Techs., Inc., 720 F.3d 833, 849 (11th Cir. 2013).  A party's "failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach."  Id. (internal quotations omitted).

---

[5] As an illustration, if the Student Plaintiffs never attended any activities or participated in any student group (on-campus or virtually), never used the services offered in the student health center, never used the computer lab, and never ate in the dining hall prior to COVID-19, they would not be entitled to a refund for any portion of those fees.  The fees were incurred, due and owing, upon the commencement of the Spring 2020 Semester.  Undeniably, the Student Plaintiffs incurred the fees when the semester began, as scheduled in January 2020.  The subject fees are unrelated to the actual use, services received, or days on campus.

The Student Plaintiffs entered into an agreement with UT in which UT agreed to provide them with education in exchange for an agreed upon tuition.  Plaintiffs do *not* dispute that the Student Plaintiffs received, through remote instruction, the courses they selected or that they received all academic credits in classes in which they met the academic requirements and for which they paid (at the price they agreed to pay).  (Amended Complaint, ¶ 43).  Plaintiffs also do not allege that the Student Plaintiffs' progress toward their degrees was in any way interrupted by the University's provision of services differently.

The material terms of the FRS between the University and the Student Plaintiffs provide academic instruction and the opportunity to earn attendant academic credits, in exchange for tuition.  Whether a portion of the education was provided in-person in a large lecture hall, small classroom, or in on-campus office hours, versus on the phone, via virtual meetings, or through other remote means are incidental rather than material; the educational services were delivered to and received by the Student Plaintiffs.  Plaintiffs have already conceded that the Student Plaintiffs received the education for which they paid, but they nevertheless ask the Court to award a refund because the education was, in part, provided differently from how they (and UT for that matter) expected.  Plaintiffs have no claim for breach of contract with respect to tuition.

As to the mandatory semester Fees, Plaintiffs seek to have the Court assume that the Student Plaintiffs and the putative class members did not receive the services/benefits for which they paid.  (See, e.g., Amended Complaint, ¶ 11).  However, the Amended Complaint contains no allegation as to what specific benefits the University either refused to perform or how the University precluded Plaintiffs from enjoying these benefits.  More importantly, Plaintiffs do not identify any terms in any contract stating that if the Student Plaintiffs did not receive the benefits of the Fees or use the services attributable to the Fees (in fact, they do not identify a specific fee

promised for a specific service, to be provided only in a specific delivery format), they are entitled to a refund.  (See Point III.A.3, supra).[6]  Plaintiffs' Amended Complaint is void of nonconclusory allegations about how the UT supposedly breached the alleged contract for these services (assuming such a contract existed).  These failings require dismissal of Plaintiffs' breach of contract claim regarding Fees.

### C.    Plaintiffs' Fail to Allege Actionable Damages

Plaintiffs especially cannot establish the final critical prong of their breach of contract claim, i.e., damages.  They contend, again in summary fashion, that "remote learning options are in no way equivalent of the in-person education putative class members contracted and paid for. The remote education being provided is not even remotely worth the amount charged class members for the Spring Semester 2020 tuition."  (Amended Complaint, ¶ 43).

However, damages must be ascertainable.  A subjective contention that the education received "is not worth as much" because it was provided through remote learning tools for the second half of the Spring 2020 Semester is a quintessential example of speculative damages, because it will vary student by student and it is impossible to measure against any objective metric. Damages based on rank speculation about how one person subjectively "feels" about the value of their education are not legally cognizable. See Stensby v. Effjohn Oy Ab, 806 So. 2d 542, 544 (Fla. 3d DCA 2001) (reversing verdict for plaintiff - directed verdict for defense because "Stensby's claim of damages . . . fell far short of reaching even the realm of the speculative and thus cannot support a recovery. . . . it is unnecessary to multiply the 'let alones' to make the point:

---

[6] For example, while the Student Plaintiffs claim they were charged a student government fee, a student services fee, and a health fee, Plaintiffs nowhere allege that: (1) there was a *specific* service the Student Plaintiffs would receive for paying that fee; (2) that such specific service would be available for the entirety of the semester; and (3) that it would be provided exclusively on-campus. As to a breach, Plaintiffs have not alleged that any such service was not provided.

in these circumstances, in which the terms conjecture and surmise too grandly describe the plaintiff's lost profits claim, the cases are legion that none can be recovered").

