**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

TONI FIORE, JADE D'AMARIO, SEAN
DUNN, and JOSHUA DUNN on behalf of
themselves and all others similarly situated,

          Plaintiffs,

   -against-

THE UNIVERSITY OF TAMPA,

        Defendant.

------------------------------------------------------------x

      Civil Action No.: 7:20-cv-03744 (CS)

## DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING FLORIDA STATUTE § 768.39 IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

JACKSON LEWIS P.C.

 44 South Broadway, 14th Floor
 White Plains, N.Y. 10601
 (914) 872-8060

 *-and-*

 666 Third Avenue
 New York, N.Y. 10017
 (212) 545-4000

 *ATTORNEYS FOR DEFENDANT*

Attorneys of Record:
 Felice B. Ekelman, Esq.
 Jonathan M. Kozak, Esq.
 Ryan C. Chapoteau, Esq.

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ............................................................................................ 2

POINT I .................................................................................................... 2

    THE FLORIDA IMMUNITY STATUTE BARS PLAINTIFFS' CLAIMS IN THE
    AMENDED COMPLAINT ..................................................................... 2

        A.  The Clear Intent Behind The Florida Immunity Statute Is To Prevent The Burden
            And Costs Of Lawsuits Against Universities That Reasonably Acted During the
            COVID-19 Pandemic .................................................................... 2

        B.  The Florida Immunity Statute Also Expressly Bars Plaintiffs' Evidentiary
            Allegations In Support Of Their Claims Regarding Express Or Implied
            Entitlements During The COVID-19 Public Health Emergency ........................... 5

        C.  The Evidentiary Standard Established By The Florida Immunity Statute
            Nevertheless Renders Plaintiffs' Claims Unsustainable ........................................ 7

POINT II ................................................................................................... 8

    PLAINTIFFS' ANTICIPATED ARGUMENT THAT THE FLORIDA IMMUNITY
    STATUTE IS NOT APPLICABLE TO THIS CASE IS UNAVAILING .............................. 8

CONCLUSION ........................................................................................ 10

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Alamo Rent-A-Car, Inc. v. Mancusi</u>,

    632 So. 2d 1352 (Fla. 1994) ............................................................ 9

<u>Birnholz v. 44 Wall Street Fund, Inc.</u>,

    880 F.2d 335 (11th Cir. 1989) .................................................... 8, 9

<u>Brown & Brown, Inc. v. Gelsomino</u>,

    262 So. 3d 755 (Fla. Dist. Ct. App. 2018) .......................... 9

<u>Bunin v. Matrixx Initiatives, Inc.</u>,

    197 So. 3d 1109 (Fla. Dist. Ct. App. 2016) ...................... 9

<u>Chepstow Limited v. Hunt</u>,

    381 F.3d 1077 (11th Cir. 2004) .............................................. 9

<u>Jensen v. Jensen</u>,

    824 So. 2d 315 (Fla. Dist. Ct. App. 2002) ......................... 9

<u>Pembroke Lakes Mall Ltd. v. McGruder</u>,

    137 So. 3d 418 (Fla. Dist. Ct. App. 2014) ......................... 9

<u>Tallahassee Mem. Regional Med. v. Bowen</u>,

    815 F.2d 1435 (11th Cir. 1987) ............................................ 8

<u>Village of El Portal v. City of Miami Shores</u>,

    362 So. 2d 275 (Fla. 1978) .................................................... 9

**Statutes**

Fla. Stat. § 768.39 ("Florida Immunity Statute") ................................. *passim*

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................ 1

Fed. R. Civ. P. 12(b)(6) ................................................................ 1

**Other**

Florida House Bill 1261 (HB 1261) ...................................... 1, 2

Pursuant to the Court's Order dated July 19, 2021, Defendant, The University of Tampa ("UT" or "the University") respectfully submits this Supplemental Memorandum of Law in further support of its Motion to Dismiss the Amended Complaint (the "Amended Complaint") filed by Plaintiffs Toni Fiore, Jade D'Amario, Sean Dunn, and Joshua Dunn ("Plaintiffs")[1] pursuant to Fed. R. Civ. P. 12 (b)(1) and (b)(6).

