**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JADE D'AMARIO and JOSHUA DUNN, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>       v.<br><br>THE UNIVERSITY OF TAMPA,<br><br>                    Defendant. | Case No. 7:20-cv-03744-CS<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Jade D'Amario and Joshua Dunn ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant The University of Tampa ("UT" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1.      This is a class action lawsuit on behalf of all people who paid tuition and fees for the Spring 2020 academic semester at UT, and who, because of Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the education for which they paid, and/or the services for which their fees were paid, without having their tuition and fees refunded to them.

2.      UT is a private university with a total enrollment of approximately 9,300 students. UT's campus is located in Tampa, Florida. The university offers over 200 undergraduate and graduate degree programs.

3.      Plaintiffs and UT entered into a contractual agreement for specific services – an

on-campus, in-person education experience at UT.  Plaintiffs were to provide pre-payment, partially in the form of tuition and fees and UT, in exchange, was to provide in-person educational services, experiences, opportunities, and other related facilities to Class Members, including Ms. Jade D'Amario and Mr. Joshua Dunn.  The terms of the contractual agreement, including details of the specific services Defendant was to provide, were set forth in various publications from UT, including but not limited to UT's Spring Semester 2020 Course Catalog ("Course Catalog"),[1] UT's Course Schedule Search and Registration,[2] course-specific syllabi, course schedules, and UT's website.

4.      When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs and Class Members viewed the Course Catalog and Course Schedule Search and Registration to make specific course selections prior to registering and paying for selected courses.

5.      Plaintiffs and Class Members also reviewed UT's website prior to entering into a contractual agreement with Defendant for the provision of educational services.

6.      The Course Catalog provided Plaintiffs and Class Members with information regarding every course offered for the Spring 2020 semester under a section called "Course Descriptions."[3]

7.      Indeed, in the entire Spring 2020 Course Catalog, only two course descriptions mention online learning:  EDL 606 Educational Leadership Internship[4] and EDU 403

---

[1] http://ut.smartcatalogiq.com/en/2019-2020/catalog
[2] https://www.ut.edu/academics/schedule-and-registration/course-schedule-search
[3] http://ut.smartcatalogiq.com/en/2019-2020/catalog/Course-Descriptions
[4] The EDL 606 Course Description says in part that "[t]he internship is accompanied by a hybrid/blended (50% face-to-face, 50% online) seminar…"

Technology in Education II.[5]  No other course description within the 590-page document makes any mention of online instruction.

8.      Moreover, the Course Catalog specifically allowed for students to search for Spring Semester 2020 courses to enroll in based on "Method," with options including "General Classroom," "Hybrid," and "Online."  An exemplar is pasted below:



9.      UT's Course Schedule Search and Registration also provided Plaintiffs and Class Members with information concerning a course's delivery mode (*i.e.*, in-person), instructor, the days and times during which the courses would be held, and the location (including the building and room number) in which courses would be held.  Here too, UT makes no mention of online instruction and specifically references in-person education, as depicted in the screenshots below:



___

[5] The EDU 403 Course Description states that "[s]tudents form design and development teams to create an engaging online based learning experience."



10.     Indeed, for every Spring 2020 class Joshua Dunn and Jade D'Amario registered for, UT represented that the "Delivery Mode" would be "In-Person."

11.     Furthermore, once students enrolled in classes, they received a course schedule, which reinforced the in-person nature of the classes registered for by providing the on-campus building and classroom number where the course was to be held, along with the date, time, and instructor, as pictured below:

Spring Term 2020 (01/21/2020 - 05/08/2020) - All Programs

| Course | Title | Credits | Grading Type | Faculty/Meeting | | Dates | Room |
|---|---|---|---|---|---|---|---|
| BAC 100-1 | BACCALAUREATE DIGITAL SKILLS | 0.0 | SU | Lopez, Megan | 00:00-00:00AM | 01/21/2020 - 03/16/2020 | MAIN / / |
| BAC 101-B2 | FIRST YEAR SEMINAR I | 1.0 | LT | Mitryk, Caitlyn A. | T  08:00-08:50AM | 01/21/2020 - 05/08/2020 | MAIN / HSHP / 110 |
| CHE 150-I | CHEMISTRY FOR HEALTH CARE PROF | 4.0 | LT | Scharf, Nathan | MW 02:30-03:45PM | 01/21/2020 - 05/08/2020 | MAIN / SFB / 287 |
| PHL 202-E | ETHICS | 4.0 | LT | Arvan, Marcus | MWR 11:30AM-12:40PM | 01/21/2020 - 05/08/2020 | MAIN / PH / 210 |
| PSY 101-G | GENERAL PSYCHOLOGY | 4.0 | LT | Stasio, Michael J | MW 01:00-02:10PM | 01/21/2020 - 05/08/2020 | MAIN / PH / 220 |
| SOC 100-P2 | INTRO TO SOCIOLOGY | 4.0 | LT | Engelman, Douglas | TR  04:00-05:50PM | 01/21/2020 - 05/08/2020 | MAIN / SFB / 287 |

12.     When Plaintiff and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020 through the selection of courses in the Course Catalog, Plaintiffs and Class Members were contracting for certain specific services, namely courses labeled as "General Class" or "In-Person," as opposed to courses labeled as "Online."

