**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JADE D'AMARIO and JOSHUA DUNN on behalf of themselves and all others similarly situated, <br><br>             Plaintiffs, <br><br>    v. <br><br> THE UNIVERSITY OF TAMPA, <br><br>             Defendant. | Case No. 7:20-cv-03744-CS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT**

Dated: May 25, 2022

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com
        aleslie@bursor.com

*Proposed Class Counsel*

## TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ................................................................................................... 1

I.     FACTUAL AND PROCEDURAL BACKGROUND........................................ 2

    A.    Factual Background ................................................................. 2

    B.    Procedural Background............................................................ 4

ARGUMENT ........................................................................................................ 5

II.    THE COURT SHOULD PRELIMINARILY APPROVE THE
PROPOSED SETTLEMENT ................................................................. 5

    A.    The Terms of the Settlement Are Substantively Fair, Adequate,
and Reasonable ..................................................................... 5

        1.    Complexity, Expense, and Likely Duration of the Litigation
(*Grinnell* Factor 1) ...................................................6

        2.    The Reaction of the Class (*Grinnell* Factor 2)............................7

        3.    The Stage of the Proceedings and the Amount of Discovery
Completed (*Grinnell* Factor 3)........................................7

        4.    Plaintiffs Would Face Real Risks if the Case Proceeded
(*Grinnell* Factors 4 and 5).............................................8

        5.    The Risks of Maintaining a Class Through Trial (*Grinnell*
Factor 6)................................................................9

        6.    Defendant's Ability to Withstand a Greater Judgment
(*Grinnell* Factor 7) ....................................................9

        7.    The Reasonableness of the Settlement in Light of the
Possible Recovery and the Attendant Risk of Litigation
(*Grinnell* Factors 8 And 9)...........................................9

    B.    The Remainder of the Rule 23(e)(2) Factors Support Preliminary
Approval ............................................................................ 11

        1.    The Allocation Plan is Fair and Adequate ...............................11

        2.    The Proposed Form and Method of Providing Notice to the
Proposed Settlement Class are Appropriate................................11

        3.    Attorneys' Fees and Expenses are Reasonable...........................12

        4.    The Parties Have No Additional Agreements............................13

        5.    Proposed Settlement Class Members are Treated Equitably ..................13

III.    PROVISIONAL CERTIFICATION OF THE PROPOSED
SETTLEMENT CLASS IS APPROPRIATE.......................................... 13

     A.     The Proposed Settlement Class Meets the Requirements of Rule 23(a) ............................................................................................................. 15

          1.     Numerosity ................................................................................. 15

          2.     Common Questions of Law and Fact ........................................... 15

          3.     Typicality ................................................................................... 16

          4.     Adequacy .................................................................................... 17

     B.     The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ..................... 19

          1.     Common Issues Predominate Over Any Individual Ones ......................... 19

          2.     A Class Action is a Superior Mechanism .................................... 20

IV.     THE COURT SHOULD PRELIMINARILY APPOINT NAMED PLAINTIFFS AS SETTLEMENT CLASS REPRESENTATIVES ............................... 21

V.     THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ..................... 21

CONCLUSION ....................................................................................................... 22

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ...................................................................................... 13, 19, 20

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
    222 F.3d 52 (2d Cir. 2000) .................................................................................. 21

*Brown v. Title Ticor Ins. Co.,*
    982 F.2d 386 (9th Cir. 1992) ............................................................................... 19

*City of Detroit v. Grinnell Corp.,*
    495 F.2d  (2d Cir. 1974) ............................................................................... 2, 5, 10

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995) .................................................................................. 15

*County of Suffolk v. Long Island Lighting Co.,*
    710 F. Supp. 1422 (E.D.N.Y. 1989) ..................................................................... 14

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006) ................................................................................ 17

*Dziennik v. Sealift, Inc.,*
    2007 WL 1580080 (E.D.N.Y. May 29, 2007) ....................................................... 17

*Ebin v. Kangadis Food Inc.,*
    297 F.R.D. 561 (S.D.N.Y. 2014) ..................................................................... 17, 18

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.,*
    301 F.R.D. 116 (S.D.N.Y. 2014) .......................................................................... 15

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. Apr. 29, 2005) .................................................... passim

*Gilliam v. Addicts Rehab. Ctr. Fund,*
    2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .......................................................... 10

