**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JADE D'AMARIO and JOSHUA DUNN, individually
and on behalf of all others similarly situated,

Plaintiffs,                     Civil Action No. 7:20-cv-03744-CS

v.

THE UNIVERSITY OF TAMPA,

Defendant.

**DECLARATION OF PHILIP L. FRAIETTA IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARDS**

I, Philip L. Fraietta, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a Partner at Bursor & Fisher, P.A., and I am Class Counsel in this action.  I

am an attorney at law licensed to practice in the States of New York, New Jersey, Illinois, and

Michigan, and I am a member of the Bar of this Court.  I make this Declaration in support of

Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, And Incentive Awards and am fully

competent to do so.  I have personal knowledge of all matters set forth herein unless otherwise

indicated, and, if called upon to testify, I could and would competently do so.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the Parties' Class

Action Settlement Agreement, and the exhibits attached thereto.

3.      Beginning in May 2020, Class Counsel commenced a pre-suit investigation of

Defendant's practices related to COVID-19 campus closures, price differentials between in-

person versus online education options, and refunds or discounts of tuition and fees in light of

COVID-19 campus closures.

4.      On May 14, 2020, former plaintiff Toni Fiore filed a putative class action on

behalf of all people who paid tuition and fees for the Spring 2020 Semester at the University of

Tampa ("UT," "Tampa" or "Defendant") (ECF No. 1).

5.      In response to the complaint, on July 31, 2020, Defendant filed a letter requesting

a pre-motion conference on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) (ECF No. 6).

6.      On August 18, 2020, Ms. Fiore filed a letter informing the Court that she intended

to file a First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1) (ECF No. 12).

7.      On August 19, 2020, Ms. Fiore filed a letter in response to Defendant's July 31,

2020 letter (ECF No. 14).

8.      On September 15, 2020, pursuant to Fed. R. Civ. P. 15(a)(1), Ms. Fiore filed a

First Amended Class Action Complaint ("FAC"), adding Plaintiffs Jade D'Amario, Joshua

Dunn, and Sean Dunn as named plaintiffs (ECF No. 16).

9.      In response to the FAC, on October 15, 2020, UT filed a motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 20), arguing in part that Toni Fiore and Sean

Dunn, as parents of UT students, lacked standing to bring their claims because they did not have

a contractual relationship with UT.

10.     On November 13, 2020, Class Counsel filed a memorandum of law in opposition

to UT's motion to dismiss (ECF No. 26).

11.     On December 4, 2020, UT filed a reply memorandum of law in further support of

its motion to dismiss (ECF No. 28).

12.     Thereafter, the Parties filed multiple notices of supplemental authority (ECF Nos.

29-31, 33).

13.     On June 29, 2021, while Defendant's motion to dismiss was pending before the

Court, the Governor of Florida signed into law Florida Statute 768.39, Immunity for educational

institutions for actions relating to the COVID-19 pandemic (the "Florida Immunity Statute"), which purported to give educational institutions immunity from actions taken in response to the pandemic, including the transition to online education.

14.     On July 16, 2021, with the motion to dismiss still pending, Defendant filed a letter requesting leave to file supplemental briefing regarding Florida Statute § 768.39 (the "Florida Immunity Statute"), which was signed into law on June 29, 2021 (ECF No. 36).  Defendant argued, *inter alia*, that the Florida Immunity Statute granted it immunity from all liability stemming from this lawsuit.

15.     On July 19, 2021, the Court granted the Parties leave to file supplemental briefing regarding the Florida Immunity Statute (ECF No. 37).

16.     On July 30, 2021, with leave of Court, Defendant filed a Supplemental Memorandum of Law in further support of its motion to dismiss, arguing that the Florida Immunity Statute barred Plaintiffs' claims (ECF No. 38).

17.     On August 10, 2021, Plaintiffs filed their opposition to Defendant's supplemental memorandum, arguing, *inter alia*, that the Florida Immunity Statute was unconstitutional (ECF No. 40).

