**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JADE D'AMARIO and JOSHUA DUNN, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 7:20-cv-03744-CS |
| v. | |
| THE UNIVERSITY OF TAMPA, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARDS**

Dated: July 25, 2022

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com
         aleslie@bursor.com

*Class Counsel*

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION .................................................................................................... 1

    A.    Plaintiffs' Allegations ............................................................................ 2

    B.    The Litigation and Work Performed To Benefit The Class.................... 3

SUMMARY OF THE SETTLEMENT ..................................................................... 5

ARGUMENT ........................................................................................................... 6

I.      THE REQUESTED ATTORNEYS' FEES, COSTS, AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ..................................... 6

    A.    The Percentage Method Should Be Used To Calculate Fees ................... 8

    B.    The Reasonableness Of The Requested Fees Is Supported By This Circuit's Six-Factor *Goldberger* Test .................................................. 10

        1.    Time And Labor Expended By Counsel .................................... 10

        2.    Magnitude And Complexity Of The Litigation ......................... 12

        3.    The Risk Of Litigation .............................................................. 13

        4.    The Quality Of Representation ................................................. 14

        5.    The Requested Fee In Relation To The Settlement ................... 15

        6.    Public Policy Considerations .................................................... 15

    C.    The Requested Attorneys' Fees Are Also Reasonable Under A Lodestar Cross-Check ........................................................................... 16

II.    THE REQUESTED INCENTIVE AWARD REFLECTS PLAINTIFFS' ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED ........................................................................................... 19

CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
   522 F.3d 182 (2d Cir. 2008)..................................................................................... 12

*Asare v. Change Grp. of N.Y., Inc.*,
   2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)...................................................... 22

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,
   2002 WL 1315603 (S.D.N.Y. June 17, 2002) ...................................................... 11

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................... 22

*Blum v. Stenson*,
   465 U.S. 886 (1984)....................................................................................... 20, 21

*Cassese v. Williams*,
   503 F. App'x 55 (2d Cir. 2012) .............................................................................. 20

*Cates v. Trustees of Columbia Univ. in City of New York*,
   2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021).......................................................... 12

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................................................... 12

*Clark v. Ecolab, Inc.*,
   2010 WL 1948198 (S.D.N.Y. May 11, 2010) ........................................................ 12

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011).................................................................... 12

*Dornberger v. Metro. Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................... 24

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014) ............................................................ 18

*GB ex rel NB v. Tuxedo Union Free School Dist.*,
   894 F. Supp. 2d 415 (S.D.N.Y. 2012)..................................................................... 11

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000).............................................................................. passim

*Hayes v. Harmony Gold Min. Co.*,
   2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) .......................................................... 12

*Hyun v. Ippudo USA Holdings*,
  2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016) .................................................. 13, 22

*In re Beacon Assocs. Litig.*,
  2013 WL 2450960 (S.D.N.Y. May 9, 2013) ........................................................ 13

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................................. 11

*In re Credit Default Swaps Antitrust Litig.*,
  2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ...................................................... 22

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................................... 13

*In re Initial Public Offering Secs. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) ................................................................. 12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2018 WL 3863445 (S.D.N.Y. Aug. 14, 2018) ..................................................... 24

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................. 17, 19

*In re MetLife Demutalization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................ 18

*In re Nasdaq Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................ 16

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................ 17

*Khait v. Whirlpool Corp.*,
  2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ..................................................... 12

*LeBlanc-Sternberg v. Fletcher*,
  143 F. 3d 748 (2d Cir. 1998) .............................................................................. 21

*Luciano v. Olsten Corp.*,
  109 F.3d 111 (2d Cir. 1997) ............................................................................... 21

*Massiah v. MetroPlus Health Plan, Inc.*,
  2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ............................................... 19, 23

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) .......................................................................... 10, 14

*Missouri v. Jenkins,*
  491 U.S. 274 (1989) ............................................................................................... 21

*Monzon v. 103W77 Partners, LLC,*
  2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) ........................................................... 11

*Parker v. Jekyll & Hyde Entm't Holdings, LLC,*
  2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ............................................................ 23

*Parker v. Time Warner Entertainment Co., L.P.,*
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) ................................................................... 20

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air,*
  478 U.S. 546 (1986) ............................................................................................... 20

*Perdue v. Kenny A. ex rel. Winn,*
  559 U.S. 542 (2010) ............................................................................................... 13

*Perez v. Rash Curtis & Associates,*
  2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ...................................................... 23

*Reyes v. Altamarea Grp.,*
  2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ................................................. 12, 23

*Roberts v. TJX Companies, Inc.,*
  2016 WL 8677312 (D. Mass. Sept. 30, 2016) ...................................................... 16

*Shapiro v. JPMorgan Chase 7 Co.,*
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ......................................... 17, 19, 20