Moreover, as to actual harm, this too is lacking. The Student Plaintiffs received the education and degree advancement for which they paid.  They have not suffered any legally cognizable harm.  The same is true for the semester-wide Fees:   the Student Plaintiffs have not suffered any ascertainable damages from paying for semester-wide Fees because they have not alleged that, for example, they *tried to use* a particular service (if one was promised in the first place), were *denied the service*, and were *damaged* as a result. To be clear, the mere fact that the University *charges* fees does not *ipso facto* mean that when the University moved to remote delivery, a student was damaged (because the payment of fees itself is required by registration), but this is exactly what Plaintiffs would have the Court decide. This is not the law.

### D.    Plaintiffs Ratified Any Alleged Breach

 "Where a party, with knowledge of facts entitling him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation." Frankenmuth Mut. Ins. Co. v. Magaha, 769 So. 2d 1012, 1021-22 (Fla. 2000); see also In re Standard Jury Instructions – Contract & Bus. Cases, 116 So. 3d 284, 328-29 (Fla. 2013) (ratification occurs where a defendant performed an act which breached a contract, the plaintiff knew of the act, knew she could reject the contract because of the act, and accepted the act).

If one assumes, as Plaintiffs allege, that the transition to remote learning in the face of COVID-19 constituted a material breach of some agreement the University had with its students, the Student Plaintiffs could have withdrawn or declared breach of such material term in March 2020 (when the transition took place) and demanded that any prior paid tuition and fees be refunded due to the University's alleged breach.  The Student Plaintiffs did not do so.  Instead,

they chose to continue matriculating remotely, accepting the benefits of remote learning, the opportunity to earn course credit and, ultimately, successfully completing the Spring 2020 semester, making uninterrupted progress towards their degrees, and earning the credits they expected at the price they had promised to pay before the Spring 2020 Semester began.  (Amended Complaint, ¶¶ 20, 23).  It was only *after* receiving all of the benefits of the bargain they made with the University that Plaintiffs filed the instant action seeking to effectively rescind the contract and not pay any tuition or fees for the educational services received.

Florida law does not*,* however, allow the Student Plaintiffs to retain the benefits after they accepted and ratified the University's alleged breaching conduct and then seek a refund after-the-fact.  Allowing that would amount to a wholesale rewriting of the bargain and unjustly enrich *Plaintiffs* by allowing the Student Plaintiffs to receive the education and credits for a reduced price after receiving the benefits from the University.  There is no basis in law that would allow such a result and Plaintiffs' claim should be dismissed with prejudice.

Indeed, in <u>Rood Co. v. Board of Public Instruction</u>, 102 So. 2d 139 (Fla. 1958), the Florida Supreme Court held that:

> [I]f, after acquiring knowledge [of a breach] . . . he either remains silent when he should speak or in any manner recognizes the contract as binding upon him, ratifies or accepts the benefits thereof, he will be held to have waived his right to rescind.  *Thereafter, he will be bound by the contract in the same manner as if the mistake of fact had not occurred.*