## PRELIMINARY STATEMENT

On June 29, 2021, the Governor of Florida signed into law Florida Statute § 768.39, Immunity for educational institutions for actions related to the COVID-19 pandemic (the "Florida Immunity Statute").  Recognizing the impact of the COVID-19 global pandemic, which required institutions such as UT to change its practice and delivery of education to students for the safety of the community, students, educators and staff, the Florida Legislature enacted the Florida Immunity Statute expressly for the purpose of codifying defenses to liability under certain circumstances against the very claims asserted against the University by Plaintiffs in this case. Accordingly, in addition to the deficiencies the University already has presented in its prior submissions in support of the motion to dismiss, the Florida Immunity Statute further supports dismissal with prejudice of Plaintiffs' claims relating to UT's reasonable response to the pandemic in the middle of the Spring 2020 semester.

The legislative intent of the Florida Immunity Law was to create a remedial statute providing immunity under certain circumstances, setting an evidentiary standard, and confirming applicable defenses to the very claims being pursued by Plaintiffs here.  After approval by both the Florida Senate and House of Representatives, House Bill 1261 (HB 1261) was enrolled on

---

[1] Plaintiffs Toni Fiore and Sean Dunn are referred to herein as "Parent Plaintiffs", and Plaintiffs Jade D'Amario and Joshua Dunn are referred to herein as "Student Plaintiffs."

April 28, 2021.  The preamble to the enrolled bill outlined the specific purpose of the law, in

relevant part, as follows:

> prohibiting an educational institution that has taken certain
> reasonably necessary actions to diminish the impact or spread of
> COVID-19 from being civilly liable for such actions; specifying that
> the provision of certain services by educational institutions was
> impossible during certain periods of time; providing that certain
> reasonably necessary actions are deemed justified; providing
> exceptions; providing severability; providing for a burden of proof;
> . . . .

CS/HB         1261,         Florida         House         of         Representatives,

https://www.myfloridahouse.gov/Sections/Documents/loaddoc.aspx?FileName=_h1261er.docx&

DocumentType=Bill&BillNumber=1261&Session=2021 (last visited July 29, 2021).[2]  By passing

the bill, the Florida Legislature approved what ultimately became the Florida Immunity Statute.

The Governor signed the bill into law on June 29, 2021.  As explained below, the Florida Immunity

Statute effectively bars the claims asserted by Plaintiffs and otherwise protects the University from

damages claimed as a result of its reasonably necessary actions in response to the pandemic.

## ARGUMENT

## POINT I

## THE FLORIDA IMMUNITY STATUTE BARS PLAINTIFFS' CLAIMS IN THE AMENDED COMPLAINT

**A.** **The Clear Intent Behind The Florida Immunity Statute Is To Prevent The Burden And Costs Of Lawsuits Against Universities That Reasonably Acted During the COVID-19 Pandemic**

The Florida Immunity Statute expressly applies to "lawsuits against educational

institutions based on their efforts to provide educational services while keeping students, faculty,

---

[2] A true and correct copy of this document is attached as Exhibit A to the Declaration of Jonathan M. Kozak dated July 30, 2021 submitted with Defendant's supplemental submission in further support of Defendant's motion.

staff, and communities safe during the COVID-19 public health emergency[.]" Fla. Stat. § 768.39(1). Specifically, pursuant to the law, an educational institution, like UT, "that has taken reasonably necessary actions in compliance with federal, state, or local guidance to diminish the impact or spread of COVID-19 *may not be held liable for, and shall be immune from, any civil damages, equitable relief, or other remedies relating to such actions*." Fla. Stat. § 768.39(3) (emphasis added). Reasonably necessary steps, which are legally justified pursuant to the statute may include, but are not limited to: (1) shifting in-person instruction to online or remote instruction for any period of time; (2) closing or modifying the provision of facilities; and (3) pausing or modifying ancillary student activities and student services. See Fla. Stat. § 768.39(3)(a).

The intent of the Florida Immunity Statute is expressed in the Legislature's findings as written into the law, concluding there was "an overpowering public necessity for, and no reasonable alternative to, providing educational institutions with liability protections against lawsuits seeking tuition or fee reimbursements or related damages resulting from the institutions changing the delivery of educational services, limiting access to facilities, or closing campuses during the COVID-19 public health emergency." Fla. Stat. § 768.39(1). The Florida government recognized that "during the COVID-19 public health emergency, educational institutions *had little choice but to close or restrict access to their campuses* in an effort to protect the health of their students, educators, staff and communities." Id. As noted within the initial provision of the law, because of the "wave of class action lawsuits seeking tuition reimbursement" damages relating to the forced transition to virtual learning, the Florida Legislature recognized an "overpowering public necessity, and no reasonable alternative" to implement the remedial relief provided by the Florida Immunity Law.