13.     UT's Course Catalog does not include a reservation of rights to unilaterally change contracted-for educational services from in-person to online remote format.

14.     Other publications from UT reference the in-person nature of the Spring Semester 2020 course offerings, including course-specific syllabi, UT's General Attendance Policy within UT's Academic Policies and Procedures,[6] and UT's Faculty Policies and Procedures Handbook (the "Faculty Handbook").[7]  For instance, course-specific syllabi set forth the physical on-campus classroom where the educational services were to be provided, along with the course's dates and meeting times.

15.     Moreover, UT's General Attendance Policy describes expectations of UT students, stating that "Students are expected to attend classes. An academic program or individual instructor may require a specified level of attendance as a condition for successfully completing a course.  Likewise, instructors may assign a portion of final course grades based on attendance and/or participation.  Faculty must inform students of attendance requirements on syllabi."[8]

---

[6] ut.smartcatalogiq.com/2019-2020/catalog/Academic-Policies-and-Procedures/General-Attendance

[7] https://ut.smartcatalogiq.com/Faculty-Handbook/Faculty-Policies-and-Procedures-Handbook

16.     UT's Faculty Handbook further states that "Faculty members are expected to be available to their students and to the University during the weeks of instruction of the fall and spring semesters" and that "[d]uring the fall and spring terms, faculty members are expected to keep a minimum of five office hours per week.  Scheduled office hours must be included in all course syllabi."[9]

17.     In addition, UT's Tuition and Fee Schedule provides many of the policies and procedures regarding tuition and fees, and the in-person nature of the educational services provided.[10]  For example, the mandatory Student Service Fee "[p]rovides support for a number of student services, programs and activities."  *Id.*  And the mandatory Student Government Fee "[p]rovides basic support to student government, student productions, publications and other student-sponsored organizations."  *Id.*

18.     UT extensively promoted the value of its on-campus experience and related on-campus services to prospective and current students on its website and elsewhere in its marketing materials.

19.     For example, UT's "Campus Life" webpage highlights that "[o]n-campus residents have higher graduation rates, higher GPAs, and report greater satisfaction with their collegiate experience."[11]

---

[9] https://ut.smartcatalogiq.com/Faculty-Handbook/Faculty-Policies-and-Procedures-Handbook/Chapter-3-Responsibilities-of-Faculty-Members/I-Instructional-Responsibilities-of-Faculty-Members/C-The-Faculty-Workday-and-Faculty-Office-Hours
[10] https://www.ut.edu/admissions/tuition-and-costs
[11] https://www.ut.edu/campus-life



### Residence Life

On-campus residents have higher graduation rates, higher GPAs and report a greater satisfaction with their collegiate experience.

Living at UT

Residence Halls and Tours

Applications and Forms

Spartan Living

Dining

Policies

20.     Additionally, UT's website promises to provide students living on-campus with a "Residential Curriculum" designed to develop students' skills in the areas of self-awareness, life skills (such as financial literacy and emotional well-being), interpersonal abilities, and teamwork, among others.



21.     UT advertises on its "University Profile" webpage that an impressive list of

"State-of-the-Art" facilities are available to students.[12]

**State-of-the-Art Facilities (Built Last 20 Years)**

- Health Science and Human Performance Building
- Martinez Athletics Center
- Schoomaker ROTC and Athletics Building
- Sykes College of Business Building
- Vaughn Center (includes Student Center, Reeves Theater, Conference/Seminar Center and Barnes & Noble University Bookstore)
- Sykes Chapel and Center for Faith and Values
- Dickey Health and Wellness Center
- Cass Science Annex
- Seven new residence halls
- R.K. Bailey Art Studios
- Poe Parkway Campus Grand Entryway
- Three parking garages for 3,340 cars
- MacKechnie Academic Building
- Marine Science Center
- Numerous new food venues including Chick-fil-A, Dairy Queen, Einstein Bros. Bagels, Tsunami Sushi, Star Ginger and Starbucks
- Cass Science and Communication Buildings
- Athletic facilities for soccer, softball, baseball and swimming
- Rebuilding of McKay and Smiley Halls
- Naimoli Family Athletic and Intramural Complex
- Thompson Facilities Complex and Chiller Plant
- East Walker and North Walker Academic Buildings
- 16-element Outdoor Leadership Challenge Course
- Daly Innovation and Collaboration Building
- Fitness and Recreation Center
- Kennedy Boulevard Academic Building
- Graduate and Health Studies Building
- Jenkins Hall
- Palm Apartments
- Southard Family Building
- Digital Arts and Fab Lab
- Science Research Laboratories
- Ferman Center for the Arts

22.     UT's "Services and Offices" webpage advertises the in-person services available

to students at the Vaugh Student Center, noting the availability of, among other things, computer

labs and the "Spartan Club."[13]

---

[12] https://www.ut.edu/about-ut/university-profile
[13] https://www.ut.edu/campus-life/vaughn-center/services-and-offices



The Vaughn Student Center houses a number of offices and services that are important for all students and visitors to The University of Tampa. Please see below for information about these services.