*Green v. Wolf Corp.,*
    406 F.2d 291 (2d Cir. 1968) ................................................................................ 20

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ........................................................................ 13, 20

*In re AOL Time Warner, Inc.,*
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................................................. 7

*In re Austrian & German Bank Holocaust Litig.,*
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................. 6, 7, 8, 9

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.,*
   55 F.3d 768 (3d Cir. 1995) ................................................................................. 13, 14

*In re Lloy'd Am. Trust Fund Litig.,*
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ............................................................. 12

*In re Merrill Lynch & Coj., Inc. Research Reports Sec. Litig.,*
   2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ................................................................. 11

*In re Namenda Direct Purchaser Antitrust Litig.,*
   462 F. Supp. 3d 307 (S.D.N.Y. 2020) ....................................................................... 11

*In re Prudential Insur. Sales Practices Litig.,*
   962 F. Supp. 450 (D.N.J. 1997) ................................................................................ 20

*In re Telik, Inc. Secs. Litig.,*
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ....................................................................... 11

*In re Visa Check/MasterMoney Antitrust Litig.,*
   280 F.3d 124 (2nd Cir. 2001) ................................................................................... 20

*Joel A. v. Giuliani,*
   218 F.3d 132 (2d Cir. 2000) ..................................................................................... 11

*Lenahan v. Sears, Roebuck & Co.,*
   2006 WL 2085282 (D.N.J. July 10, 2006) ................................................................ 14

*Marisol A. v. Giuliani,*
   126 F.3d 372 (2nd Cir. 1997) ................................................................................... 16

*Martens v. Smith Barney Inc.,*
   181 F.R.D. 243 (S.D.N.Y. 1998) ............................................................................... 17

*McBean v. City of New York,*
   228 F.R.D. 487 (S.D.N.Y. 2005) ............................................................................... 19

*Milonas v. Williams,*
   691 F.2d 931 (10th Cir. 1982) .................................................................................. 16

*Newman v. Stein,*
   464 F.2d 689 (2d Cir. 1972) ..................................................................................... 10

*Ortega v. Uber Techs.*,
    2018 WL 4190799 (E.D.N.Y. May 4, 2018) ........................................................................ 12

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ......................................................................................................... 19

*Robidoux v. Celani*,
    987 F.2d 931 (2nd Cir. 1993) .......................................................................................... 16

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986) ............................................................................................ 19

*Spicer v. Pier Sixty, LLC*,
    2012 WL 4364503 (S.D.N.Y. Sept. 14, 2021) ................................................................ 13

*TBK Partners, Ltd. v. Western Union Corp.*,
    517 F. Supp. 380 (S.D.N.Y. 1981) .................................................................................... 6

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*,
    2004 WL 2997957 (S.D.N.Y. May 14, 2004) ................................................................ 10

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ......................................................................................... 5

*Torres v. Gristede's Oper. Corp.*,
    2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) .................................................................. 7

*Toure v. Cent. Parking Sys.*,
    2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ................................................................ 17

*Trinidad v. Breakaway Courier Sys., Inc.*,
    2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) .................................................................... 17

*Wagner v. NutraSweet Co.*,
    95 F.3d 527 (7th Cir. 1996) ............................................................................................ 17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................................... 15, 16, 19

*Wright v. S. New Hampshire Univ.*,
    2021 WL 1617145 (D.N.H. Apr. 26, 2021) ............................................................... 12, 13

*Zivkovic v. Laura Christy LLC*,
    329 F.R.D. 61 (S.D.N.Y. 2018) ...................................................................................... 15

## STATUTES

Florida Statute § 768.39 ............................................................................................................ 4, 5

**RULES**

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 4

Fed. R. Civ. P. 15(a)(1) ............................................................................................. 4

Fed. R. Civ. P. 23(a) ...................................................................................... 15, 17, 19

Fed. R. Civ. P. 23(a)(2) ....................................................................................... 15, 16

Fed. R. Civ. P. 23(a)(4) .............................................................................................. 17

Fed. R. Civ. P. 23(b)(3) ................................................................................. 2, 15, 19, 20

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................... 21, 22

Fed. R. Civ. P. 23(c)(3) .............................................................................................. 21

Fed. R. Civ. P. 23(e)(2) ............................................................................................... 6

**OTHER AUTHORITIES**

Newberg on Class Actions (4th ed. 2002) ....................................................... 13, 14