18.     Defendant filed its reply brief on August 16, 2021 (ECF No. 42).

19.     On October 20, 2021, the Court ruled on Defendant's motion to dismiss, granting Defendant's motion with respect to the standing of parent Plaintiffs Toni Fiore and Sean Dunn, Plaintiffs' fee-based unjust enrichment claim, and Plaintiffs' conversion claim (ECF No. 44).  In all other respects, however, the Court denied the motion to dismiss.  *Id.*  Notably, the Court held that applying the Florida Immunity Statute retroactively to this case was unconstitutional, and as a result, Plaintiffs' claims were not barred by the statute.  *Id.*

20.     On November 3, 2021, Plaintiffs filed a Second Amended Complaint ("SAC") in accordance with the Court's ruling on the motion to dismiss (ECF No. 45).

21.     On November 17, 2021, Defendant filed an answer to Plaintiffs' SAC, denying the allegations generally and asserting twenty-six affirmative and other defenses (ECF No. 47).

22.     On January 5, 2022, the Court conducted an initial scheduling conference pursuant to Fed. R. Civ. P. 16 and issued a Civil Case Discovery Plan and Scheduling Order (ECF Nos. 51, 58).

23.     The Parties then began fact discovery.

24.     From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26(f), discussed the prospect of resolution.

25.     Those discussions eventually led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before the Honorable Joseph P. Farina (Ret.), who is a neutral mediator affiliated with JAMS Miami.  Judge Farina was formerly the Chief Judge of the 11th Judicial Circuit of Florida.

26.     In advance of this mediation, the Parties exchanged informal discovery, including the total out-of-pocket amounts paid for in-person tuition and fees for the Spring Semester 2020. The parties also exchanged lengthy, detailed mediation statements, airing their respective legal arguments and theories on potential damages, and prepared detailed opening statements.

27.     Given that this information was the same or largely similar to discovery that would be produced in formal discovery related to class certification and summary judgment, the Parties were able to sufficiently assess the strengths and weaknesses of their cases before the mediation.

28.     On March 31, 2022, the Parties participated in a full-day mediation before Judge

Farina.  At the conclusion of the mediation, the Parties reached agreement on all material terms of a class action settlement and executed a term sheet.

29.     Following the March 31, 2022 mediation session, the Parties finalized the settlement though several weeks of additional negotiations and other extensive communications.

30.     The resulting Settlement creates a $3,400,000 settlement fund, which will be used to pay all approved claims by class members, notice and administration expenses, Court-approved incentive awards to Plaintiffs, and attorneys' fees, costs, and expenses to Class Counsel to the extent awarded by the Court.

31.     Pursuant to the terms of the Proposed Settlement, Settlement Class Members (which consist of approximately 9,085 current and former UT students) will automatically receive a *pro rata* cash payment as a percentage of the total amount of tuition and fees he or she paid to UT for the Spring Semester 2020, unless he or she excludes him or herself from the Settlement.  In other words, Settlement Class Members will not be required to submit a claim form in order to receive a *pro rata* cash payment.

32.     The *pro rata* Cash Award for each Settlement Class Member will be equal to the Settlement Class Member's Out-of-Pocket Percentage multiplied by the Available Settlement Fund.  The Notice gives Settlement Class Members the ability to opt to receive the Cash Award by check, Venmo, or PayPal, but in the event a Settlement Class Member does not select an option, the default payment method will be check mailed to the Settlement Class Member's last known address.

33.     After finalizing and executing the Class Action Settlement Agreement, my firm prepared Plaintiffs' Motion for Preliminary Approval, which was filed on May 25, 2022 (ECF No. 62).

34.     On June 3, 2022, the Court granted Plaintiffs' Motion for Preliminary Approval (ECF No. 65).

35.     The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determined all the contours of the proposed class, and reached a fair and reasonable compromise after negotiating the terms of the Settlement at arms' length.