*Varljen v. H.J. Meyers & Co., Inc.,*
  2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ......................................................... 13

*Velez v. Novartis Pharm. Corp.,*
  2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ....................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) .............................................................. 11, 13, 14, 20

*Willix v. Healthfirst, Inc.,*
  2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ......................................................... 12

*Yuzary v. HSBC Bank USA, N.A.,*
  2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) .................................................... 10, 23

*Zorrilla v. Carlson Restaurants Inc.,*
  2018 WL 1737139 (S.D.N.Y. Apr. 9, 2018) ......................................................... 12

**STATUTES**

Florida Statute § 768.39 ................................................................................................ 8

**RULES**

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 8

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 7, 8

Fed. R. Civ. P. 15(a)(1) ............................................................................................ 7, 8

Fed. R. Civ. P. 16 ......................................................................................................... 9

Fed. R. Civ. P. 23(h) ............................................................................................... 6, 10

Fed. R. Civ. P. 26 ......................................................................................................... 9

## INTRODUCTION

Plaintiffs Jade D'Amario and Joshua Dunn were students enrolled in the on-campus experience program for the Spring 2020 Semester at Defendant University of Tampa ("Tampa," "UT" or "Defendant"). Plaintiffs alleged that Tampa breached its contract with students to provide an in-person, on-campus experience when it shut down midway through the Spring 2020 semester and moved to online learning due to COVID-19. After extensive arms' length negotiations, including a full-day mediation with the Honorable Joseph P. Farina (Ret.), formerly of the 11th Judicial Circuit in Florida, and now with JAMS Miami, the parties reached a Class Action Settlement (the "Agreement" or "Settlement"). The Settlement – preliminarily approved by this Court on June 3, 2022 – creates a $3.4 million non-reversionary common fund that will be used to pay Settlement Class Members, notice and administration costs, incentive awards to the named plaintiffs, and attorneys' fees, costs, and expenses to Class Counsel.

On a dollar-per-student basis, this Settlement falls squarely within the range established by previous, similar settlements that have been finally approved in the COVID-19 tuition and fee refund context. *See*, *e.g.*, *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.) ($2.4MM common fund); *Wright v. S. New Hampshire Univ.*, No. 1:20-cv-00609 (D.N.H.) ($1.25MM common fund); *Martin v. Lindenwood Univ.* (E.D. Mo.) ($1.65MM common fund). What is more, Settlement Class Members will <u>automatically</u> receive a *pro rata* cash payment as a percentage of the total amount of tuition and fees they paid to Tampa for the Spring 2020 Semester, unless they excluded themselves from the Settlement. In other words, Settlement Class Members will not be required to submit a claim form in order to receive a *pro rata* cash payment.

In light of this exceptional result, Plaintiffs respectfully request pursuant to Federal Rule of Civil Procedure 23(h) that the Court approve attorneys' fees, costs, and expenses of one-third

1

of the Settlement Fund, or $1,133,333.33, as well as incentive awards of $10,000 each to

Plaintiffs for their service as class representatives.  Notably, Plaintiffs' request for one-third of

the Settlement Fund is consistent with what was requested and approved in the above-referenced

settlements.

 For these reasons, and as explained further below, this Court should approve the

requested fees, costs, expenses, and incentive awards.

**FACTUAL AND PROCEDURAL BACKGROUND**

 A. **Plaintiffs' Allegations**

 Plaintiffs and Settlement Class Members are current and/or former students of Defendant

The University of Tampa.  Plaintiffs allege that they and class members "entered into a

contractual agreement for specific services – an on-campus, in-person education experience at

UT.  Plaintiffs were to provide pre-payment, partially in the form of tuition and fees, and UT, in

exchange, was to provide in-person educational services, experiences, opportunities, and other

related facilities to Class Members, including Ms. Jade D'Amario and Mr. Joshua Dunn."

Second Amended Complaint (ECF No. 45) ("SAC") ¶ 3.  They also allege, "[t]he terms of the

contractual agreement, including details of the specific services Defendant was to provide, were

set forth in various publications from UT, including, but not limited to, UT's Spring Semester

2020 Course Catalog ("Course Catalog"), UT's Course Schedule Search and Registration,

course-specific syllabi, course schedules, and UT's website."  *Id.*  The SAC further alleges

"[w]hen Plaintiffs and Class Members sought to enter into a contractual agreement with

Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs and

Class Members viewed the Course Catalog and Course Schedule Search and Registration to

make specific course selections prior to registering and paying for selected courses."  *Id.* ¶ 4.