*Id.* at 142 (emphasis added) (citing multiple cases).  The Florida Supreme Court imposed the defense even though it resulted in a massive loss to the Plaintiff. As to this outcome, the law is crystal clear: upon acceptance of contractual benefit after learning of the basis for rendering the supposed in-person contract voidable makes a party bound and leaves them with *no* remedy.  Or to use the Supreme Court's words, "[i]t has been repeatedly held that a person by the acceptance

of benefits may be estopped from questioning the validity and effect of a contract; and, where one has an election to ratify or disaffirm a conveyance, he can either claim under or against it, *but he cannot do both*, and having adopted one course with knowledge of the facts, he cannot afterwards pursue the other." Id.; see also Fineberg v. Kline, 542 So. 2d 1002, 1004 (Fla. 3d DCA 1988); Head v. Lane, 495 So. 2d 821, 824 (Fla. 4th DCA 1986). But, "do both" is exactly what Plaintiffs are asking to do:  they want their cake (the Student Plaintiffs' educational progress through remote learning) and they want to eat it, too (by getting a court-manufactured discount off the price the Student Plaintiffs agreed to pay). The law does not permit this.  By accepting the education and benefits from UT, the Student Plaintiffs ratified the alleged breach and are barred from renouncing after-the-fact their obligation to pay the agreed-upon price.

*          *          *

As Plaintiffs' Amended Complaint fails to cure the above deficiencies and the University was well within its right to make the decisions it reached, this Court should dismiss the breach of contract claim with prejudice.

**POINT IV**

**PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT**

**A.      Plaintiffs' Claim Fails Because There Is An Adequate Remedy at Law**

Claims for unjust enrichment, based in theories of equity, are only available where there is no adequate remedy at law.  See Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1518-1519 (11th Cir. 1994).  An unjust enrichment claim fails where an express contract with a legal remedy exists. See Alhassid v. Bank of Am., N.A., 60 F. Supp. 3d 1302 (S.D. Fla. 2014).  The Amended Complaint does not cure the fatal defect of Plaintiffs' unjust enrichment claim.

As noted above, the relationship between students and an institution of higher education is

contractual in nature as a matter of law.  See Villard v. Capella Univ., supra.  Plaintiffs failed to establish that the contract promised exclusively on-campus learning or a *pro rata* refund of semester-wide fees.  Plaintiffs' dissatisfaction with the absence of advantageous terms in the contract does not enable them to escape the existence of a contractual relationship by pleading unjust enrichment.  See, e.g., Whitesell Corp. v. Electrolux Home Prods., No. CV 103-050, 2014 U.S. Dist. LEXIS 131899, at *7 n.3 (S.D. Ga. Sept. 18, 2014) (defendants' argument that the "unjust enrichment doctrine cannot be used to recover damages above and beyond what is allowed by a contract just because one party is dissatisfied with the enforceable limits of that contract" was persuasive).  Allowing Plaintiffs to do so here would be tantamount to allowing them to effectively rewrite the parties' contract.

Even if the Court finds no express contract exists promising the terms Plaintiffs allege, Plaintiffs' unjust enrichment and breach of contract claims are based on the same predicate common facts—they paid tuition and were disappointed that the Student Plaintiffs receiving education remotely for a portion of the Spring 2020 Semester.  Plaintiffs' unjust enrichment claim incorporates by reference all allegations contained in Paragraphs 1 through 68 of the Amended Complaint.  (Amended Complaint, ¶ 69).  These allegations reference the existence of an alleged contract between Plaintiffs and the University.  (See, e.g., Amended Complaint, ¶¶ 2-11).  Those paragraphs also describe the alleged promises Plaintiffs contend gave rise to the contractual obligation.  Unjust enrichment claims in this circumstance must be dismissed under Florida law. See Silver Crown Invs., LLC v. Team Real Estate Mgmt., LLC, 349 F. Supp. 3d 1316, 1332-33 (S.D. Fla. 2018).

Plaintiffs' Amended Complaint also does not plead the essential requirement of a lack of an adequate legal remedy at law which is fatal to their claim.  See, e.g. Coleman v. CubeSmart,

328 F. Supp. 3d 1349, 1367 (S.D. Fla. 2018) (dismissing unjust enrichment claim where plaintiff did not allege that he lacked an adequate remedy at law). Their failure to do so only underscores that the unjust enrichment claim is undeniably based on the *same* alleged facts as the contract claim in the Amended Complaint, and that there *is* an adequate remedy at law, warranting dismissal. See Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., supra.