The claims alleged in the Amended Complaint are premised solely upon the University's reasonably necessary actions in response to the COVID-19 pandemic and fall squarely within the types of claims barred by the law.  According to the Amended Complaint, UT "announced that because of the global COVID-19 pandemic, all classes would move to online and remote instruction starting March 16."  (Amended Complaint, ¶¶  13, 36).  The University made the decision to move classes to a synchronous learning model for the remainder of the Spring 2020 Semester.  (Amended Complaint, ¶ 14, 37).  Plaintiffs allege further that "[a]s a result of the closure of Defendant's facilities" UT did not provide live, in-person "educational services, facilities and/or opportunities" to the Student Plaintiffs.  (Amended Complaint, ¶ 15, 39).  Plaintiffs also complain of losing access to student governance and student unions; extra-curricular activities, groups, intermural sports, etc.; as well as student art, cultures, and other activities that were paused or modified during the remainder of the Spring 2020 semester.  (Amended Complaint ¶ 43).  These are precisely the responsive actions that the Florida Legislature deemed reasonably necessary to comply with COVID-19 closure orders and to protect the health of their students, educators, staff, and communities.

Specifically, the law states,

> [r]easonably necessary actions taken while a state of emergency was declared for this state for the COVID-19 pandemic include, but are not limited to, any of the following:
>
> 1. Shifting in-person instruction to online or remote instruction for any period of time;
>
> 2. Closing or modifying the provision of facilities, other than housing or dining facilities, on the campus of the educational institution; or
>
> 3. Pausing or modifying ancillary student activities and services available through the educational institution.

4

Fla. Stat. § 768.39 (3)(a)(1)-(3).  These are precisely the actions taken by UT, as alleged by

Plaintiffs, in support of their claims.  (Am. Compl. ¶¶ 36, 37, and 39).  As the statute makes clear,

UT "may not be held liable for, and shall be immune from, any civil damages, equitable relief, or

other remedies relating to such actions."  Fla. Stat. § 768.39(3)(a).

The law also provides,

> [t]he provision of in-person or on-campus education and related
> services is deemed to have been impossible for educational
> institutions during any period of time in which such institutions took
> reasonably necessary actions described in paragraph (a) to protect
> students, staff, and educators in response to the COVID-19 public
> health emergency.

Fla. Stat. § 768.39(b).  While impossibility asserted in defense of an alleged breach of contract

otherwise may be disputable on a motion to dismiss, the new law establishes the defense of

impossibility resulting from the pandemic as a matter of Florida law.  In addition, the law confirms

the actions taken by UT (i.e., transitioning to virtual learning and services under the circumstances

of the COVID-19 pandemic) shall be "deemed justified."  Fla. Stat. § 768.38(3)(c).  Accordingly,

even if Plaintiffs' quasi-contract, unjust enrichment claim was otherwise sustainable, which it is

not, the law undermines an indispensable element of the claim.[3]

Plaintiffs' Amended Complaint must, therefore, be dismissed.

**B.**     **The Florida Immunity Statute Also Expressly Bars Plaintiffs' Evidentiary Allegations
In Support Of Their Claims Regarding Express Or Implied Entitlements During The
COVID-19 Public Health Emergency**

Even if the University was not otherwise immune from Plaintiffs' claims because of its

---

[3] The Florida Immunity Law is not without limits, but there are no allegations supporting any of
the exceptions to application of the law.  Exceptions to the law are contemplated for damages
resulting from breach of express contractual obligations allocating liability, or damages caused by
an act or omission of an educational institution in bad faith or with malice.  See Fla. Stat. §
768.39(5)(a)-(b).  Plaintiffs' claims are premised on alleged implied contractual obligations, and
they allege no facts supporting bad faith or maliciousness.  Accordingly, the exceptions allowed
in the Florida Immunity Statute clearly are not applicable here.

"reasonably necessary steps" in response to the pandemic per § 768.39(3), and/or as a result of the impossibility as a matter of law, other provisions of the Florida Immunity Statute fatally undermine Plaintiffs' claims.   In addition to comprehensive immunity and the absolute defense of impossibility, the law also otherwise eliminates the alleged basis for Plaintiffs' claims.