- Spartan Card Office
- ATM
- Loan Key Program
- Spartan Club
- Computer Lab
- Bookstore

23.     UT's website states that the "Spartan Club" is a social recreation room open to students daily.[14]

---

[14] https://www.ut.edu/campus-life/vaughn-center/spartan-club-game-room

The **Spartan Club** is located on the second floor of the Vaughn Center. It is a versatile room with board games, four TVs, a portable TV students can use to play video games, three pool tables, card games, full poker sets and music controlled by student building managers.

Students can also choose to relax and study in the Spartan Club at the many chairs, couches and tables.

So come take a break, grab food from The Grille, relax at a table or play one of the many games we have to offer. We will see you at the Spartan Club!

**Hours of Operation**

Open everyday from 12 p.m. to 2 a.m.

**Phone Number:**
(813) 257-7475

**Email:**
eventservices@ut.edu

24.     UT also advertises on its "Campus Life" website a calendar of events available "**exclusively for enrolled students**."  The calendar shows that beginning March 16, 2020 through the end of the Spring Semester 2020, all but two of the scheduled events were cancelled.[15]  A portion of the calendar is provided below:

---

[15] https://www.ut.edu/campus-life/leadership/engage/student-event-calendar (emphasis in original)

Welcome to UT's student event calendar. These events are **exclusively for enrolled students at UT**. Use the calendar to:
- Send yourself reminder emails and/or text messages about upcoming events.
- Add events to your computer's calendar.
- Subscribe to events via RSS or email.



| Date | Time | Event |
|---|---|---|
| Mar. 11 | 4 p.m. | Softball vs. SW Minnesota State (DH) |
| Mar. 11 | 5 p.m. | LifePower Flow Class |
| Mar. 11 | 5:30 p.m. | Queenax HIIT Class |
| Mar. 11 | 7 p.m. | Women's Lacrosse vs. Limestone |
| Mar. 11 | 7:30 p.m. | Zumba |
| Mar. 11 | 8 p.m. | Men's Lacrosse vs. Mount Olive |
| Mar. 12 | 8 a.m. | Queenax HIIT Class |
| Mar. 12 | 12 p.m. | Barre Weight and Resistance Training |
| Mar. 12 | 4 p.m. | Cardio Kickboxing |
| Mar. 12 | 4 p.m. | Cycle and Tone Class |
| Mar. 13 | 2 p.m. | CANCELED Friday Flow Yoga |
| Mar. 13 | 5 p.m. | Rhythm Power Ride Class |
| Mar. 13 | 6 p.m. | Softball vs. Rollins |
| Mar. 14 | 12 p.m. | Softball vs. Rollins (DH) |
| Mar. 14 | 1 p.m. | Men's Lacrosse vs. Emmanuel |
| Mar. 15 | 2:30 p.m. | Tampa Bay Lightning vs. NJ Devils |
| Mar. 15 | 5 p.m. | Queenax HIIT Class |
| Mar. 16 | 9 a.m. | Learning Garden Mondays |
| Mar. 16 | 10 a.m. | CANCELED Vinyasa Flow Class |
| Mar. 16 | 2 p.m. | CANCELED Employer Hosted Career Services Drop Ins |
| Mar. 16 | 5 p.m. | CANCELED Cycle and Tone Class |
| Mar. 16 | 5:30 p.m. | CANCELED Gentle Flow Yoga |
| Mar. 16 | 7:30 p.m. | CANCELED Tea Time - Learn about benefits of tea |
| Mar. 16 | 7:30 p.m. | CANCELED Zumba |
| Mar. 16 | 8 p.m. | CANCELED Queenax HIIT Class |
| Mar. 17 | 8 a.m. | CANCELED Queenax HIIT Class |
| Mar. 17 | 12 p.m. | CANCELED Barre Weight and Resistance Training |
| Mar. 17 | 1 p.m. | CANCELED TRX HIIT Class |
| Mar. 17 | 2 p.m. | CANCELED Beach Volleyball vs. Hawaii |
| Mar. 17 | 4 p.m. | CANCELED Cardio Kickboxing |
| Mar. 17 | 6 p.m. | CANCELED Beach Volleyball vs. Florida Gulf Coast |
| Mar. 17 | 6 p.m. | CANCELED Strength and Mobility Flow Class |
| Mar. 18 | 7 a.m. | CANCELED Rhythm Power Ride Class |
| Mar. 18 | 8 a.m. | CANCELED Natural Flow Yoga |
| Mar. 18 | 8 a.m. | CANCELED TRX HIIT Class |
| Mar. 18 | 10 a.m. | CANCELED Barre Weight Conditioning and Resistance Training |
| Mar. 18 | 12 p.m. | CANCELED Deep Stretch and Relax Yoga |

25.    UT's "Office of Campus Recreation" website promotes the various intramural and club sports available to students.  UT also advertises the availability of its Benson Alex Riseman Fitness and Recreation Center, which offers, among other things, exercise rooms, cardio machines, free weights, and locker rooms.[16]

---

[16] https://www.ut.edu/campus-life/recreation



To further enhance campus life and students' co-curricular experience, The University of Tampa offers a fitness center in the heart of the UT campus. The building features high ceilings, open rooms and liberal use of glass to allow for sunlight and a connection to the outdoors. The open floor plan is intended to enhance visibility, foster social interaction and build community.