## INTRODUCTION

In this putative class action, Plaintiffs Jade D'Amario and Joshua Dunn ("Plaintiffs") allege that Defendant The University of Tampa ("Tampa," "UT," or "Defendant") breached a contractual agreement to provide an in-person educational experience when it transitioned Spring Semester 2020 classes to remote learning in light of the COVID-19 pandemic.  Plaintiffs seek a *pro rata* refund for themselves and all other similarly situated students for educational services for which, they claim, they and class members paid for that Defendant did not provide.  Since the partial denial of Defendant's motion to dismiss the First Amended Complaint, the Parties have been involved in extensive settlement discussions and disclosures, which ultimately culminated in a mediation with the Honorable Joseph P. Farina (Ret.), formerly of the 11th Judicial Circuit in Florida, and now with JAMS.  The mediation was successful, and the Parties have negotiated an exceptional agreement that delivers immediate relief to class members.

Notably, on a dollar-per-student basis, this Settlement falls squarely within the range established by previous, similar settlements that have been preliminarily and finally approved in the COVID-19 tuition and fee refund context.  *See, e.g.*, *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.) ($2.4MM common fund); *Wright v. S. New Hampshire Univ.*, No. 1:20-cv-00609 (D.N.H.) ($1.25MM common fund); *Martin v. Lindenwood Univ.*, No. 4:20-cv-01128 (E.D. Mo.) ($1.65MM common fund).  What is more, Settlement Class Members (as defined in the settlement agreement) will <u>automatically</u> receive a *pro rata* cash payment as a percentage of the total amount of tuition and fees he or she paid to Tampa for the Spring 2020 Semester, unless they exclude themselves from the Settlement.  In other words, Settlement Class Members will not be required to submit a claim form in order to receive a *pro rata* cash payment.

1

As discussed below, this Settlement is fair, reasonable, and adequate and otherwise satisfies the requirements of Rule 23(a) and (b)(3) and the factors outlined in *City of Detroit v. Grinnell Corp.*, 495 F.2d 488 (2d Cir. 1974).  The Court should have no hesitation finding that the Settlement falls within the range of possible approval.  Accordingly, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Bursor & Fisher, P.A. as Class Counsel; (4) appoint Jade D'Amario and Joshua Dunn as Class Representatives for the Settlement Class Members; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice"), attached as Exhibits B-D to the Settlement Agreement, and direct distribution of the Proposed Notice.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Background

Plaintiffs and Settlement Class Members are current and/or former students of Defendant The University of Tampa.  Plaintiffs allege that they and the alleged class members "entered into a contractual agreement for specific services – an on-campus, in-person education experience at UT.  Plaintiffs were to provide pre-payment, partially in the form of tuition and fees and UT, in exchange, was to provide in-person educational services, experiences, opportunities, and other related facilities to Class Members, including Ms. Jade D'Amario and Mr. Joshua Dunn." Second Amended Complaint (ECF No. 45) ("SAC") ¶ 3.  They also allege, "[t]he terms of the contractual agreement, including details of the specific services Defendant was to provide, were set forth in various publications from UT, including but not limited to UT's Spring Semester

2

2020 Course Catalog ('Course Catalog'), UT's Course Schedule Search and Registration, course-specific syllabi, course schedules, and UT's website." *Id.* The SAC further alleges "[w]hen Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs and Class Members viewed the Course Catalog and Course Schedule Search and Registration to make specific course selections prior to registering and paying for selected courses." *Id.* ¶ 4.

Plaintiffs also allege that as "[a]s a result of the closure of Defendant's facilities, Defendant has not delivered the in-person classes, educational services, facilities, access and/or opportunities for which the Plaintiffs and Class Members contracted and paid." *Id.* ¶ 37. Specifically, Plaintiffs claim "UT did not provide in-person education, experiences, or related services for approximately 50% of the Spring Semester 2020." *Id.* ¶ 36. As such, Plaintiffs allege they are "entitled to a refund of tuition and fees paid for in-person educational services, facilities, access and/or opportunities that Defendant has not provided." *Id.* ¶ 38. Defendant denies that it breached any express or implied contract with its students or that it was unjustly enriched as a result of the change in learning modalities required during the Spring 2020 Semester.