36.     Plaintiffs and Class Counsel recognize that despite our belief in the strength of Plaintiffs' claims, and Plaintiffs' and the Class' ability to secure an award of damages, the expense, duration, and complexity of protracted litigation would be substantial and the outcome of trial uncertain.  Thus, the Settlement secures a more proximate and more certain monetary benefit to the Class than continued litigation.

37.     Plaintiffs and Class Counsel are also mindful that absent a settlement, the success of Defendant's various defenses in this case could deprive the Plaintiff and the Settlement Class Members of any potential relief whatsoever.  Indeed, a number of courts across the country – including in New York – have granted motions to dismiss tuition refund claims.  *See, e.g.*, *Moore v. Long Island Univ.*, 2022 WL 203988 (E.D.N.Y. Jan. 24, 2022); *Croce v. St. Joseph's College*, 73 Misc.3d 632 (Sup. Ct. Suffolk Cnty. Oct. 1, 2021); *Fedele v. Marist College*, 2021 WL 3540432 (S.D.N.Y. Aug. 10, 2021); *Hewitt v. Pratt Institute*, 2021 WL 2779286 (E.D.N.Y. July 2, 2021); *Rynasko v. New York Univ.*, 2021 WL 1565614, at *4 (S.D.N.Y. Apr. 21, 2021; *Burt v. Bd. Of Trustees of Univ. of Rhode Island*, 2021 WL 825398, at *10 (D.R.I. Mar. 4, 2021); *Alexander et al. v. Johnson & Wales Univ.*, 2021 WL 825398, at *10 (D.R.I. Mar. 4, 2021); *Simmons Telep v. Roger Williams Univ.*, 2021 WL 825398, at *10 (D.R.I. Mar. 4, 2021); *Crista v. Drew Univ.*, 2021 WL 1422935, at *12 (D.N.J. Apr. 14, 2021), *reconsideration denied sub*

*nom.*, 2021 WL 2310094 (D.N.J. June 7, 2021); *Mitelberg v. Stevens Inst. of Tech.*, 2021 WL 2103265, at *5-6 (D.N.J. May 25, 2021); *Ryan v. Temple Univ.*, 2021 WL 1581563, at *11 (E.D. Pa. Apr. 22, 2021).  Other courts have denied class certification, *see De León v. New York University*, 2022 WL 2237452 (S.D.N.Y. June 22, 2022), and others have granted summary judgment in favor of the university defendants.  *See Randall v. University of the Pacific*, 2022 WL 1720085 (N.D. Cal. May 28, 2022); *Choi v. Brown University*, -- F. Supp. 3d --, 2022 WL 843762 (D.R.I. Mar. 22, 2022); *Berlanga et al v. University of San Francisco*, Case No. CGC-20-584829 (Ca. Super. Ct. San Fran. Cnty.) (July 19, 2022 Order, granting summary judgment for defendant on all counts except California's UCL); *Zwiker v. Lake Superior State Univ.*, -- N.W.2d --, 2022 WL 414183 (Mich. Ct. App. Feb. 10, 2022) (affirming trial court grant of motions for summary disposition in three consolidated matters).

38.     Defendant is also represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case, including by moving for summary judgment should the motion to dismiss have been denied. Plaintiffs and Class Counsel are also aware that Defendant would continue to challenge liability as well as assert a number of defenses, including that it did not make a contractual promise for in-person educational services.  Defendant would have also vigorously contested the certification of a litigation class.  Looking beyond trial, Plaintiffs are aware that Defendant could appeal the merits of any adverse decision.  Thus, there was a significant risk of delay in achieving final resolution of this matter.

39.     Plaintiffs and Class Counsel believe that the monetary relief provided by the Settlement weighs heavily in favor of a finding that the Settlement is fair, reasonable, and adequate, and well within the range of approval.