2

Plaintiffs also allege that as "[a]s a result of the closure of Defendant's facilities, Defendant has not delivered the in-person classes, educational services, facilities, access and/or opportunities for which the Plaintiffs and Class Members contracted and paid." *Id.* ¶ 37. Specifically, Plaintiffs claim "UT did not provide in-person education, experiences, or related services for approximately 50% of the Spring Semester 2020." *Id.* ¶ 36. As such, Plaintiffs allege they are "entitled to a refund of tuition and fees paid for in-person educational services, facilities, access and/or opportunities that Defendant has not provided." *Id.* ¶ 38. Defendant denies that it breached any express or implied contract with its students or that it was unjustly enriched as a result of the change in learning modalities required during the Spring 2020 Semester.

### B.    The Litigation and Work Performed To Benefit The Class

On May 14, 2020, Toni Fiore filed a putative class action complaint in the United States District Court for the Southern District of New York. The complaint alleged that Defendant should have refunded tuition and fees to certain students for the Spring 2020 academic semester at UT, after Defendant ceased in-person instruction and moved to a remote format in light of the COVID-19 pandemic. ECF No. 1. In response to the complaint, on July 31, 2020, Defendant filed a letter requesting a pre-motion conference on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). ECF No. 6. On August 18, 2020, Ms. Fiore filed a letter informing the Court that she intended to file a First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1). ECF No. 12. On August 19, 2020, Ms. Fiore filed a letter in response to Defendant's July 31, 2020 letter. ECF No. 14.

On September 15, 2020, pursuant to Fed. R. Civ. P. 15(a)(1), Ms. Fiore filed a First Amended Class Action Complaint ("FAC"), adding Jade D'Amario, Joshua Dunn, and Sean Dunn as named plaintiffs. ECF No. 16. In response to the FAC, on October 15, 2020,

Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  ECF No. 19.  On November 13, 2020, Plaintiffs filed an opposition to the motion to dismiss.  ECF No. 26.  On December 4, 2020, Defendant filed a reply in support of its motion to dismiss.  ECF No. 28.

On July 16, 2021, with the motion to dismiss still pending, Defendant filed a letter requesting leave to file supplemental briefing regarding Florida Statute § 768.39 (the "Florida Immunity Statute"), which was signed into law on June 29, 2021.  ECF No. 36.  Defendant argued, *inter alia*, that the Florida Immunity Statute granted it immunity from all liability stemming from this lawsuit.  *Id.*  On July 19, 2021, the Court granted the Parties leave to file supplemental briefing regarding the Florida Immunity Statute.  ECF No. 37.  Defendant filed its supplemental brief on July 30, 2021.  ECF No. 38.  Plaintiffs filed their response on August 10, 2021, arguing, *inter alia,* that the Florida Immunity Statute was unconstitutional and could not apply retroactively.  ECF No. 40.  Defendant filed its reply on August 16, 2021.  ECF No. 42.

On October 20, 2021, the Court issued an Opinion & Order granting in part and denying in part the motion to dismiss and dismissing Ms. Toni Fiore and Mr. Sean Dunn as named plaintiffs for lack of standing.  ECF No. 44.  The Opinion & Order was the first time a court had considered the impact of the Florida Immunity Statute on a suit seeking tuition and fee refunds as a result of the transition to remote learning in the Spring 2020 semester.  *Id.* at 8-18.  The Court held that "it is clear that the legislature intended the statute to apply retroactively, with no carve-out for already commenced cases."  *Id.* at 14.  Nonetheless, Class Counsel persuaded the Court that because the Florida Immunity Statute "would violate due process by impairing Plaintiffs' vested rights in their causes of action, its retroactive application is impermissible and the Statute cannot constitutionally be applied in this case to bar Plaintiffs' claims."  *Id.* at 17-18.

On November 3, 2021, Plaintiffs filed the operative Second Amended Complaint.  ECF

No. 45.  On November 17, 2021, Defendant filed an Answer to the Second Amended Complaint,

denying the allegations generally and asserting twenty-six affirmative and other defenses.  ECF

No. 47.  Thereafter, on January 5, 2022, the Court conducted an initial scheduling conference

pursuant to Fed. R. Civ. P. 16 and issued a Civil Case Discovery Plan and Scheduling Order.

ECF Nos. 51, 58.   At that point, the Parties began fact discovery.  Fraietta Decl. ¶ 23.

From the outset of the case the Parties engaged in direct communications, and as part of

their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution.  *Id.* ¶ 24.  Those

discussions eventually led to an agreement between the Parties to engage in mediation, which the

Parties agreed would take place before Judge Farina.  *Id.* ¶ 25.  In preparation for the mediation,

the Parties exchanged informal discovery, including the total out-of-pocket amount paid for in-

person tuition and fees for the Spring Semester 2020.  *Id.*  The parties also exchanged lengthy,

detailed mediation statements, airing their respective legal arguments and theories on potential

damages, and prepared detailed opening statements.  *Id.* ¶ 26.