**B.    Plaintiffs Cannot Establish It Would Be Inequitable For The University To Retain Tuition And Fees Under the Circumstances**

To state a claim for unjust enrichment, Plaintiffs must further establish: (1) they conferred a benefit on the University; (2) the University voluntarily accepted and retained the benefit; and (3) the circumstances are such that it would be *inequitable* for the University to retain the benefit without paying the value of it to Plaintiffs. See AIM Recycling Fla., LLC v. Metals USA, Inc., No. 18-60292-Civ-Zloch, 2019 U.S. Dist. LEXIS 78027, at *3 (S.D. Fla. Mar. 4, 2019) (quoting Duty Free World, Inc. v. Miami Perfume Junction, Inc., 253 So. 3d 689, 693 (Fla. 3d DCA 2018).

Plaintiffs have not alleged—nor can they allege—circumstances such that it would be inequitable or unjust for the University to retain tuition and fees paid by Plaintiffs for the Spring 2020 Semester. While Plaintiffs have alleged dissatisfaction that the experiences of the Student Plaintiffs changed as a result of UT's response to the COVID-19 pandemic, they do not allege facts demonstrating that the University retained any tuition or fees that were not utilized by the University for the purpose intended or that the University enjoyed a reward or benefit as a result of its need to transition to remote learning.

Plaintiffs' entire claim rests on a conclusory and unsupported contention that the University was somehow "enriched" with tuition funds and fees when it was forced by State Executive Orders and the CDC guidance to continue school through remote learning. The Amended Complaint fails to assert actual facts demonstrating UT was enriched at all, much less *unjustly*. Students paid

22

tuition to the University for services and the University continued to provide those services, albeit in a different form than students hoped for part of the semester; but classes continued, education was delivered by professors and other staff, and students received the opportunity to continue earning credits toward a degree.  Plaintiffs' claim that equity requires the refund of a portion of the Student Plaintiffs' tuition, vaguely claiming the value of their education was diminished by receiving it remotely for part of the semester during the pandemic.  (Amended Complaint, ¶¶ 71-74).  However, Plaintiffs fail to identify what alleged costs the University was excused from paying by delivering education differently such that it was unjustly enriched.

Even though the Student Plaintiffs' experience was different from what they expected, they admit that they obtained the *educational* service for which they paid tuition—education, academic credits, and progress toward their degrees—at a price the tuition *they agreed* to pay before starting the semester.  (See id.).  Plaintiffs have alleged no facts demonstrating how the University was unjustly enriched.

The decision in <u>McCabe v. Marywood University</u> is instructive.  166 A.3d 1257, 1264 (Pa. Super. Ct. 2017).  There, the court considered and rejected the plaintiff's argument that the university was unjustly enriched by retaining her tuition after she voluntarily transferred schools. <u>See</u> <u>id.</u>  In affirming dismissal with prejudice of this claim, the court held:

> McCabe paid tuition and received academic credit for courses she enrolled in as a student in the nursing program from the fall of 2011 through the spring of 2013.  McCabe fails to demonstrate how Marywood's retention of McCabe's tuition for the academic credits she earned from an accredited nursing program—credits she then lost by voluntarily transferring schools—qualifies as unjust enrichment.

<u>Id.</u>  Given the unprecedented nature of the pandemic, UT ensured the Student Plaintiffs' education was uninterrupted and complied with all state requirements and CDC recommendations, to protect the health and safety of its students and personnel.  As in <u>McCabe</u>, because the University provided

students with a valuable service, and the credits Student Plaintiffs expected at the price they agreed to pay, it cannot follow that the University was unjustly enriched.  Whether Plaintiffs preferred or were disappointed by remote learning is not relevant.  Allowing Plaintiffs to recoup tuition or fees would create an unjust enrichment in favor of *Plaintiffs*: the Student Plaintiffs will have received and retained the benefits UT provided but be excused from their obligation to pay the agreed-upon price which the University relied to maintain and operate the institution and pay its staff.  Such an outcome would be fundamentally unfair.