The Florida Immunity Statute effectively prevents claims that an implied or express contract existed for exclusive in-person, on-campus instruction and unconditional physical access to campus facilities and other university services under the circumstances alleged by Plaintiffs. Specifically, section 768.39(4) states,

> [i]n _any_ action against an educational institution . . . for the reimbursement of tuition or fees, invoices, catalogs, and general publications of an educational institution are _not_ evidence of an express or implied contract to provide in-person or on-campus education and related services or access to facilities during the COVID-19 public health emergency.

Id. (emphasis added).  This provision is directly applicable here, as Plaintiffs' claim is predicated on their contention that "UT entered into a contractual agreement" to provide education services in exchange for tuition and fees by cobbling together unrelated and over-generalized references to "[t]he terms of the contractual agreement were set forth in various publications from UT, including but not limited to UT's Spring Semester 2020 Course Catalog . . . UT's Course Schedule Search and Registration, course-specific syllabi, and course schedules."  (Amended Complaint, ¶ 2).

Plaintiffs rest their various claims on their alleged reliance on terms and alleged representations made within these materials as well as within other UT general marketing publications, contending an implied contract was breached when UT moved to synchronous learning. (Amended Complaint, ¶¶ 2-22, 20-24, 35, 41).  Plaintiffs claim UT's publications support an implied promise that all educational instruction and services would only and always be provided in person and on campus– regardless of circumstance, including regardless of whether the COVID-

19 pandemic and the various federal, state, and local policies and executive orders mandated that change. Plaintiffs' contract-based and related claims are effectively premised on materials that are, as a matter of Florida law, expressly <u>not</u> evidence of an express or implied contract during the public health emergency.

## C.   The Evidentiary Standard Established By The Florida Immunity Statute Nevertheless Renders Plaintiffs' Claims Unsustainable

Even if Plaintiffs' claims were not otherwise subject to dismissal for the reasons outlined above (or in UT's prior submissions), the Florida Immunity Statute further imposes upon Plaintiffs an evidentiary burden of proof which Plaintiffs will be unable to attain. The law provides,

> [i]f an educational institution is required by federal, state, or local order . . . issued in response to the COVID-19 public health emergency to alter the mode of delivery of instruction and related services or access to facilities, the burden of proof for any plaintiff bringing an action against the educational institution for compliance with such order or directive shall be by *clear and convincing evidence to prevail for damages against the institution*.

Fla. Stat. § 768.39(7) (emphasis added). Plaintiffs will be unable to meet their very high burden of showing by clear and convincing evidence that UT breached expressed or implied promises, and that Plaintiffs are entitled to damages as a result.

Plaintiffs concede that the University's decisions and actions were in direct response to governmental closure orders: "[e]ven if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing." (Amended Complaint ¶ 39). Plaintiffs further acknowledge that they do "not take issue with the specific ways that individual professors elected to teach their classes once remote learning was mandated. Plaintiffs do not suggest, for example, that classes should have been taught differently online." (Opposition at 1).

Unquestionably, UT did its best to continue learning and services under unprecedented circumstances. Nevertheless, throughout, the University continued to allow the Student Plaintiffs to attend classes through synchronous learning and to advance towards their degrees by providing full credit for the classes they completed during Spring 2020 semester. Even if Plaintiffs' claims could be asserted, which they cannot, Plaintiffs will be unable to satisfy the high burden of establishing through clear and convincing evidence that UT breached a contract, was unjustly enriched and/or participated in conversion, and that Plaintiffs are entitled to damages.

Thus, all claims within the Amended Complaint are subject to dismissal.

**POINT II**

**PLAINTIFFS' ANTICIPATED ARGUMENT THAT THE FLORIDA IMMUNITY STATUTE IS NOT APPLICABLE TO THIS CASE IS UNAVAILING**

It cannot be credibly disputed that the Florida Legislature intended the Florida Immunity Law to apply to existing tuition and fees litigation against colleges and universities resulting from the impact of the COVID-19 pandemic. Courts are tasked with applying the law that is in effect at the time it issues an order or ruling which, as here, would be the Florida Immunity Statute. See, e.g., Tallahassee Mem. Regional Med. v. Bowen, 815 F.2d 1435, 1454 (11th Cir. 1987) ("A court ordinarily will apply the law in effect at the time it renders its decision") (quotations omitted). As a result, Plaintiffs only basis for challenging the law's applicability to this action would be if they were to establish the law is a substantive law adversely affecting vested rights or imposing new obligations. The context and text of the Florida Immunity Statute, specifically referencing existing litigation against educational institutions, demonstrate a clear intent for the law to apply to matters commenced prior to its passage. However, clear expression of retroactivity may be disregarded where the putatively retroactive statute "adversely affects or destroys vested rights or imposes new

obligations[.]" <u>Birnholz v. 44 Wall Street Fund, Inc.</u>, 880 F.2d 335, 339 (11th Cir. 1989) (quoting

<u>Village of El Portal v. City of Miami Shores</u>, 362 So.2d 275, 277 (Fla. 1978).