**Virtual Tour of the Fitness Center**

The fitness center is a centrally located, one-stop shop for all exercise programs, personal training and evaluation, wellness and nutrition programs, intramurals, recreation activities, club sports and some exercise related laboratory and research activities.

Specifically, the center features six group exercise rooms, which includes an indoor cycling room. Two small fitness assessment rooms are available, as well as a "flexible" classroom to allow for educational and training functions. A large number of Precor cardio machines (treadmills, stationary bikes, elliptical and adaptive motion trainers) as well as free weights, plate loaded and selectorized machines are available for students, faculty and staff. The center also includes offices for Campus Recreation and related staff, as well as lockers.

26.     On its "Academic Support" website, UT advertises the availability and benefits of its Academic Success Center.  UT states that the Academic Success Center is a "one-stop-shop that provides students with the tools they need to succeed academically."  Services provided at the Academic Success Center include academic advising, academic excellence program, skills courses, and tutoring, among other services.[17]

The University of Tampa provides a variety of resources to support students in all aspects of their academic journey.

## Academic Success Center

The Academic Success Center is a one-stop shop that provides students with the tools they need to succeed academically. The center houses the following academic support services: Academic Advising, Academic Coaching, Academic Excellence Programs, Academic Exploration, Academic Skill Courses, Academic Tutoring, SOAR, Strengths-Based Education Program, Student Disability Services, Student Transition and Persistence, Transfer and Veteran Student Advising and UT CARES.

---

[17] https://www.ut.edu/academics/academic-support

27.     UT also advertises its UT Center for Public Speaking, which provides services to help students develop their public speaking skills through "one-to-one tutoring and small group workshops with peer tutors and experienced professionals."[18]



The Center for Public Speaking's mission is to enhance communication skills and offer support services at The University of Tampa. We provide one-to-one tutoring and small group workshops with peer tutors and experienced professionals.

## Speaking Center services include:

- Brainstorming and Outlining
- Mock Interviews
- Delivery and Content
- Evaluation of Visual Aids
- Conference Preparation

We are ready to work with you online or in-person! **To schedule an appointment in person or online, visit our Instagram, @UTampaSpeech.**

Monday to Thursday: 10 a.m. to 6 p.m.
Friday: 10 a.m. to 2 p.m.

## Location:

Ferman Center for the Arts (FCA) building, Room 228 (#46 on the campus map)

28.     UT's "Macdonald-Kelce Library" webpage advertises its library as a benefit of enrollment, promising students access to "275,000 books and 65,181 periodicals;" DVDs, CDs, and records; laptops and other media equipment; and "computer lab and study rooms."[19]

---

[18] https://www.ut.edu/academics/academic-support/ut-center-for-public-speaking
[19] https://www.ut.edu/academics/library



*Fall 2020:*

<u>Visit the library's new website</u>

The library book drop is open. If you are off campus, please address any book returns/packages by mail to:
Macdonald-Kelce Library
401 W. Kennedy Blvd., Box 73F
Tampa, FL 33606-1490

Please contact us at <u>library@ut.edu</u> with any questions.

Need Reference assistance? Librarians are <u>available to email/chat during reference hours.</u>

Here is the <u>liaison list</u> if you need to contact your subject librarian for your department.

The University of Tampa's library opened Oct. 19, 1969, and was originally named in honor of the late St. Louis industrialist, Merl Kelce, whose donation made the construction possible. It was re-named the Macdonald-Kelce Library in 1999 because of the generosity of the Macdonald Family Foundation whose contribution will transform the facility into a state-of-the-art information resource center. The Macdonald-Kelce Library is part of the Tampa Bay Library Consortium.

- **Macdonald-Kelce Online**
  The library's home page. Find information on collections, services, and policies.
- **University of Tampa Institutional Repository**
  Digital repository that collects, preserves, and distributes the intellectual output of the UT community.

**The Macdonald-Kelce Library provides access to:**

- More than 275,000 books and 65,181 periodicals
- Reference materials
- Government documents
- DVDs, laptops, CDs, streaming video, and records
- Media services equipment and support
- Special collections, including:
  - Florida military materials
  - Old and rare books
  - Local history and <u>UT archives</u>
- Reference assistance and bibliographic instruction
- Interlibrary loans and reserve materials
- Computer lab and study rooms

29.    UT also advertises the services available at its Dickey Health and Wellness Center on its website.  UT promises current and prospective students that they can access medical,

counseling, and wellness services at the Health and Wellness Center.[20]

30.      UT promotes the importance of its in-person experiences, encouraging its students to "Learn By Doing."  UT emphasizes that students who "learn by doing, learn more effectively."  UT promises students they will have the opportunity to "solve read-world problems," which will "give them an edge on the competition for jobs and graduate school."[21]





### Learn By Doing

Experiential education allows students to use the theories and skills gained in the classroom to solve real-world problems, giving them an edge on the competition for jobs and graduate school.