Defendant has maintained that it acted properly, reasonably in accord with all applicable laws, rules, regulations, and ordinances to protect the health and safety of its students, faculty and staff, and that it did not violate any express or implied contractual obligations to its Spring 2020 students, particularly in light of the unprecedented circumstances created by the COVID-19 pandemic. Nevertheless, UT has agreed to the settlement to avoid the time, inconvenience, costs and uncertainty of protracted litigation both for itself and its students and, most importantly,

because it wishes to instead focus its attention and resources on its priority of continuing to provide top quality education and services to its students.

### B.      Procedural Background

On May 14, 2020, Toni Fiore filed a putative class action complaint in the United States District Court for the Southern District of New York.  The complaint alleges that Defendant should have refunded tuition and fees to certain students for the Spring 2020 academic semester at UT, after Defendant ceased in-person instruction and moved to a remote format in light of the COVID-19 pandemic.  ECF No. 1.  In response to the complaint, on July 31, 2020, Defendant filed a letter requesting a pre-motion conference on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  ECF No. 6.  On August 18, 2020, Ms. Fiore filed a letter informing the Court that she intended to file a First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1).  ECF No. 12. On August 19, 2020, Ms. Fiore filed a letter in response to Defendant's July 31, 2020 letter. ECF No. 14.

On September 15, 2020, pursuant to Fed. R. Civ. P. 15(a)(1), Ms. Fiore filed a First Amended Class Action Complaint, adding Plaintiffs Jade D'Amario, Joshua Dunn, and Sean Dunn as named plaintiffs.  ECF No. 16.  In response to the amended complaint, on October 15, 2020, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ECF No. 19.  On November 13, 2020, Plaintiffs filed an opposition to the motion to dismiss. ECF No. 26.  On December 4, 2020, Defendant filed a reply in support of its motion to dismiss. ECF No. 28.

On July 16, 2021, with the motion to dismiss still pending, Defendant filed a letter requesting leave to file supplemental briefing regarding Florida Statute § 768.39, which was signed into law on June 29, 2021.  ECF No. 36.  Defendant argued, *inter alia*, that Florida Statute

§ 768.39 granted it immunity from all liability stemming from this lawsuit.  *Id.*  On July 19,

2021, the Court granted the Parties leave to file supplemental briefing regarding Florida Statute §

768.39.  ECF No. 37.  Defendant filed its supplemental brief on July 30, 2021.  ECF No. 39.

Plaintiffs filed their response on August 10, 2021, arguing that Florida Statute § 768.39 was

unconstitutional and could not apply retroactively.  ECF No. 40.  Defendant filed its reply on

August 16, 2021.  ECF No. 42.

On October 20, 2021, the Court issued an Opinion & Order granting in part and denying

in part the motion to dismiss and dismissing Ms. Toni Fiore and Mr. Sean Dunn as named

plaintiffs for lack of standing.  ECF No. 44.  On November 3, 2021, Plaintiffs filed the operative

Second Amended Complaint.  ECF No. 45.  On November 17, 2021, Defendant filed an Answer

to the Second Amended Complaint, denying the allegations generally and asserting twenty-six

affirmative and other defenses.  ECF No. 47.

## ARGUMENT

## II.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

### A.   The Terms of the Settlement Are Substantively Fair, Adequate, and Reasonable

The Settlement falls within the "range of reason" such that notice and a final hearing as

to the fairness, adequacy and reasonableness of the Settlement is warranted.  In evaluating the

substantive fairness of a class action settlement, courts in the Second Circuit consider the nine

factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d at 463.  In finding that a

settlement is fair, not every factor must weigh in favor of settlement; "rather, the court should

consider the totality of these factors in light of particular circumstances."  *Thompson v. Metro.*

*Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003). Taken together, the *Grinnell* factors and Rule 23(e)(2) weigh heavily in favor of preliminarily approving the proposed Settlement.