40.     Since the Court granted preliminary approval, my firm has worked with the Settlement Administrator, JND Legal Administration ("JND"), to carry out the Court-ordered notice plan.  Specifically, my firm helped compile and review the contents of the required notice to State Attorney Generals pursuant to 28 U.S.C. § 1715, reviewed the final claim and notice forms, and reviewed and tested the settlement website before it launched live.

41.     Since class notice has been disseminated, my firm has worked with JND on a weekly basis to monitor settlement claims and any other issues that may arise.  My firm has also fielded calls from Settlement Class Members.

42.     Attached hereto as **Exhibit B** are my firm's detailed billing diaries for this matter, as well as a summary of the same.  I have personally reviewed all of my firm's time entries associated with this case, and have used billing judgment to ensure that duplicative and unnecessary time has been excluded and that only time reasonably devoted to the litigation has been included.  My firm's time entries were regularly and contemporaneously recorded by myself and the other timekeepers pursuant to firm policy and have been maintained in the computerized records of my firm.

43.     My firm undertook this matter on a contingency basis.  Through July 22, 2022, my firm expended 495.9 hours in this case.  My firm's lodestar in this case, based on current billing rates, is $283,153.

44.     In addition to the time enumerated above, I estimate that my firm will incur an additional 50-75 hours of future work in connection with the preparation of Plaintiffs' Motion for Final Approval, the fairness hearing, coordinating with JND, monitoring settlement administration, and responding to Settlement Class Member inquiries.

45.     Due to the commitment of time and capital investment required to litigate this

action, my firm had to forego other work, including hourly non-contingent matters, and other class action matters.

46.     To date, my firm has also expended $6,518 in out-of-pocket costs and expenses in connection with the prosecution of this case.  Attached as **Exhibit C** is an itemized list of those costs and expenses.  These costs and expenses are reflected in the records of my firm, and were necessary to prosecute this litigation.  Cost and expense items are billed separately, and such charges are not duplicated in my firm's billing rates.

47.     Included within **Exhibit B** is a chart setting forth the hourly rates charged for lawyers and staff at my firm at the time the work was completed.  Based on my knowledge and experience, the hourly rates charged by my firm are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise.  As a matter of firm policy, we do not discount our regular hourly rates for non-contingent hourly work.  I have personal knowledge of the range of hourly rates typically charged by counsel in our field in New York, California, Florida, and elsewhere, both on a current basis and in the past.  In determining my firm's hourly rates from year to year, my partners and I have consciously taken market rates into account and have aligned our rates with the market.

48.     Through my practice, I have become familiar with the non-contingent market rates charged by attorneys in New York, California, Florida, and elsewhere (my firm's offices are in New York City, Walnut Creek, California, and Miami, Florida).  This familiarity has been obtained in several ways:  (1) by litigating attorneys' fee applications; (2) by discussing fees with other attorneys; (3) by obtaining declarations regarding prevailing market rates filed by other attorneys seeking fees; and (4) by reviewing attorneys' fee applications and awards in other cases, as well as surveys and articles on attorney's fees in the legal newspapers and treatises.

The information I have gathered shows that my firm's rates are in line with the non-contingent market rates charged by attorneys of reasonably comparable experience, skill, and reputation for reasonably comparable class action work.  In fact, comparable hourly rates have been found reasonable by various courts for reasonably comparable services, including:

i.     *Laydon v. Mizuho Bank, Ltd.*, No. 1:12-cv-03419-GBD, ECF No. 837 (S.D.N.Y. Dec. 7, 2017), approving partner rates of $875 to $975 and associate rates of $325 to $600.

ii.    *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. April 26, 2016), approving partner rates of $834 to $1,125 and associate rates of $411 to $714.

iii.   *In re Platinum & Palladium Commod. Litig.*, Slip Op. No. 10-cv-3617, 2015 U.S. Dist. LEXIS 98691, at *13 (S.D.N.Y. July 7, 2015), approving billing rates of $950 and $905 per hour and referring to a recent National Law Journal survey yielding an average hourly partner billing rate of $982 in New York.