The mediation took place on March 31, 2022 and lasted the entire day.  *Id.* ¶ 28.  At the

conclusion of the mediation, the Parties reached agreement on all material terms of a class action

settlement and executed a term sheet.  *Id.*.  In the weeks following, the Parties negotiated and

finalized the full-form Settlement Agreement, which is attached to the Fraietta Declaration as

Exhibit A.  *Id.* ¶ 29.  On June 3, 2022, the Court granted preliminary approval of the Settlement.

*Id.* ¶ 34 (citing ECF No. 65).  During and since that time, Class Counsel has worked with the

Settlement Administrator to administer the Notice Plan.  *Id.* ¶ 40.

## SUMMARY OF THE SETTLEMENT

Class Counsel's efforts resulted in an outstanding settlement.  The Settlement provides an

exceptional result for the Settlement Class by delivering immediate cash to class members.  The

Settlement creates a non-reversionary $3,400,000 Settlement Fund, from which class members

will <u>automatically</u> receive a *pro rata* cash payment.  *Id.*; *see also* Ex. A, Agreement ¶¶ 1.32; 2.1.

**ARGUMENT**

**I.   THE REQUESTED ATTORNEYS' FEES, COSTS, AND EXPENSES ARE
      REASONABLE AND SHOULD BE APPROVED**

The requested fee award of $1,133,333.33, representing one-third of the cash common

fund, is reasonable and merits approval.  Under Federal Rule of Civil Procedure 23(h), courts

may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the

parties' agreement."  Fed. R. Civ. P. 23(h).[1]  Here, the Settlement Agreement between the

Parties provides that Class Counsel may petition the Court for an award of attorneys' fees, costs,

and expenses of up to one-third of the Settlement Fund.  Agreement ¶ 8.1.

In common-fund cases such as this one, courts in the Second Circuit apply one of two fee

calculation methods – the "percentage of the fund" method or the "lodestar" method.  *See*

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  The Court has

discretion in choosing which method to employ.  *See McDaniel v. County of Schenectady*, 595

F.3d 411, 419 (2d Cir. 2010) (holding that "the decision as to the appropriate method [is left] to

'the district court, which is intimately familiar with the nuances of the case'") (quoting

*Goldberger*, 209 F.3d at 48).  "The trend in the Second Circuit is to use the percentage of the

fund method in common fund cases like this one, as it directly aligns the interests of the class

---

[1] The requested fee award also encompasses unreimbursed litigation expenses.  Agreement ¶ 8.1.
Reasonable litigation-related expenses are customarily awarded in common fund cases and
include costs such as document preparation and travel.  *See, e.g.*, *Yuzary v. HSBC Bank USA,
N.A.*, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) ("Class Counsel's unreimbursed
expenses, including court and process server fees, postage and courier fees, transportation,
working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the
mediator's fees, are reasonable and were incidental and necessary to the representation of the
class.").  Thus, included in the requested fee award, Class Counsel respectfully seeks
reimbursement of $6,518 for out-of-pocket expenses in these standard categories.  *See* Fraietta
Decl. ¶ 46, Ex. C.

and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015).   In fact, the "trend" of using the percentage of the fund method to compensate class counsel is now "firmly entrenched in the jurisprudence of this Circuit." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013).  As the Second Circuit has stated, the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  "In contrast, the 'lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits.'" *Id.* (quoting *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)).  Indeed, over a decade ago, the Second Circuit described difficulties with the lodestar method:

> As so often happens with simple nostrums, experience with the lodestar method proved vexing.  Our district courts found it created a temptation for lawyers to run up the number of hours for which they could be paid.  For the same reason, the lodestar created an unanticipated disincentive to early settlements.  But the primary source of dissatisfaction was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits.  There was an inevitable waste of judicial resources.

*Goldberger*, 209 F.3d at 48-49.  And as Judge Karas has noted, "courts in the Second Circuit no longer use the 'lodestar' method for computing attorneys' fees" in fee-shifting cases.  *GB ex rel NB v. Tuxedo Union Free School Dist.*, 894 F. Supp. 2d 415, 427 (S.D.N.Y. 2012) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008)).

Moreover, "Courts in this District routinely approve fee awards of one-third of the common fund or more." *Cates v. Trustees of Columbia Univ. in City of New York*, 2021 WL 4847890, at *7 (S.D.N.Y. Oct. 18, 2021); *Zorrilla v. Carlson Restaurants Inc.*, 2018 WL 1737139, at *2 (S.D.N.Y. Apr. 9, 2018) (awarding "$6,336,666.67, or one-third of the Gross Settlement Amount, for attorneys' fees"); *Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding "attorneys' fees in the amount of one third" of a $9 million settlement fund), *aff'd* 509 F. App'x 21, 23-24 (2d Cir. 2013) (affirming fee award, and noting that "the prospect of a percentage fee award from a common fund settlement, as here, aligns the interests of class counsel with those of the class"); *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding one-third of the $510 million net settlement fund); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding one-third of $42 million settlement fund); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement fund); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement fund); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund); *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding one-third of $6 million settlement fund).  Indeed, as courts in this Circuit have noted, fee requests for one-third of common funds represent what "reasonable, paying client[s] … typically pay … of their recoveries under private retainer agreements." *Reyes v. Altamarea Grp.*, 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011) (citing *Arbor Hill*, 522 F.3d 182).