Plaintiffs also claim that the University was enriched "unjustly" by not refunding Fees, but they fail to allege any facts establishing that services were not provided, that fees were not paid on a *per-semester* basis as agreed, or that the University was unjustly enriched by receiving fees. While the Student Plaintiffs left campus mid-semester, they were on campus for at least half the semester.  UT was responsible for the costs to maintain a large college campus and housing facilities after the Student Plaintiffs left. There are no allegations that the University enjoyed any cost savings or enrichment because some of its students left campus, or that it did not incur other additional costs in connection with the pandemic-mandated changes.  Finally, as discussed above, the fees charged to students are flat, per-semester fees.  (<u>See</u> Point III.A.3, *supra*).   Even after amending the Complaint, Plaintiffs still have failed to allege facts to establish this essential element.

## POINT V

### <u>PLAINTIFFS FAIL TO STATE A CLAIM FOR CONVERSION</u>

"Conversion is 'an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein.'" <u>Cabana on Collins, LLC v. Regions Bank</u>, No. 11-21204, 2011 U.S. Dist. LEXIS 168846, at *4 n.2 (S.D. Fla. Jun 7, 2011). If there is a contract between the parties, the conversion "must go beyond, and be independent from, a failure to comply

with the terms of [the] contract." Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) (citation omitted); see also Ginsberg v. Lennar Fla. Hldg., Inc., 645 So. 2d 490, 495 (Fla. 3d DCA 1994).  Finally, "a simple monetary debt generally cannot form the basis of a claim for conversion . . . ." Lesti v. Wells Fargo Bank, N.A., 960 F. Supp. 2d 1311, 1325 (M.D. Fla. 2013).

Plaintiffs allege in conclusory fashion that they maintained a property interest over the money they paid for tuition and fees for on campus education and services.  These allegations are not independent of an alleged failure by the University to perform its alleged contractual duties. Plaintiffs have not (and cannot) alleged that UT stole or embezzled their funds or have failed to return funds that it was holding in a segregated account for them.  Intangible items like "on-campus educational and social facilities, services, and experiences" cannot, on their own, support a conversion claim.  Al-Ghena Int'l Corp. v. Radwan, No. 13-61557, 2014 U.S. Dist. LEXIS 199129, at *19 (S.D. Fla. Apr. 154 2014) (dismissing conversion claim with prejudice).  Plaintiffs cannot identify any tangible property that was converted and this claim should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the University seeks an Order dismissing with prejudice Plaintiffs' claims against Defendant and for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

*ATTORNEYS FOR DEFENDANT*

Dated: October 15, 2020          By: s/Jonathan M. Kozak_____
       White Plains, New York           Jonathan M. Kozak

JACKSON LEWIS P.C.
  Jonathan M. Kozak
  44 South Broadway, 14th Floor
  White Plains, New York 10601
  (914) 872-8060
  jonathan.kozak@jacksonlewis.com

*-and-*

JACKSON LEWIS P.C.
  Felice B. Ekelman
  Ryan C. Chapoteau
  666 Third Avenue, 29th Floor
  New York, NY 10017
  (212) 545-4000
  felice.ekelman@jacksonlewis.com
  ryan.chapoteau@jacksonlewis.com

## CERTIFICATE OF SERVICE

I, Jonathan M. Kozak, hereby certify and affirm that a true and correct copy of the

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

PLAINTIFFS' AMENDED COMPLAINT was served via ECF on this 15th day of October, 2020,

upon the following:

Philip L. Fraietta
Alec M. Leslie
BURSOR & FISHER, P.A.
*Attorneys for Plaintiffs*
888 Seventh Avenue
New York, New York 10019

Dated:  New York, New York
        October 15, 2020

s/ Jonathan M. Kozak
Jonathan M. Kozak