     Here, the new law does not impact vested rights or impose new obligations.  Rather, the

Florida Immunity Statute is clearly remedial in nature addressing legal defenses and establishing

evidentiary standards and, therefore, can and should apply retroactively in pre-existing litigation.

<u>See</u>, <u>e.g.</u>, <u>Alamo Rent-A-Car, Inc. v. Mancusi</u>, 632 So. 2d 1352, 1358 (Fla. 1994) ("Procedural or

remedial statutes, on the other hand, are to be applied retrospectively and are to be applied to

pending cases"); <u>Bunin v. Matrixx Initiatives, Inc.</u>, 197 So. 3d 1109, 1110 (Fla. Dist. Ct. App.

2016) ("It is well-settled that '[p]rocedural or remedial statutes . . . are to be applied retrospectively

and are to be applied to pending cases'") (citations omitted); <u>Pembroke Lakes Mall Ltd. v.</u>

<u>McGruder</u>, 137 So. 3d 418, 425 (Fla. Dist. Ct. App. 2014) ("Even in the absence of legislative

indication that a statute should apply retroactively, procedural and remedial statutes 'should be

applied to pending cases in order to fully effectuate the legislation's intended purpose'") (citations

omitted); <u>Village of El Portal v. City of Miami Shores</u>, 362 So. 2d 275, 278 (Fla. 1978) ("Remedial

or procedural statutes do not fall within the constitutional prohibition against retroactive legislation

and they may be held immediately applicable to pending cases"); <u>Jensen v. Jensen</u>, 824 So. 2d

315, 322 (Fla. Dist. Ct. App. 2002) ("Thus, the 2001 amendment is remedial in nature and may be

retroactively applied"); <u>see also</u>, <u>Chepstow Limited v. Hunt</u>, 381 F.3d 1077, 1086 (11th Cir. 2004)

("Georgia statutes addressing procedural and remedial rights may be retroactively applied");

<u>Brown & Brown, Inc. v. Gelsomino</u>, 262 So. 3d 755, 758 (Fla. Dist. Ct. App. 2018) ("This act is

remedial in nature and applies retroactively").

     The Florida Immunity Statute applies to Plaintiffs' claims, and support dismissal with

prejudice of Plaintiffs' Amended Complaint.

## **CONCLUSION**

For the foregoing reasons that Plaintiffs' claims should be dismissed as a result of the Florida Immunity Statute, as well as for the other reasons previously argued in UT prior submissions. The University respectfully requests the Court issue an Order dismissing with prejudice all of Plaintiffs' claims against Defendant and for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

*ATTORNEYS FOR DEFENDANT*

Dated: July 30, 2021
      White Plains, New York

By: /s/Jonathan M. Kozak
    Jonathan M. Kozak

JACKSON LEWIS P.C.
Jonathan M. Kozak
44 South Broadway, 14th Floor
White Plains, New York 10601
(914) 872-8060
jonathan.kozak@jacksonlewis.com

*-and-*

JACKSON LEWIS P.C.
Felice B. Ekelman
Ryan C. Chapoteau
666 Third Avenue, 29th Floor
New York, NY 10017
(212) 545-4000
felice.ekelman@jacksonlewis.com
ryan.chapoteau@jacksonlewis.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Jonathan M. Kozak, hereby certify and affirm that a true and correct copy of the

DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING FLORIDA

STATUTE § 768.39 IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'

AMENDED COMPLAINT was served via ECF on this 30th day of July, 2021, upon the following:

Philip L. Fraietta
Alec M. Leslie
BURSOR & FISHER, P.A.
*Attorneys for Plaintiffs*
888 Seventh Avenue
New York, New York 10019

Dated: New York, New York
      July 30, 2021

/s/ Jonathan M. Kozak
Jonathan M. Kozak