Internships

Education Abroad

International Programs

Undergraduate Research Celebration Events

Faculty and Student Research

Service-Learning

News and UT Life

Undergraduate Research and Inquiry

### Learn Effectively

UT emphasizes active learning in the classroom and field research outside it, allowing students to act on what they have learned. Students who learn by doing, learn more effectively.

Leadership and Engagement

Community Engagement and Service-Learning

Leadership Studies

Student Employment

Pillars

eBrochures

Summer Off-Campus Research Opportunities

31.      For example, UT's website for its Department of Biology touts the program's "wide array" of facilities and equipment, including "the marine Science Field Station, three boats, a state-of-the-art DNA sequencer, an electrophoretic gel imaging and documentation system, and a Nanodrop™ Spectrophotometer.[22]

32.      As a precondition for enrollment, Plaintiffs and Class Members were each

---

[20] https://www.ut.edu/campus-life/student-services/dickey-health-and-wellness-center
[21] https://www.ut.edu/academics/experiential-education
[22] https://www.ut.edu/academics/college-of-natural-and-health-sciences/department-of-biology

required to and did pay substantial fees either out of pocket or by utilizing student loan financing.

33.     The fees Plaintiffs and Class Members paid were intended to cover in-person experiences and services for the entirety of the Spring Semester 2020.

34.     On March 11, 2020, Defendant, through a news release, announced that because of the global COVID-19 pandemic, all classes would move to online and remote instruction starting March 16, 2020.

35.     On March 17, 2020, Defendant informed students that all classes would be held remotely via online format through the end of the Spring 2020 Semester.  Thus, none of the contracted-for in-person education services were provided to Plaintiffs or Class Members from March 17, 2020 through the end of the Spring Semester 2020.

36.     UT's spring break was from March 8, 2020 to March 15, 2020.  Thus, UT has not held any in-person classes or related services since Friday, March 6, 2020.  Classes and educational services that have continued have only been offered in an online format, with no in-person component.  Thus, UT did not provide in-person education, experiences, or related services for approximately 50% of the Spring Semester 2020.

37.     As a result of the closure of Defendant's facilities, Defendant has not delivered the in-person classes, educational services, facilities, access and/or opportunities for which the Plaintiffs and Class Members contracted and paid.  Defendant instead provided an alternative educational product of lesser value.  In addition, as a result of the change to online instruction and the closure of Defendant's facilities, Plaintiffs and putative Class Members have been deprived of access to materials, faculty, library facilities, laboratory facilities, activity facilities and the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

The remote education product provided was materially different from the in-person services for which Plaintiffs and the putative Class Members contracted and paid.

38.     Plaintiffs and the putative class are therefore entitled to a refund of tuition and fees paid for in-person educational services, facilities, access and/or opportunities that Defendant has not provided.  Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it did not provide.

39.     Through this lawsuit Plaintiffs seek, for themselves and the Class, defined below, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided.  Plaintiffs seek a return of these amounts on behalf of themselves and the Class as defined below.

## PARTIES

40.     Plaintiff Jade D'Amario is a citizen of New York. She is a full-time undergraduate student at UT, pursuing a degree in Nursing.  The Nursing program at UT relies extensively on in-person instruction, peer collaboration, and access to UT's facilities, among others.  None of these resources were available to Ms. D'Amario while in-person classes were suspended.  Ms. D'Amario paid approximately $8,000 in tuition, fees, meals and housing to Defendant for the Spring 2020 semester.  Fees paid include a $425 Student Health Fee, a $96 Student Government Fee, and $480 Student Service Fee.  UT's Tuition and Fee Schedule provides that the mandatory Student Service Fee "[p]rovides support for a number of student services, programs and activities" and the mandatory Student Government Fee "[p]rovides basic support to student government, student productions, publications and other student-sponsored

17

organizations."[23] Thus, these mandatory fees are specifically intended to cover access to programs, facilities, activities, computing labs, and access to on-campus events, all of which Plaintiffs and Class Members could no longer partake in. Ms. D'Amario has not been provided a refund of any tuition or other mandatory fees, despite the fact that in-person classes and educational services were not provided from March 6, 2020 to the end of Spring Semester 2020.

41. Prior to beginning the Spring Semester 2020, and prior to paying tuition and fees, Ms. D'Amario consulted UT's website, the Course Catalog and Course Schedule and Registration and enrolled in courses for the Spring Semester 2020. In consulting the Course Catalog and Course Schedule Search and Registration, Ms. D'Amario understood and believed that every course in which she enrolled would be taught in-person and that she would have access to the facilities and on-campus services UT extensively advertises and charges students money for. Her understanding and belief was based on the course catalog specifying an on-campus location where the course would be taught and services rendered, as well as that the courses did not display a "Method" or "Delivery Mode" of "Online" on the Course Catalog or Course Schedule and Registration. Thus, the in-person nature of her education was part of the benefit of the bargain, and Ms. D'Amario would not have paid as much, if any, in tuition and fees for the Spring Semester 2020 at UT had she known that the courses would not, in fact, be taught in person, and that she would not have access to the services and facilities extensively promoted by UT as a benefit of enrollment.