### 1.    Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor 1)

By reaching a favorable settlement prior to trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

This case is no exception. As discussed herein, the Parties have engaged in extensive motion practice and formal and informal discovery. Fraietta Decl. ¶ 6. The next steps in the litigation would have been resolution by the Court of Plaintiffs' forthcoming motion for class certification, and Defendant's forthcoming motion for summary judgment. At minimum, these efforts would be costly and time-consuming for the Parties and the Court, and creates risk that a litigation class would not be certified and/or that the Settlement Class Members would recover nothing at all. Tampa is represented by formidable defense counsel well-versed in tuition refund litigation, and Tampa has indicated that it would continue to assert numerous defenses on the merits. *See, e.g.*, Answer to Second Amended Complaint (ECF No. 47). Plaintiffs and Class Counsel are also aware that Tampa would oppose class certification vigorously, and that Tampa would prepare a competent defense at trial. Looking beyond trial, Plaintiffs are also keenly

aware that Tampa could appeal the merits of any adverse decision, thereby further delaying any potential recovery for the Class.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class.  This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty whereas litigation does not and could result in defeat for the Class on summary judgment, at trial or on appeal.  Consequently, this *Grinnell* factor plainly weighs in favor of preliminary approval of the proposed Settlement.

### 2.       The Reaction of the Class (*Grinnell* Factor 2)

Since Notice of the Settlement has not yet been issued to the Class, it is not possible to gauge the reaction of the Class at this time.  Prior similar settlements in the COVID-19 tuition refund context suggest that the Class will react favorably.

### 3.       The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor 3)

This factor goes to "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).  "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted).   "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).

Here, Class Counsel are sufficiently well informed of the strengths and weaknesses of the claims, having drafted three separate pleadings and survived, in part, a motion to dismiss. Class Counsel also spoke with potential merits and damages experts concerning the strengths and weaknesses of the case, as well as the strengths and weaknesses of Tampa's arguments and affirmative defenses.  Moreover, the information exchanged during settlement negotiations permitted Class Counsel to learn the relevant facts and circumstances in an efficient and cost-effective manner.  Tampa provided extensive financial information detailing tuition and fees assessed for the Spring 2020 semester. The Parties also exchanged further information through mediation submission, as well as various written correspondence and phone calls. As a result, Class Counsel was well-positioned to evaluate the strengths of Plaintiffs' claims, Tampa's defenses, and prospects for success.  This *Grinnell* factor thus also weighs in favor of preliminary approval.

### 4.       Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs believe their case is strong, it is not without risk.  At the time of the settlement, Tampa was prepared to engage in further fact and expert discovery in anticipation of its forthcoming motion for summary judgment, and had made it clear that it would vigorously contest the certification of a litigation class.  *See* Fraietta Decl. ¶¶ 14-15.  In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

In the context of this litigation, Plaintiffs and the putative Class face risks in overcoming Tampa's forthcoming summary judgment motion and certifying a class.  Moreover, further litigation will only delay relief to the Settlement Class Members.  The proposed Settlement

alleviates these risks, and provides a substantial benefit to the Settlement Class Members in a timely fashion.  These *Grinnell* factors thus favor preliminary approval.

### 5.     The Risks of Maintaining a Class Through Trial (*Grinnell* Factor 6)

The risk of maintaining the class status through trial is also present.  The Court has not yet certified the proposed Class and such a determination would be reached only after exhaustive class certification briefing is filed.  Tampa would argue that individual questions preclude class certification.  Tampa would also argue that a class action is not a superior method to resolve Plaintiffs' claims, and that a class trial would not be manageable.

Were the Court to certify a class, Tampa would likely challenge certification through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing.  Risk, expense, and delay permeate such a process.  The proposed settlement eliminates this risk, expense, and delay.  This factor weighs in favor of preliminary approval.

### 6.     Defendant's Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

Tampa probably could withstand a greater judgment.  However, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178, n.9).  Thus, at worst, this factor is neutral.

### 7.     The Reasonableness of the Settlement in Light of the Possible Recovery and the Attendant Risk of Litigation (*Grinnell* Factors 8 And 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum."  *Frank*, 228 F.R.D. at 186 (W.D.N.Y. 2005).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the

9

concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.*
(quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Because a settlement provides certain and immediate recovery, courts often approve
settlements even where the benefits obtained as a result of the settlement are less than those
originally sought.  As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in
theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a
single percent of the potential recovery."  495 F.2d at 455 n.2.

Here, the total settlement value is $3.4 million, and Class Counsel projects that each
Settlement Class Member is expected to receive several hundred dollars in cash (or credit to be
applied towards their education at University of Tampa, should they elect to do so).  In addition,
Defendant has agreed to pay the costs of service payments to Plaintiffs, notice and administration
costs, as well as reasonable attorneys' fees, plus costs and expenses for proposed Class Counsel
from the all-in fund established by the Settlement.  Settlement ¶ 1.32.  Weighing the benefits of
the Settlement against the risks associated with proceeding in litigation and in collecting on any
judgment, the Settlement is more than reasonable.  Moreover, where – as here – a settlement
assures immediate payment of substantial amounts to Settlement Class Members, and does not
"sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" the
settlement is reasonable under this factor.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL
782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*,
2004 WL 2997957, *5 (S.D.N.Y. May 14, 2004)).  Thus, these *Grinnell* factors also weigh in
favor of preliminary approval.