iv.    *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, Case No. 1:08-md-01963-RWS, 909 F. Supp. 2d 259, 271-72 (S.D.N.Y. 2012), approving fee award based on hourly rates ranging from $275 to $650 for associates and $725 to $975 for partners, as set forth in ECF No. 302-5.

v.     *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*, Case No. 15-md-02672-CRB, ECF No. 3053 (N.D. Cal. Mar. 17, 2017), approving partner rates up to $1,600, and associate rates up to $790.

vi.    *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Case No. 07-md-1827-SI, ECF No. 1827 (N.D. Cal. 2013), an antitrust class action in which the court found blended hourly rates of $1000, $950, $861, $825, $820, and $750 per hour reasonable for the lead class counsel.

vii.   *Williams v. H&R Block Enterprises, Inc.*, Alameda County Superior Ct. No. RG08366506, Order of Final Approval and Judgment filed November 8, 2012, a wage and hour class action, in which the court found the hourly rates of $785, $775, and $750 reasonable for the more senior class counsel.

viii.  *Luquetta v. The Regents of the Univ. of California*, San Francisco Superior Ct. Case No. CGC-05-443007, Order Granting Plaintiff's Motion for Common Fund Attorneys' Fees and Expenses, filed October 31, 2012, a class action to recover tuition overcharges, in which the court found the hourly rates of $850, $785, $750, and $700 reasonable for plaintiffs' more experienced counsel.

ix.      *Pierce v. County of Orange*, 905 F. Supp. 2d 1017 (C.D. Cal. 2012), a civil rights class action brought by pre-trial detainees, in which the court approved a lodestar-based, *inter alia*, on 2011 rates of $850 and $825 per hour.

x.      *Holloway et. al. v. Best Buy Co., Inc.*, Case No. 05-cv-5056-PJH (N.D. Cal. 2011) (Order dated November 9, 2011), a class action alleging that Best Buy discriminated against female, African American and Latino employees by denying them promotions and lucrative sales positions, in which the court approved lodestar-based rates of up to $825 per hour.

xi.      *Californians for Disability Rights, Inc., et al. v. California Department of Transportation, et al.*, 2010 U.S. Dist. LEXIS 141030 (N.D. Cal. 2010), adopted by Order Accepting Report and Recommendation filed February 2, 2011, a class action in which the court found reasonable 2010 hourly rates of up to $835 per hour.

xii.      *Qualcomm, Inc. v. Broadcom, Inc.*, Case No. 05-cv-1958-B, 2008 WL 2705161 (S.D. Cal. 2008), in which the court found the 2007 hourly rates requested by Wilmer Cutler, Pickering, Hale & Dorr LLP reasonable; those rates ranged from $45 to $300 for staff and paralegals, from $275 to $505 for associates and counsel, and from $435 to $850 for partners.

49.      The reasonableness of my firm's hourly rates is also supported by several surveys of legal rates, including the following:

i.      In an article entitled "Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder,'" written by Roy Strom and published by Bloomberg Law on June 9, 2022, the author describes how Big Law firms have crossed the $2,000-per hour rate. The article also notes that law firm rates have been increasing by just under 3% per year. A true and correct copy of this article is attached hereto as **Exhibit D**.

ii.      The CounselLink Enterprise Management Trends Report for June 2022 states that the median partner rate in New York was $1,030. The report also notes that median partner rates have grown by 4.0% in San Francisco and 4.3% in New York. A true and correct copy of this article is attached hereto as **Exhibit E**.

iii.      In an article entitled "On Sale: The $1,150-Per Hour Lawyer," written by Jennifer Smith and published in the Wall Street Journal on April 9, 2013, the author describes the rapidly growing number of lawyers billing at $1,150 or more revealed in public filings and major surveys. The article also notes that in the first quarter of 2013, the 50 top-grossing law firms billed their partners at an average rate between $879 and $882 per hour. A true and correct copy of this article is attached hereto as **Exhibit F**.