### A.   The Percentage Method Should Be Used To Calculate Fees

As stated above, the "trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund

cases." *In re Beacon Assocs. Litig.*, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013).  In

contrast, the lodestar approach is more often applied in federal fee-shifting cases, particularly

civil rights actions.  *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  As

Judge Cote has stated, the percentage method is preferred for several reasons:

> First, it relieves the court of the cumbersome, enervating, and often
> surrealistic process of evaluating fee petitions.  Second, it
> decreases plaintiff lawyers' incentive to run up the number of
> billable hours for which they would be compensated by the
> lodestar method.  And finally, it decreases the incentive to delay
> settlement because the fee for the plaintiffs' attorneys does not
> increase with delay.

*Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (internal

citations omitted); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL

2230177, at *16 (S.D.N.Y. July 27, 2007) ("From a public policy perspective, the percentage

method is the most efficient means of compensating the work of class action attorneys.  It does

not waste judicial resources analyzing thousands of hours of work, where counsel obtained a

superior result.").

Under the circumstances of this case – wherein Class Counsel received an exceptional

result for the Settlement Class – the Second Circuit prefers the percentage method.  *See Wal-*

*Mart Stores, Inc.*, 396 F.3d at 121 (noting that the percentage method "directly aligns the

interests of the class and its counsel and provides a powerful incentive for the efficient

prosecution and early resolution of litigation"); *Hyun v. Ippudo USA Holdings*, 2016 WL

1222347, at *3 (S.D.N.Y. Mar. 24, 2016) ("In this case, where the parties were able to settle

relatively early and before any depositions occurred … the Court finds that the percentage

method, which avoids the lodestar method's potential to 'creative a disincentive to early

settlement' … is appropriate.") (citing *McDaniel*, 595 F.3d at 418).  In contrast, "the lodestar

create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits." *Id.* at 121.

**B.     The Reasonableness Of The Requested Fees Is Supported By This Circuit's Six-Factor *Goldberger* Test**

The Second Circuit has articulated six factors that should be considered when determining the reasonableness of a requested percentage to award as attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50.  A review of these factors supports Class Counsel's fee request.

**1.     Time And Labor Expended By Counsel**

Since Class Counsel began investigating this matter in March 2020, Counsel has devoted over 469 hours to the successful pursuit of this matter.  Fraietta Decl. ¶ 43.   Class Counsel's dedication to this matter and expenditure of substantial time, effort, and resources has brought this complex litigation to a successful resolution.

(i)     Class Counsel Thoroughly Investigated the Claims and Allegations in this Matter

Class Counsel extensively investigated legal and factual allegations of Plaintiffs' breach of contract and unjust enrichment claims due to Tampa's campus closures resulting from COVID-19.  Class Counsel's work included, *inter alia*, conducting an extensive factual investigation, including (i) interviewing witnesses with knowledge of the underlying allegations set forth in the Complaint; (ii) reviewing extensive records and documents provided by the Plaintiffs and other witnesses; (iii) reviewing public statements issued by Tampa; (iv) reviewing Tampa course registration portals, various policy documents, and handbooks; and, (v) reviewing

other publicly available information on Tampa's website.  *See* Fraietta Decl. ¶¶ 3-20.

(ii) <u>Class Counsel Actively Litigated this Case</u>

Class Counsel drafted pleadings including a complaint, an amended complaint, and a second amended complaint.  Class Counsel also briefed a motion to dismiss, which included drafting and submitting multiple notices of supplemental authority, as well as an opposition brief to Defendant's supplemental memorandum of law regarding Florida's Immunity Statute.  Facing significant risk if Plaintiffs were to lose, Class Counsel successfully argued that the statute was unconstitutional and did not bar Plaintiffs' claims.  *See* Fraietta Decl. ¶¶ 13-19.  And Class Counsel participated in meet and confer sessions with Tampa's counsel.  *See* Fraietta Decl. ¶ 22.

(iii) <u>Class Counsel Committed Substantial Time and Resources to Reaching a Comprehensive Class Settlement an Obtaining Preliminary Approval</u>

Class Counsel also dedicated a significant amount of time to reaching a resolution of this matter.  Class Counsel crafted a settlement proposal; participated in a full day of mediation, which was preceded by several weeks of settlement negotiations, and followed by several weeks of additional settlement negotiations after the mediation; negotiated and prepared the Class Action Settlement Agreement and the Class Notice documents and Claim Form; and secured and worked with a Settlement Administrator to  effectuate the Settlement.  *See* Fraietta Decl.  ¶ 28-40.