42. Plaintiff Joshua Dunn is a citizen of Connecticut. He is a full-time undergraduate student at UT, pursuing a degree in Biology. The Biology program at UT relies extensively on in-person instruction, peer collaboration, and access to UT's laboratory facilities, among others.

---

[23] https://www.ut.edu/admissions/tuition-and-costs

None of these resources were available to Mr. Dunn while in-person classes were suspended.

Mr. Dunn paid approximately $7,000 in tuition, fees, meals and housing to Defendant for the

Spring 2020 semester.  Fees paid include a $425 Student Health Fee, a $96 Student Government

Fee, and a $480 Student Service Fee.  UT's Tuition and Fee Schedule provides that the

mandatory Student Service Fee "[p]rovides support for a number of student services, programs

and activities" and the mandatory Student Government Fee "[p]rovides basic support to student

government, student productions, publications and other student-sponsored organizations."[24]

Thus, these mandatory fees are specifically intended to cover access to programs, facilities,

activities, computing labs, and access to on-campus events, all of which Plaintiffs and Class

Members could no longer partake in.  Mr. Dunn has not been provided a refund of any tuition or

other mandatory fees, despite the fact that in-person classes and educational services were not

provided from March 6, 2020 to the end of Spring Semester 2020.

43.    Prior to beginning the Spring Semester 2020, and prior to paying tuition and fees,

Mr. Dunn consulted UT's website, the Course Catalog and Course Schedule and Registration

and enrolled in courses for the Spring Semester 2020.  In consulting the Course Catalog and

Course Schedule Search and Registration, Mr. Dunn understood and believed that every course

in which he enrolled would be taught in-person and that he would have access to the facilities

and on-campus services UT extensively advertises and charges students money for.  His

understanding and belief was based on the course catalog specifying an on-campus location

where the course would be taught and services rendered, as well as that the courses did not

display a "Method" or "Delivery Mode" of "Online" on the Course Catalog or Course Schedule

and Registration.  Thus, the in-person nature of his education was part of the benefit of the

---

[24] https://www.ut.edu/admissions/tuition-and-costs

bargain, and Mr. Dunn would not have paid as much, if any, in tuition and fees for the Spring Semester had he known that his experience would not, in fact, be conducted in person, and that he would not have access to the services and facilities extensively promoted by UT as a benefit of enrollment.

44.     Defendant The University of Tampa is a private university with its principal place of business at 401 W. Kennedy Blvd., Tampa, Florida 33606.

## JURISDICTION AND VENUE

45.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

46.     This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant conducts substantial business in this District and has sufficient minimum contacts with New York. Defendant has solicited students residing in New York to attend its institution; has accepted money, including application fees, tuition, and other fees from students residing in New York, has websites accessible to students in New York, has entered into contracts with New York residents, and generally has minimum contacts in New York sufficient to satisfy the Due Process Clauses of the New York and United States Constitutions.

47.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff Fiore is a resident of this District.

## **FACTUAL ALLEGATIONS**

### ***Plaintiffs And Class Members Paid Tuition And Fees For Spring Semester 2020***

48.     Plaintiffs and Class Members are individuals who paid the cost of tuition and other mandatory fees for the Spring 2020 Semester at UT.

49.     Spring Semester 2020 classes at UT began on or about January 21, 2020.  Final exams for the Semester concluded on May 8, 2020.

50.     Plaintiffs and Class Members paid the cost of tuition for the Spring Semester 2020, as well as associated fees and costs.

51.     Examples of approximate tuition costs at UT for the Spring Semester 2020 are as follows:

- Undergraduate:  $14,401
- Executive MBA:  $12,528.75
- Physician Assistant Medicine:  $14,000

52.     Fees paid by or on behalf of UT students vary based on program of study.  However, all full-time undergraduate students pay mandatory fees of approximately $2,082.

53.     The tuition and fees described in the paragraphs above are provided by way of example; total damage amounts – which may include other fees that are not listed herein but that were not refunded – will be proven at trial.

54.     Prior to beginning the Spring 2020 semester, and prior to paying tuition and fees, Plaintiffs consulted UT's website, the Course Catalog and Course Schedule Search and enrolled in courses for the Spring 2020 semester.  In consulting the Course Catalog and Course Schedule Search and Registration, Plaintiffs understood and believed that every course in which they enrolled would be taught in person.  Plaintiffs' understanding and belief was based on the course

21

catalog specifying an on-campus location where the course would be taught, an "in-person" delivery mode of instruction, and that the courses were neither designated nor described as online courses.  Thus, the in-person nature of the courses was part of the benefit of the bargain, as confirmed by course-specific syllabi and course schedules issued by UT.  Plaintiffs would not have paid as much, if any, in tuition and fees for the Spring 2020 semester at UT had they known that the courses and educational services would not, in fact, be available in person.