In sum, all of the *Grinnell* factors weigh in favor of approval, or are neutral at worst.  If
objections arise after notice is issued to the Class, the Court may reevaluate its determination.

Because the settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

**B.     The Remainder of the Rule 23(e)(2) Factors Support Preliminary Approval**

**1.     The Allocation Plan is Fair and Adequate**

"Approval of a plan of distribution for a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole, i.e., the distribution plan must be fair, reasonable and adequate." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020).  Notably, an "allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent Class counsel." *Id.*  Here, by dividing the Settlement Fund among Settlement Class Members in relative proportion to the out-of-pocket amount paid per Settlement Class Member, the allocation plan takes into account "the relative strength and values of different categories of claims."  *See In re Telik, Inc. Secs. Litig.*, 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008).

**2.     The Proposed Form and Method of Providing Notice to the Proposed Settlement Class are Appropriate**

"Notice need not be perfect, but need be only the best notice practicable under the circumstance, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch & Coj., Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007).  Class Counsel respectfully submits that the proposed plan for notice is fair, reasonable, and adequate.  As recited in the Settlement and described above, the proposed notice will inform Settlement Class Members of the Settlement's substantive terms. It will advise Settlement Class Members of their options for remaining part of the Settlement Class or

11

for opting out of the Settlement; for receiving their Settlement Benefits; for objecting to the Settlement, Class Counsel's attorneys' fee application and/or request for service awards to the named Plaintiffs; and how to obtain additional information about the Settlement.  The proposed plan for notice is designed to directly reach a very high percentage of Settlement Class Members, with consideration that Settlement Class Members' contact information is readily available and maintained by Defendant.

Notice programs such as the one proposed by Class Counsel have been approved as adequate under the Due Process Clause and Rule 23.  *See*, *e.g.*, *Ortega v. Uber Techs*., 2018 WL 4190799 (E.D.N.Y. May 4, 2018) (approving a notice plan of notice by email, with notice by mail for class members whose emails are undeliverable, and ordering the parties to create a settlement website).  And in other similar COVID-19 refund actions, substantially similar methods of notice have been approved.  *See*, *e.g.*, *Wright v. S. New Hampshire Univ.*, 2021 WL 1617145, at *2 (D.N.H. Apr. 26, 2021); *see also Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla. Mar. 30, 2021).  Accordingly, the Court should approve the plan for notice and the form and content of the notices.

### 3.  Attorneys' Fees and Expenses are Reasonable

Class Counsel will apply for an award of attorneys' fees and expenses, for service payments to the Class Representatives, and will receive any applied-for fees and expenses only upon this Court's ruling regarding attorneys' fees and costs.  Pursuant to the Settlement Agreement, Class Counsel will apply to the Court for a Fee Award not to exceed one-third of the Settlement Fund.  Such a request for attorneys' fees is reasonable in comparison to other common-fund settlements within the Second Circuit.  *See*, *e.g.*, *In re Lloy'd Am. Trust Fund Litig.*, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (noting "scores of common fund

cases where fees . . . were awarded in the range of 33-1/3% of the settlement fund."); *Spicer v. Pier Sixty, LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2021).   The same percentage has been approved in other COVID-19 tuition refund actions.  *See*, *e.g.*, *Wright v. S. New Hampshire Univ.*, No. 1:20-cv-00609-LM, Order (D.N.H. Aug. 22, 2021); *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM, Order (S.D. Fla. Aug. 7, 2021), *Martin v. Lindenwood Univ.*, No. 4:20-cv-01128-RLW, Order (E.D. Mo. May 11, 2022).

### 4. The Parties Have No Additional Agreements

Apart from the Settlement Agreement itself, there are no additional agreements.  *See* Fraietta Decl., ¶ 13.

### 5. Proposed Settlement Class Members are Treated Equitably

The final factor, Rule 23(e)(2)(D), looks at whether class members are treated equitably. As reflected in the plan of allocation, *see supra* §§ II.B.5, the proposed Settlement treats Settlement Class Members equitably relative to each other, and all Settlement Class Members will be giving Tampa the same release.