iv.      In an article published April 16, 2012, the Am Law Daily described the 2012

Real Rate Report, an analysis of $7.6 billion in legal bills paid by corporations over a five-year period ending in December 2011.  A true and correct copy of that article is attached hereto as **Exhibit G**.  That article confirms that the rates charged by experienced and well-qualified attorneys have continued to rise over this five-year period, particularly in large urban areas like the San Francisco Bay Area.  It also shows, for example that the top quartile of lawyers bill at an average of "just under $900 per hour."

v.      Similarly, on February 25, 2011, the Wall Street Journal published an on-line article entitled "Top Billers."  A true and correct copy of that article is attached hereto as **Exhibit H**.  That article listed the 2010 and/or 2009 hourly rates for more than 125 attorneys, in a variety of practice areas and cases, who charged $1,000 per hour or more.  Indeed, the article specifically lists *eleven* (11) Gibson Dunn & Crutcher attorneys billing at $1,000 per hour or more.

vi.      On February 22, 2011, the ALM's Daily Report listed the 2006-2009 hourly rates of numerous San Francisco attorneys.  A true and correct copy of that article is attached hereto as **Exhibit I**.  Even though rates have increased significantly since that time, my firm's rates are well within the range of rates shown in this survey.

vii.      The Westlaw CourtExpress Legal Billing Reports for May, August, and December 2009 (attached hereto as **Exhibit J**) show that as far back as 2009, attorneys with as little as 19 years of experience were charging $800 per hour or more, and that the rates requested here are well within the range of those reported.  Again, current rates are significantly higher.

viii.      The National Law Journal's December 2010, nationwide sampling of law firm billing rates (attached hereto as **Exhibit K**) lists 32 firms whose highest rate was $800 per hour or more, eleven firms whose highest rate was $900 per hour or more, and three firms whose highest rate was $1,000 per hour or more.

ix.      On December 16, 2009, The American Lawyer published an online article entitled "Bankruptcy Rates Top $1,000 in 2008-2009."  That article is attached hereto as **Exhibit L**.  In addition to reporting that several attorneys had charged rates of $1,000 or more in bankruptcy filings in Delaware and the Southern District of New York, the article also listed 18 firms that charged median partner rates of from $625 to $980 per hour.

x.      According to the National Law Journal's 2014 Law Firm Billing Survey, law firms with their largest office in New York have average partner and associate billing rates of $882 and $520, respectively.  Karen Sloan, *$1,000 Per Hour Isn't Rare Anymore; Nominal Billing Levels Rise, But Discounts Ease Blow*, National Law Journal, Jan. 13, 2014.  The survey also shows that it is common for legal fees for partners in New York firms to exceed $1,000 an hour.  *Id.*  A true and correct copy of this survey is attached hereto as **Exhibit M**.

50.     Given my firm's unique experience and track record of success, my hourly rate is

set at $700.  My firm's rates have been deemed reasonable by Courts across the country,

including in New York, California, Michigan, Illinois, Missouri, and New Jersey for example:

i.   *Russett v. Northwestern Mutual Life Insurance Co.*, Case No. 19-cv-07414,
S.D.N.Y. (Oct. 6, 2020 Final Judgment And Order Of Dismissal With Prejudice).

ii.  *Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279, S.D.N.Y. (Apr.
24, 2019 Final Judgment *And* Order Of Dismissal With Prejudice).

iii. *Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812, S.D.N.Y. (Feb. 1,
2018 Final Judgment And Order Of Dismissal With Prejudice).

iv.  *Rodriguez v. CitiMortgage, Inc.*, Case No. 11-cv-4718, S.D.N.Y. (Oct. 6, 2015),
the court concluded during the *fairness* hearing that Bursor & Fisher's rates for
two of its partners, Joseph Marchese and Scott Bursor, were "reasonable."