Class Counsel also successfully moved for Preliminary Approval of the Proposed Class Action Settlement (*see* ECF Nos. 61-63, 65).  Class Counsel provided this Court with lengthy briefing, declarations, and exhibits in support of their Motion.

(iv) <u>Class Counsel's Significant Work After Preliminary Approval</u>

After this Court granted Preliminary Approval, Class Counsel spent a substantial amount of time working with the Settlement Administrator and assisting the Plaintiffs and Class Members with the Settlement.  *See* Fraietta Decl. ¶¶ 40-41.  Throughout this litigation, Class

Counsel has participated in countless calls with the Plaintiffs and class members regarding their claims, the litigation, and the Settlement. *Id.* ¶ 41.

> (v)    <u>Over the Next Several Months, Class Counsel Will Commit Additional Time and Resources to Monitoring the Settlement</u>

Class Counsel will commit significant ongoing time and resources to this litigation. Fraietta Decl. ¶ 44. Class Counsel will, in the immediate future, be required to dedicate time and resources to administering the Settlement. *Id.* Based on Class Counsel's experience in other cases, this ongoing work will likely involve approximately 50-75 total additional hours. *Id.* This additional work should be accounted for as well. *See Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (awarding one-third and noting that class counsel has "already committed, and anticipate continuing to commit, additional time to the administration of the claims.").

## 2. Magnitude And Complexity Of The Litigation

The complex nature of this litigation further favors the requested fee award. "[C]lass actions have a well deserved reputation as being most complex." *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (internal citation and quotations omitted). In this case specifically, however, it goes without say that the claims and legal theories at issue are novel, complicated, and unsettled, to put it lightly. Indeed, as Judge McMahon has observed, "[t]he federal courts have established that a standard fee in complex class action cases … where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit," and "[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010).

The complexity of this case is further underscored by the challenges Plaintiffs faced on a

motion to dismiss, and even more so if they were to prevail and seek class certification.  Indeed, substantially similar motions to dismiss have been granted by federal courts across the country.  *See* Fraietta Decl. ¶ 37 (citing cases).  And federal courts have recently denied class certification and granted summary judgment in university defendants' favor.  *See id.*  This factor favors the requested fee.

### 3.    The Risk Of Litigation

This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees.  *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) (noting risk of non-payment in cases brought on contingency basis).  "It is well settled that class actions are notoriously complex and difficult to litigate."  *Shapiro v. JPMorgan Chase 7 Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) (internal citation omitted).

Here, this case presented a substantial risk of non-payment for Class Counsel.  For over two years, Class Counsel invested significant time, effort, and resources to the litigation without any compensation.  Fraietta Decl. ¶¶ 43-45.  Most notably, Class Counsel had to overcome the Florida Immunity Statute, which the Court acknowledged was clearly "intended … to apply retroactively, with no carve-out for already commenced cases."  ECF No. 44 at 14.  Cognizant of the risk of nonpayment, Class Counsel nonetheless took this case on a pure contingency basis and committed substantial resources of attorney and staff time towards investigating and litigating this action.  Fraietta Decl. ¶¶ 43-45.  Class Counsel further recognizes that Plaintiffs faced considerable risks in establishing class-wide liability, obtaining Rule 23 certification of the proposed class action (and perhaps opposing a motion for decertification or a Rule 23(f)

13

petition), and establishing damages.  Fraietta Decl. ¶¶ 36-38.  Class Counsel also assumed the

risk of the significant delay associated with achieving a final resolution through trial and any

appeals. *Id.* ¶ 38.

The fact that Class Counsel undertook this representation, despite the significant risk of

nonpayment, supports the requested fee award.

### 4.      The Quality Of Representation

Class action litigation presents unique challenges and – by achieving an exceptional

settlement – Class Counsel proved that they have the ability and resources to litigate this case

zealously and effectively.  In addition, Class Counsel are well-respected attorneys with

significant experience litigating consumer class actions of similar size, scope, and complexity.

Fraietta Decl. ¶¶ 52-53, Ex. N.  In the college tuition refund context, Class Counsel successfully

obtained settlements for students in *Wright v. Southern New Hampshire Univ.*, 1:20-cv-00609-

LM (D.N.H. 2021) and *Martin v. Lindenwood Univ.*, 4:20-cv-01128-RLW (E.D. Mo. 2022).