### *In Response To COVID-19, UT Closed Campuses And Cancelled All In-Person Classes*

55.     On March 11, 2020, Defendant, through a news release, announced that because of the global COVID-19 pandemic, all classes would move to online and remote instruction starting March 16.

56.     On March 17, 2020, Defendant informed students that all classes would be held remotely via online format through the end of the Spring 2020 Semester.

57.     UT has not held any in-person classes since March 6, 2020 (the last academic day prior to Spring Break).  Classes that have continued have only been offered in an online format, with no in-person experiences or access to on-campus facilities or technology.

58.     As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiffs and the putative class contracted and paid for.  Plaintiffs and the putative class are therefore entitled to a refund of all tuition and fees for services, facilities, access and/or opportunities that Defendant did not provide.  Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly and arbitrarily retained funds for services it did not provide.

59.     There are hundreds, if not thousands, of institutions of higher learning in this country.  Each institution markets and offers different and competing education products.

60.    Some institutions of higher learning provide curriculum and experiences that are offered on a remote basis through online programming, which do not provide for physical attendance by students.  These products are significantly less expensive than competing in-person product offerings.

61.    Defendant's institution markets, offers, and promises an in-person, hands-on program complete with access to its campus facilities and services.

62.    Plaintiffs and members of the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's institution and specifically chose to enroll in the on-campus product and paid tuition and fees on that basis.

63.    Defendant markets UT on-campus experience as a benefit of enrollment on UT's website:



23

## Experiential Education: Learn by Doing

Experiential learning allows you to act on what you have learned and to use the theories and skills gained in the classroom to solve real-world problems. It also gives you an edge on the competition for jobs and graduate school. The University of Tampa has a long history of valuing experiential education. Our balanced approach toward theory and practice starts at new student orientation and extends beyond graduation. UT keeps class sizes small, fosters individual attention from faculty and emphasizes active learning both in the classroom and beyond, creating an environment where education through application thrives.



UT is the place to make new connections and form friendships.
Campus Life

64. The online learning options offered to UT students are subpar in practically every aspect, including but not limited to the lack of facilities, materials, and access to faculty. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

65. The remote learning options are in no way the equivalent of the in-person education putative Class Members contracted and paid for. The remote educational experience provided was not even remotely worth the amount Defendant charged Class Members for Spring Semester 2020. The tuition and fees for in-person experiences at UT are higher than tuition and fees for other online institutions because such costs cover not just the academic instruction, but

encompass an entirely different experience that includes, but is not limited to:

- face to face interaction with professors, mentors, and peers;

- access to facilities such as libraries, laboratories, computer labs, and study rooms;

- student governance and student unions;

- extra-curricular activities, groups, intramural sports, etc.;

- student art, culture, and other activities;

- social development and independence;

- hands on learning and experimentation; and

- networking and mentorship opportunities.

66. Through this lawsuit Plaintiffs seek, for themselves and Class Members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided. Plaintiffs seek return of these amounts on behalf of themselves and the Class, as defined below.

## CLASS ALLEGATIONS

67. Plaintiffs seek to represent a class defined as all people who paid UT Spring Semester 2020 tuition and/or fees for in-person educational services that UT failed to provide, and whose tuition and fees were not refunded (the "Class"). Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

25

68.     Plaintiff D'Amario also seeks to represent a subclass consisting of Class Members who reside in New York (the "New York Subclass").

69.     Plaintiff Dunn also seeks to represent a subclass consisting of Class Members who reside in Connecticut (the "Connecticut Subclass") (collectively, the "Subclasses").

70.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

71.     **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are tens of thousands of members in the Class and Subclass.  Although the precise number of Class Members is unknown to Plaintiffs, the true number of Class Members is known by Defendant and may be determined through discovery.  Class Members may be notified of the pendency of this action by mail and/or publication through records in Defendant's possession.

72.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class Members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant accepted money from Class and Subclass members in exchange for the promise to provide in-person educational services;

(b)     whether Defendant has provided the in-person educational services for which Class and Subclass members contracted;

(c)     whether Class and Subclass members are entitled to a refund for that portion of the tuition and fees paid in exchange for contracted-for services that Defendant did not provide;

(d)     whether Defendant is liable to Plaintiffs, the Class, and Subclass for unjust

26

enrichment.

73.     **Typicality.**  Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass Members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiffs.

74.     **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Class and Subclass.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclass.

75.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

76.     In the alternative, the Class and Subclasses may also be certified because:

27

(a)     the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

<u>**COUNT I**</u>
**Breach Of Contract**
**(On Behalf Of The Class And Subclasses)**

77.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

78.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclasses against Defendant.

79.     Plaintiffs and Defendant entered into a contractual relationship where Plaintiffs would provide payment in the form of tuition and fees, and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services. The terms of the parties' contractual relationship are set forth in publications from Defendant, including UT's website, the Spring Semester 2020 Course Catalog, UT's Course Schedule Search, UT's course-specific syllabi, and Spring Semester 2020 class schedules issued by UT.