Because the proposed Settlement satisfies both the Rule 23(e)(2) factors and the *Grinnell* factors, the proposed Settlement should be preliminarily approved.

### III. PROVISIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE

Plaintiffs respectfully request that the Court conditionally certify the Settlement Class for purposes of effectuating the settlement.  The Court should determine that the proposed Settlement Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Newberg on Class Actions* § 11:27 (4th ed. 2002) (citing *In re Gen. Motors*

13

*Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.* ("*In re GMC*"), 55 F.3d 768 (3d Cir. 1995)),

and provisionally certify the settlement class, appoint Bursor & Fisher, P.A. as Class Counsel,

and Plaintiffs Jade D'Amario and Joshua Dunn as the Class Representatives.

As discussed below, all of the certification requirements for settlement purposes are met

and UT consents to provisional certification. *See Newberg* § 11.27 ("When the court has not yet

entered a formal order determining that the action may be maintained as a class action, the

parties may stipulate that it be maintained as a class action for the purpose of settlement only.");

*County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is

appropriate for the parties to a class action suit to negotiate a proposed settlement of the action

prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295

(2d Cir. 1990).

Provisional settlement approval, class certification, and appointment of class counsel

have practical purposes, including avoiding the costs of litigating class status while facilitating a

global settlement, ensuring notification of all class members of the terms of the proposed

Settlement Agreement, and setting the date and time of the final approval hearing. *See In re*

*GMC*, 55 F.3d at 784; *Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282, at *6 (D.N.J. July

10, 2006) (conditionally certifying multi-state classes and granting preliminary approval to

nationwide wage and hour settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are

met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is
>     impracticable;
>
> (2) there are questions of law or fact common to the class;

14

> (3) the claims or defenses of the representative parties are
>     typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect
>     the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that:

> questions of law or fact common to the members of the class
> predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

### A.     The Proposed Settlement Class Meets the Requirements of Rule 23(a)

#### 1.     Numerosity

Rule 23(a) requires that the members of the class be so numerous that joinder of all

members is impracticable.  While numerosity does not require a fixed number of class members,

"numerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*,

47 F.3d 473, 483 (2d Cir. 1995).  The Settlement Class likely consists of about 9,000 members.

Therefore, the numerosity requirement of Rule 23(a) is readily satisfied.

#### 2.     Common Questions of Law and Fact

Rule 23(a)(2) requires "questions of law or fact common to the class."  Fed. R. Civ. P.

23(a)(2). This threshold is satisfied if the question is "capable of class wide resolution – which

means that determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

(2011).  "[A] single [common] question will" satisfy the commonality inquiry. *Id.* at 359.  "The

claims for relief need not be identical for them to be common." *Zivkovic v. Laura Christy LLC*,

329 F.R.D. 61, 69 (S.D.N.Y. 2018).  Rather, Rule 23(a)(2) is a "low hurdle," *Fort Worth*

*Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014), that may

be satisfied by even a single question of law or fact common to the class, *Wal-Mart Stores*, 564 U.S. at 369.

Plaintiffs easily satisfy the "low hurdle" of demonstrating commonality. Plaintiffs believe this Action presents many questions common to the Settlement Class. Plaintiffs assert common questions that include: (a) whether Tampa breached its implied contract with students by refusing to issue partial refunds for the Spring 2020 Semester despite failing to provide in-person educational services; (b) whether Tampa provided the services for which the Settlement Class Members allegedly contracted; and (c) whether the Settlement Class Members are entitled to a refund for that portion of the services that was allegedly not delivered. These common questions, which target the same alleged misconduct by Tampa, satisfy Rule 23(a)(2).

### 3. Typicality

The next requirement – typicality – requires that a class representative have claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(2). Typicality is met here. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182; *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux*, 987 F.2d at 936-37. Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class

16

members." *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Here, Plaintiffs allege that Tampa breached its implied contract with students to provide an in-person educational experience by refusing to issue partial refunds for the Spring 2020 Semester. SAC ¶¶ 1-4. It is Plaintiffs' contention that their claims are typical of the other putative class members. Accordingly, by pursuing their own claims in this matter, Plaintiffs will necessarily advance the interests of the Settlement Class Members, and typicality is therefore satisfied. *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (holding that the typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories").