v.   *Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17,
2020) (concluding that "blended rate of $634.48 is within the reasonable range of
rates").

vi.  *In re Haier Freezer Consumer Litig.*, Case No. C11-02911 EJD, N.D. Cal. (Oct.
25, 2013 Final Judgment And *Order* Granting Plaintiffs' Motion For Final
Approval Of Class Action Settlement And For Award Of Attorneys' Fees, Costs
And Incentive Awards).

vii. *Kokoszki v. Playboy Enterprises, Inc.*, Case No. 19-cv-10302, E.D. Mich. (Aug.
19, 2020 Final Judgment And Order Of Dismissal With Prejudice.

viii. *Moeller v. American Media, Inc.*, Case No. 16-cv-11367, E.D. Mich. (Sept. 28,
2017 Order And Judgment Of Dismissal With Prejudice).

ix.   *In re Michaels Stores Pin Pad Litigation*, Case No. 11-cv-03350, N.D. Ill. (Apr.
17, 2013 Order Approving *Settlement*).

*In re Blue Buffalo Company, Ltd. Marketing and Sales Practices Litigation*, Case
No. 14-md-02562, E.D. Mo. (*June* 16, 2016 Order Awarding Fees And Costs).

x.    *Rossi v. The Procter & Gamble Co.*, Case No. 11-7238, D.N.J. (Oct. 3, 2013
Final Approval Order And Judgment).

51.     No court has ever cut my firm's fee application by a single dollar on the basis that

our hourly rates were not reasonable.

52.     Attached hereto as **Exhibit N** is a current firm resume for Bursor & Fisher, P.A.

53.     As aforementioned, my firm, Bursor & Fisher, P.A., has significant experience in litigating class actions of similar size, scope, and complexity to the instant action.  (*See* Ex. L; Firm Resume of Bursor & Fisher, P.A.).  We have successfully obtained similar settlements for students in *Wright v. Southern New Hampshire Univ.*, 1:20-cv-00609-LM (D.N.H. 2021); *Martin v. Lindenwood Univ.*, 4:20-cv-01128-RLW (E.D. Mo. 2022).

54.     My firm has also been recognized by courts across the country for its expertise. (*See* Ex. L); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) (Rakoff, J.) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008.")[1]; *Williams v. Facebook, Inc.*, Case No. 3:18-cv-01881, ECF No. 51 (N.D. Cal June 26, 2018) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of all persons who installed Facebook Messenger applications and granted Facebook permission to access their contact list).

55.     Moreover, my firm has served as trial counsel for class action Plaintiffs in six jury trials and has won all six, with recoveries ranging from $21 million to $299 million.

56.     I am of the opinion that Ms. D'Amario and Mr. Dunn's active involvement in this case was critical to its ultimate resolution.  They took their roles as class representatives seriously, devoting significant amounts of time and effort to protecting the interests of the class. Without their willingness to assume the risks and responsibilities of serving as class

---

[1] Bursor & Fisher has since won a sixth jury verdict in *Perez v. Rash Curtis & Associates*, Case No. 4:16-cv-03396-YGR (N.D. Cal.), for $267 million.

representatives, I do not believe such a strong result could have been achieved.

57.     Ms. D'Amario and Mr. Dunn equipped my firm with critical details regarding their experiences with Defendant.  They assisted my firm in investigating their claims, detailing their experiences at UT during the Spring 2002 Semester, supplying supporting documentation, aiding in drafting the First Amended Complaint, and preparing to respond to written interrogatories, and produce documents in formal discovery.  Ms. D'Amario and Mr. Dunn were prepared to testify at deposition and trial, if necessary.  And they were actively consulted during the settlement process.

58.     In short, Ms. D'Amario and Mr. Dunn assisted my firm in pursuing this action on behalf of the class, and their involvement in this case has been nothing short of essential.

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 25th day of July, 2022 at New York, New York.

*/s Philip L. Fraietta*
Philip L. Fraietta