Moreover, Class Counsel has been recognized by courts across the country for its

expertise.  *See* Firm Resume, Fraietta Decl. Ex. N; *see also Ebin v. Kangadis Food Inc.*, 297

F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) (Rakoff, J.) ("Bursor & Fisher, P.A., are class action

lawyers who have experience litigating consumer claims. … The firm has been appointed class

counsel in dozens of cases in both federal and state courts, and has won multi-million dollar

verdicts or recoveries in five class action jury trials since 2008.").

Furthermore, "[t]he quality of the opposition should be taken into consideration in

assessing the quality of the plaintiffs' counsel's performance." *In re MetLife Demutalization

Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010).  Class Counsel achieved an exceptional result

in this case while facing well-resourced and highly experienced defense counsel. *See Marsh

ERISA Litig.*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs'

efforts further proves the caliber of representation that was necessary to achieve the Settlement.").

Class Counsel litigated this case efficiently, effectively, and civilly.  The excellent result is a function of the high quality of that work, which supports the requested fee award.

### 5.      The Requested Fee In Relation To The Settlement

Class Counsel seeks attorneys' fees of one-third of the $3.4 million cash settlement fund. As aforementioned, courts in this Circuit routinely approve fee requests for one-third of a common fund.  *See supra* cases cited in Argument § I.  Moreover, the requested fees of one-third of the settlement fund are an equal percentage to that approved by other courts in similar COVID-19 tuition refund cases.  *See id.*  This factor thus supports the requested fee award.

### 6.      Public Policy Considerations

The final *Goldberger* factor is public policy.  "Skilled counsel must be incentivized to pursue complex and risky claims [that protect the public on a contingency basis]."  *Shapiro*, 2014 WL 1224666, at *24.  As such, reasonable fee awards must be provided in order to ensure that attorneys are incentivized to litigate class actions, which serve as private enforcement tools to police defendants who engage in misconduct.  *See id.*  "Attorneys who fill the private attorney general role must be adequately compensated for their efforts," otherwise the public risks an absence of a "remedy because attorneys would be unwilling to take on the risk."  *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012) (citing *Goldberger*, 209 F.3d at 51).  Thus, society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect consumer rights, particularly where it is unlikely that the Class Members will pursue litigation on their own for economic or personal reasons.

Here, public policy considerations also favor Class Counsel's fee request because this

case sought to hold Tampa accountable for shifting the entire financial burden of the COVID-19 pandemic onto its students.  A one-third fee would, moreover, compensate Class Counsel at a level commensurate with the benefits they have conferred on the Class, the substantial investment of time and money they devoted to litigating this unique case and bringing about the Settlement, as well as the contingent nature of their representation.  Fraietta Decl. ¶ 43.  Public policy therefore favors this fee request.

C.      **The Requested Attorneys' Fees Are Also Reasonable Under A Lodestar Cross-Check**

A lodestar cross-check further supports the requested fee.  Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.  *See Wal–Mart Stores, Inc.*, 396 F.3d at 121.  Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50; *see also Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (noting the "need for exact [billing] records [is] not imperative" where the lodestar is used as a "mere cross-check").

To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Parker v. Time Warner Entertainment Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y. 2009).  The resulting figure may be adjusted at the court's discretion by a multiplier, taking into account various equitable factors.  *See Parker*, 631 F. Supp. 2d at 264; *Shapiro*, 2014 WL 1224666, at *24 ("Additionally, under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature

of the engagement, the skill of the attorneys, and other factors.") (internal quotations and citations omitted).

The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, *i.e.*, the "market rate." *See Blum*, 465 U.S. at 895; *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115-116 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (alteration in original and citation omitted). Here, the hourly rates used by Class Counsel are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the New York legal market. *See* Fraietta Decl. ¶¶ 47-50.[2]

The hours worked, lodestar, and expenses for Class Counsel are set forth in the declaration of Mr. Fraietta, submitted herewith. These records confirm Class Counsel's efficient billing, by, for example, striving to assign as much work as possible to less senior lawyers or paralegals who bill at lower hourly rates in order to minimize the fees for the Class.

Thus, even under the optional lodestar cross check, Class Counsel's requested fees are reasonable given the unique circumstances of this case. Specifically:

- Class Counsel obtained an excellent Settlement, which will result in class members receiving a substantial amount of money quickly and automatically, without the need to submit a claim.

- The litigation was conducted and the Settlement was obtained in an efficient manner, by experienced and qualified counsel.

---

[2] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (recognizing "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise"); *LeBlanc-Sternberg v. Fletcher,* 143 F. 3d 748, 764 (2d Cir. 1998) ("The lodestar should be based on 'prevailing market rates' … and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment.") (citation omitted).

- The case involved complex and novel legal issues and factual theories, which involved significant litigation risks, including, but not limited to, the applicability of the Florida Immunity Statute.

- Class Counsel devised a litigation and settlement strategy that factored in the complex and uncertain nature of the case.