80.     When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs

and Class Members viewed UT's website, which promised access to UT's various on-campus facilities, laboratories, study rooms, libraries, social lounges, etc.  Plaintiffs and Class Members also viewed the Course Catalog to make specific course selections prior to registering and paying tuition and fees for those selected courses.  Defendant's Course Catalog and Course Schedule Search constitute an offer to enter a contractual agreement.

81.     The Course Catalog and Course Schedule Search provided Plaintiffs and Class Members with information regarding the courses offered, the instructor, the days and times during which the courses would be held, and the location (including the building and room number) in which the courses would be held.

82.     Indeed, the Course Catalog specifically noted which classes were in online format within the "Course Description" section, and allowed Plaintiffs and Class Members to search for Spring Semester 2020 courses based on "Method" of instruction, which included options like "General Classroom," "Hybrid," or 'Online."  The Course Schedule Search and Registration function similarly represented that the delivery mode of classes would be "in-person."  Moreover, course-specific syllabi and class schedules issued by UT confirmed the in-person nature of classes by providing on-campus locations (by building and classroom) and meeting times for each class.

83.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above.  Plaintiffs, Class, and Subclass members fulfilled their end of the bargain when they paid monies due for Spring Semester 2020 tuition.  Tuition for Spring Semester 2020 were intended to cover in-person educational services from January through May 2020.  In exchange for tuition monies paid, Class and Subclass Members were entitled to in-person educational services through the end of the

Spring Semester.

84.     Defendant materially breached the parties' contractual agreement by failing to provide in-person education services for the entirety of the Spring Semester 2020.  The provisions of the contract breached by Defendant include, but are not limited to, the provision setting forth the details of in-person educational services as described on UT's website and in the Spring Semester 2020 Course Catalog, Course Schedule Search and Registration, course-specific syllabi, and class schedules.  All of these documents indicated classes would be administered in an in-person, on-campus setting.  None of these documents made any reference to the administration of these courses in an online format.

85.     In addition, UT's Tuition and Fee Schedule provides many of the policies and procedures regarding tuition and fees, and the in-person nature of such.[25]  For example, the mandatory Student Service Fee "[p]rovides support for a number of student services, programs and activities."  *Id.*  And the mandatory Student Government Fee "[p]rovides basic support to student government, student productions, publications and other student-sponsored organizations."  *Id.*

86.     Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above by failing to provide in-person educational services from March 6, 2020 through the end of the Spring 2020 semester.  Defendant has retained monies paid by Plaintiffs and the Class for their Spring Semester 2020 tuition and fees, without providing them the benefit of their bargain.

87.     Plaintiffs and members of the Class and Subclass have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of

---

[25] https://www.ut.edu/admissions/tuition-and-costs

the education, experience, and services that they were promised and for which they have already paid.

88.     As a direct and proximate result of Defendant's breach, Plaintiffs, the Class, and Subclass are entitled to damages, to be decided by the trier of fact in this action, to include but no be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant has failed to deliver.  Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since UT has not held in-person classes or services since March 6, 2020.

89.     Defendant's performance under the contract is not excused due to COVID-19. Indeed, Defendant should have refunded the pro-rated portion of any education services not provided.  Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services it did not provide.

90.     Therefore, Defendant should return a pro-rata share of the tuition and fees paid by Plaintiffs and Class Members that relate to those in-person educational services that were not provided after UT suspended in-person classes and services on March 6, 2020.  In-person educational services were not provided for approximately 50% of the Spring Semester 2020.

<u>**COUNT II**</u>
**Unjust Enrichment**
**(On Behalf Of The Class And Subclasses)**

91.     Plaintiffs hereby incorporate by reference the allegations contained all preceding paragraphs of this complaint.

92.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclasses against Defendant.

93.     Plaintiffs and members of the Class and Subclasses conferred a benefit on

Defendant in the form of monies paid for Spring Semester 2020 tuition and other fees in exchange for certain service and promises.  Tuition and fees for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020.  In exchange for tuition and fee monies paid, Class Members were entitled to in-person educational services through the end of the Spring Semester.

94.     Defendant voluntarily accepted and retained this benefit by accepting payment.

95.     Defendant has retained this benefit, even though Defendant has failed to provide the education, experience, and services for which the tuition and fees were collected, making Defendant's retention unjust under the circumstances.  Accordingly, Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since UT shut down in-person classes and services on March 6, 2020.

96.     It would be unjust and inequitable for Defendant to retain the benefit, and Defendant should be required to disgorge this unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class and Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclasses;

(b)     For an order finding in favor of Plaintiffs and the Class and Subclasses on all counts asserted herein;

(c)     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)   For injunctive relief as pleaded or as the Court may deem proper; and

(g)   For an order awarding Plaintiffs, the Class, and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: November 3, 2021                        Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    */s/ Philip L. Fraietta*
            Philip L. Fraietta

Philip L. Fraietta
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  pfraietta@bursor.com
            aleslie@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice*)
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Attorneys for Plaintiffs*