### 4. Adequacy

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)). "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, 2007 WL 1580080, at *65 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

In this case, Plaintiffs – like each and every one of the Settlement Class Members – are students that paid tuition and fees to attend UT for the Spring 2020 Semester. SAC ¶¶ 37-39.

17

Thus, Plaintiffs and the Settlement Class Members have the exact same interest in recovering the damages to which they are allegedly entitled.  As such, Plaintiffs do not have any interests antagonistic to those of the proposed Settlement Class Members and their pursuit of this litigation is clear evidence of that.

Likewise, proposed Class Counsel – Bursor & Fisher, P.A. – has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Fraietta Decl. ¶ 11.  Class Counsel regularly engages in major complex class action litigation, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country.  *Id.*; *see also* Firm Resume of Bursor & Fisher, P.A., Fraietta Decl. Exhibit 2; *see also Ebin*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008.").

Further, proposed Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class Members, aggressively pursuing those claims through motion practice, conducting both formal and informal discovery, participating in a private mediation, and ultimately, negotiating a favorable settlement.  Fraietta Decl. ¶¶ 5-11.  In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency.  *Id.*

Accordingly, since Plaintiffs and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class Members and neither have interests antagonistic to the Settlement Class Members, the adequacy requirement is satisfied.

**B.     The Settlement Class Satisfies the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently.  *Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992).  This approach protects class members' due process rights.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).

**1.     Common Issues Predominate Over Any Individual Ones**

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  The predominance requirement "is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

In this case, there allegedly was a common course of conduct engaged in by Tampa.  In these circumstances, courts find, particularly for purposes of settlement, that there is predominance of common questions over individual issues.  *See In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous cases).

### 2.    A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).[1]

Here, Plaintiffs and the Settlement Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by Settlement Class Members arising from the same allegations.  Employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent

---

[1] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").  Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (internal quotation marks omitted).

adjudications of similar issues and claims.  *See Hanlon*, 150 F.3d at 1023.  A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement class members' claims.

## IV.   THE COURT SHOULD PRELIMINARILY APPOINT NAMED PLAINTIFFS AS SETTLEMENT CLASS REPRESENTATIVES

Plaintiffs Jade D'Amario and Joshua Dunn have actively participated in this case and have  vigorously represented the interests of the Settlement Class Members.  Specifically, they have provided Class Counsel with information necessary to draft and file the complaint, responded to multiple information requests, and represented the Settlement Class Members in settlement discussions. Moreover, Plaintiffs are adequate because their interests are not antagonistic of those of the Settlement Class Members. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  Plaintiffs, like members of the Settlement Class, claim to have purchased Tampa's on-campus product, and seek a refund for educational services that they allegedly did not fully receive.  Accordingly, the Court should preliminarily appoint the Named Plaintiffs as Settlement Class Representatives.

## V.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

21

Here, the proposed Notice provides detailed information about the Settlement, including: 1) a comprehensive summary of its terms; 2) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and incentive awards for the Named Plaintiffs; and 3) detailed information about the Released Claims. *See* Settlement Exhibits B-C (annexed to Exhibit 1 of Fraietta Decl.).  In addition, the Notice provides information about the Fairness Hearing date, the right of Settlement Class Members to seek exclusion from the Class or to object to the proposed Settlement (as well as the deadlines and procedure for doing so), and the procedure to receive additional information. *Id.*  In short, the Notice is intended to fully inform Settlement Class Members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights.  The very detailed information in this proposed notice goes well beyond the requirements of the Federal Rules.  Indeed, courts have approved class notices even when they provided only general information about a settlement. This information is adequate to put Settlement Class Members on notice of the proposed Settlement and is well within the requirements of Rule 23(c)(2)(B).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order preliminarily approving the proposed Settlement, provisionally certifying the proposed Settlement Class, appointing Plaintiffs as Settlement Class Representatives, appointing Bursor & Fisher, P.A. as Class Counsel, and approving the proposed schedule.

Dated: May 25, 2022                          Respectfully submitted,

                                             **BURSOR & FISHER, P.A.**

                                             By:    */s/ Philip L. Fraietta*
                                                      Philip L. Fraietta

Philip L. Fraietta
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  pfraietta@bursor.com
              aleslie@bursor.com

*Proposed Class Counsel*