In total, through July 22, 2022, Class County has devoted more than 495 hours to prosecuting this litigation. *See* Fraietta Decl. ¶ 43. Class Counsel's aggregate lodestar exceeds $283,000. *Id.* Therefore, the requested fee award represents a multiplier of approximately 3.97, which is well within the accepted range in this Circuit. *See Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *In re Columbia University Tuition Refund Action*, Case No. 20-cv-03208-JMF, ECF No. 115 at ¶ 10 (S.D.N.Y. Mar. 29, 2022) (approving attorneys' fees of one-third of $12.5 million common fund, representing 4.3 times multiplier on Class Counsel's regular hourly rates); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (approving attorneys' fees of 33% of a $4.9 million common fund, representing a 6.3 times multiplier on Class Counsel's regular hourly rates); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (approving attorneys' fees of $253,758,000, which reflected a "lodestar multiplier of just over 6").

Moreover, as courts in New York and elsewhere have noted, a high multiplier "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particularly where, as here, the settlement amount was substantial." *Beckman*, 293 F.R.D. at 482; *Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) ("In this case, where the parties were able to settle relatively early and before any depositions occurred … the Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement' … is appropriate."); *see also Perez*, 2020 WL 1904533, at *21 ("The benefit

obtained for the class is an extraordinary result, while there was and still is significant risk of nonpayment for class counsel.  Moreover, the general quality of the representation and the complexity and novelty of the issues presented weigh in favor of a higher lodestar multiplier.").

Class Counsel's lodestar multiplier is also reasonable because it will decrease over time. *See* Fraietta Decl. ¶ 44.  "[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time."  *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 WL 532960, at *2 (S.D.N.Y. Fed. 9, 2010).  Here, "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request."  *Yuzary*, 2013 WL 5492998, at *11; *Perez*, 2020 WL 1904533, at *19-20 (concluding that expected future hours should be counted towards lodestar cross-check and applying same).

In sum, Class Counsel's efforts in this case resulted in an exceptional settlement of a complex and uncertain case.  Class Counsel should be rewarded for achieving this result.

## II.    THE REQUESTED INCENTIVE AWARD REFLECTS PLAINTIFFS' ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED

Incentive awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]."  *Reyes*, 2011 WL 4599822, at *9.  Incentive awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take.  *Massiah*, 2012 WL 5874655, at *8.

Here, the participation of Plaintiffs was critical to the ultimate success of the case.  *See* Fraietta Decl. ¶¶ 56-58.  Plaintiffs spent significant time protecting the interests of the class through their involvement in this case.  *See* Declaration of Jade D'Amario ("D'Amario Decl.");

Declaration of Joshua Dunn ("Dunn Decl."). Plaintiffs assisted Class Counsel in investigating their claims by providing information necessary to draft and file the SAC. *Id.* ¶¶ 57-58. During the course of this litigation, Plaintiffs assisted with preliminary discovery and kept in regular contact with their lawyers to receive updates on the progress of the case and to discuss strategy. *Id.* Finally, Plaintiffs conferred with Class Counsel during the settlement process. *Id.*

Equally important, Plaintiffs took on an enormous risk in filing this lawsuit. Indeed, at the time of filing, both Plaintiffs were still active students at Tampa, and thus took on an added risk by suing Tampa, including potential adverse consequences to their educational pursuits.

On these facts, the $10,000 incentive payments are appropriate in light of the efforts made by Plaintiffs to protect the interests of the other Settlement Class members, the time and effort they expended pursuing this matter, and the substantial benefit they helped achieve for the other Settlement Class members. Thus, an incentive award of $10,000 for each Plaintiff is well-deserved, reasonable, and equivalent to awards approved by other courts in this Circuit. *See, e.g.*, *In re Columbia University Tuition Refund Action*, Case No. 20-cv-03208-JMF, ECF No. 115, at ¶ 11 (S.D.N.Y. Mar. 29, 2022) (approving incentive awards of $25,000 to each plaintiff); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 3863445, at *2 (S.D.N.Y. Aug. 14, 2018) (approving incentive awards of $25,000); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) approve attorneys' fees, costs, and expenses in the amount of one-third of the settlement fund, or $1,133,333.33; (2) grant each Plaintiff an incentive award of $10,000 in recognition of their

efforts on behalf of the class; and (3) award such other and further relief as the Court deems reasonable and just.

Dated: July 25, 2022                          Respectfully submitted,

                                              **BURSOR & FISHER, P.A.**

                                              By:    _/s/ Philip L. Fraietta_
                                                        Philip L. Fraietta

                                              Philip L. Fraietta
                                              Alec M. Leslie
                                              888 Seventh Avenue
                                              New York, NY 10019
                                              Telephone: (646) 837-7150
                                              Facsimile: (212) 989-9163
                                              Email: pfraietta@bursor.com
                                                         aleslie@bursor.com

                                              *Class Counsel*