**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JADE D'AMARIO and JOSHUA DUNN, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>THE UNIVERSITY OF TAMPA,<br><br>                Defendant. | Case No. 7:20-cv-03744-CS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**<u>FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**


Dated: October 4, 2022

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com
       aleslie@bursor.com

*Class Counsel*

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ............................................................................................................ 1

I.    FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

    A.    Factual Background ................................................................... 2

    B.    Procedural History ................................................................... 3

    C.    History of Settlement Discussions ........................................... 4

II.    KEY TERMS OF THE SETTLEMENT ..................................................... 5

    A.    Class Definition ....................................................................... 5

    B.    Monetary Relief In The Form Of A Non-Reversionary Common Fund ........................................................................ 6

    C.    Release ..................................................................................... 6

    D.    Notice And Administration Expenses ....................................... 7

    E.    Incentive Award, Attorneys' Fees, Costs, And Expenses ......... 7

ARGUMENT ............................................................................................................... 7

I.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE ......................................................................................... 7

    A.    Numerosity ............................................................................... 8

    B.    Commonality ............................................................................ 9

    C.    Typicality ................................................................................. 9

    D.    Adequacy ................................................................................. 10

    E.    The Proposed Settlement Class Is Ascertainable .................... 12

    F.    The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3) ........................................................................ 12

        1.    Common Questions Predominate ................................. 13

        2.    A Class Action Is A Superior Mechanism For Adjudication ..................... 13

II.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS ...................... 14

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ................ 16

    A.    The Proposed Settlement Is Procedurally Fair (Fed. R. Civ. P. 23(e)(2)(B)) ........................................................................ 17

    B.    The Proposed Settlement Is Substantively Fair ...................... 18

        1.    Litigation Through Trial Would Be Complex, Costly, And Long (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factor 1) ..................... 18

        2.    The Reaction Of The Class Is Overwhelmingly Positive (Fed. R. Civ. P. 23(e)(2)(C)(ii) And *Grinnell* Factor 2) ..................... 19

        3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3) ..................... 20

i

4.      The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factors 4, 5, And 6) ...................................... 21

5.      Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7) ................................................................................. 23

6.      The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factors 8 And 9) .................. 23

CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ...................................................................................... 12, 13

*Brown v. Title Ticor Ins. Co.,*
982 F.2d 386 (9th Cir. 1992) .............................................................................. 12

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ...................................................................... 17, 19, 23

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995) ................................................................................... 8

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006) ............................................................................... 10

*Dziennik v. Sealift, Inc.,*
2007 WL 1580080 (E.D.N.Y. May 29, 2007) ......................................................... 10

*Ebin v. Kangadis Food Inc.,*
297 F.R.D. 561 (S.D.N.Y. 2014) ..................................................................... 10, 11

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ......................................................................................... 14

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.,*
301 F.R.D. 116 (S.D.N.Y. 2014) ........................................................................... 9

*Frank v. Eastman Kodak Co.,*
228 F.R.D. 174 (W.D.N.Y. Apr. 29, 2005) ....................................................... Passim

*Gilliam v. Addicts Rehab. Ctr. Fund,*
2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .......................................................... 23

*Green v. Wolf Corp.,*
406 F.2d 291 (2d Cir. 1968) ............................................................................... 13

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ....................................................................... 14, 19

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,*
271 F. App'x 41 (2d Cir. 2008) ........................................................................... 14

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ........................................................ 16

*In re AOL Time Warner, Inc.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................. 20

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................... 18, 20, 21, 22

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................ 16

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................................................... 14

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................. 19

*In re PaineWebber*,
   171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................... 21

*In re Petrobas*,
   862 F.3d 250 (2d Cir. 2017) .......................................................................... 11, 13

*In re Prudential Insur. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) ........................................................................... 13

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ................................................................................ 13

*In re Vitamin C Antitrust Litig.*,
   2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................................ 17, 18, 19, 21

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ................................................................................ 24

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ............................................................................. 8, 9

*Martens v. Smith Barney Inc.*,
   181 F.R.D. 243 (S.D.N.Y. 1998) .......................................................................... 10

*Massiah v. MetroPlus Health Plan, Inc.*,
   2012 WL 5874655 (E.D.N.Y. 2012) ..................................................................... 20

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) .......................................................................... 12

*McReynolds v. Richards-Cantave,*
588 F.3d 790 (2d Cir. 2009) ..................................................... 17

*Milonas v. Williams,*
691 F.2d 931 (10th Cir. 1982) .................................................. 9

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972) ..................................................... 23

*Ortiz v. Fibreboard Corp.,*
527 U.S. 815 (1999) ................................................................ 12

*Robidoux v. Celani,*
987 F.2d 931 (2d Cir. 1993) ................................................. 8, 10

*Rossini v. Ogilvy & Mather, Inc.,*
798 F.2d 590 (2d Cir. 1986) .................................................. 12

*TBK Partners, Ltd. v. Western Union Corp.,*
517 F. Supp. 380 (S.D.N.Y. 1981) .......................................... 18

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.,*
2004 WL 2997957 (S.D.N.Y. May 14, 2004) ......................... 23

*Times v. Target Corp.,*
2019 WL 5616867 (S.D.N.Y. 2019) ......................................... 8

*Tiro v. Public House Invs., LLC,*
2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ......................... 16

*Torres v. Gristede's Oper. Corp.,*
2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ......................... 20

*Toure v. Cent. Parking Sys.,*
2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ......................... 10

*Trinidad v. Breakaway Courier Sys., Inc.,*
2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) ............................ 10

*Wagner v. NutraSweet Co.,*
95 F.3d 527 (7th Cir. 1996) ................................................... 10

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ......................................................... 8, 9, 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
396 F.3d 96 (2d Cir. 2005) ............................................... 14, 16

*Weigner v. City of N.Y.*,
  852 F.2d 646 (2d Cir. 1988) ........................................................................... 14

*Willix v. Healthfirst, Inc.*,
  2011 WL 7584862 (E.D.N.Y. Feb. 18, 2011) ....................................................... 21

*Zivkovic v. Laura Christy LLC*,
  329 F.R.D. 61 (S.D.N.Y. 2018) .......................................................................... 9

**STATUTES**

Florida Statute § 768.39 .................................................................................. 3, 4

**RULES**

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 3

Fed. R. Civ. P. 15(a)(1) ....................................................................................... 3

Fed. R. Civ. P. 23 .........................................................................................Passim

Fed. R. Civ. P. 26 ............................................................................................... 4

## INTRODUCTION

On June 3, 2022, this Court preliminarily approved the class action settlement between Plaintiffs Jade D'Amario and Joshua Dunn ("Plaintiffs") and Defendant The University of Tampa ("UT" or "Defendant") and directed that notice be sent to the Settlement Class. ECF No. 65. The settlement administrator, JND Legal Administration ("JND") has implemented the Court-approved notice plan and direct notice has reached 99.7% of the certified Settlement Class. The reaction from the Class has been overwhelmingly positive. Specifically, of the approximately 9,085 Settlement Class Members, **zero** objected, and only 2 requested to be excluded.[1] The Settlement is an excellent result for the class and the Court should grant final approval.

The Settlement's strength speaks for itself: it creates a $3.4 million non-reversionary common fund from which the Settlement Class Members will **automatically** receive a *pro rata* cash award as a percentage of their out-of-pocket expenditure for the Spring 2020 Semester at UT. And despite the significant litigation risks presented, Class Counsel estimates that the $3.4 million recovery will allow each Settlement Class Member to receive several hundred dollars, either in cash, or as credit to be applied towards their education at UT, should they elect to do so.

Notably, on a dollar-per-student basis, this Settlement falls squarely within the range established by previous, similar settlements that have been finally approved in the COVID-19 tuition and fee refund context. *See*, *e.g.*, *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.) ($2.4MM common fund); *Wright v. S. New Hampshire Univ.*, No. 1:20-cv-00609

---

[1] The deadline for Settlement Class Members to request to be excluded was August 30, 2022. Declaration of Ryan Bahry Regarding Settlement Administration ("Bahry Decl.") ¶ 18, submitted herewith. The deadline for Settlement Class Members to object was August 30, 2022. *Id.* ¶ 20. The Settlement Administrator also received 3 timely exclusion requests from individuals who are not on the Class List. *Id.* ¶ 19.

(D.N.H.) ($1.25MM common fund); *Martin v. Lindenwood Univ.*, No. 4:20-cv-01128 (E.D. Mo.) ($1.65MM common fund).

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Plaintiffs and Class Members are current and/or former students of Defendant The University of Tampa. Plaintiffs allege that they and class members "entered into a contractual agreement for specific services – an on campus, in-person education experience at UT. Plaintiffs were to provide pre-payment, partially in the form of tuition and fees and UT, in exchange, was to provide in-person educational services, experiences, opportunities, and other related facilities to Class Members, including Ms. Jade D'Amario and Mr. Joshua Dunn." Second Amended Complaint (ECF No. 45) ("SAC") ¶ 3. They also allege "[t]he terms of the contractual agreement, including details of the specific services Defendant was to provide, were set forth in various publications from UT, including but not limited to UT's Spring Semester 2020 Course Catalog ('Course Catalog'), UT's Course Schedule and Registration, course-specific syllabi, course schedules, and UT's website." *Id.* The SAC further alleges "[w]hen Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs and Class Members viewed the Course Catalog and Course Schedule Search and Registration to make specific course selections prior to registering and paying for selected courses." *Id.* ¶ 4.

Plaintiffs also allege that as "a result of the closure of Defendant's facilities, Defendant has not delivered the in-person classes, educational services, facilities, access and/or opportunities for which the Plaintiffs and Class Members contracted and paid." *Id.* ¶ 37.

2

Specifically, Plaintiffs claim that "UT did not provide in-person education, experiences, or related services for approximately 50% of the Spring Semester 2020." *Id.* ¶ 36. As such, Plaintiffs allege they are "entitled do a refund of tuition and fees paid for in-person educational services, facilities, access and/or opportunities that Defendant has not provided." *Id.* ¶ 38. Defendant denies that it breached any express or implied contract with its students or that it was unjustly enriched as a result of the change in learning modalities during the Spring 2020 Semester.

Defendant has maintained that it acted properly, reasonably in accord with all applicable laws, rules, regulations, and ordinances to protect the health and safety of its students, faculty and staff, and that it did not violate any express or implied contractual obligations to its Spring 2020 students, particularly in light of the unprecedented circumstances created by the COVID-19 pandemic. Nevertheless, UT has agreed to the settlement to avoid the time, inconvenience, costs and uncertainty of protracted litigation both for itself and its students and, most importantly, because it wishes to instead focus its attention and resources on its priority of continuing to provide top quality education and services to its students.

### B. Procedural History

On May 14, 2020, Toni Fiore filed a putative class action complaint in the United States District Court for the Southern District of New York. Declaration of Philip L. Fraietta In Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Fraietta Decl.") ¶ 4. In response to the complaint, on July 31, 2020, Defendant filed a letter requesting a pre-motion conference on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id.* ¶ 5. On August 18, 2020, Ms. Fiore filed a letter informing the Court that she intended to file a First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1). *Id.* ¶ 6. On August 19, 2020, Ms. Fiore filed a letter in response to Defendant's July 31, 2020 letter. *Id.*

On September 15, 2020, pursuant to Fed. R. Civ. P. 15(a)(1), Ms. Fiore filed a First Amended Class Action Complaint, adding Plaintiffs Jade D'Amario, Joshua Dunn, and Sean Dunn as named plaintiffs. *Id.* ¶ 7. In response to the amended complaint, on October 15, 2020, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *Id.* ¶ 8. On November 13, 2020, Plaintiffs filed an opposition to the motion to dismiss. *Id.* On December 4, 2020, Defendant filed a reply in support of its motion to dismiss. *Id.*

On July 16, 2021, with the motion to dismiss still pending, Defendant filed a letter requesting leave to file supplemental briefing regarding Florida Statute § 768.39, which was signed into law on June 29, 2021. *Id.* ¶ 9. On July 19, 2021, the Court granted the Parties leave to file supplemental briefing regarding Florida Statute § 768.39. *Id.* ¶ 10. Defendant filed its supplemental brief on July 30, 2021. *Id.* Plaintiffs filed their response on August 10, 2021. *Id.* Defendant filed its reply on August 16, 2021. *Id.*

On October 20, 2021, the Court issued an Opinion & Order granting in part and denying in part the motion to dismiss and dismissing with prejudice Ms. Toni Fiore and Mr. Sean Dunn as named plaintiffs for lack of standing. *Id.* ¶ 11. On November 3, 2021, Plaintiffs filed the operative Second Amended Complaint. *Id.* ¶ 12. On November 17, 2021, Defendant filed an Answer to the Second Amended Complaint, denying the allegations generally and asserting twenty-six affirmative and other defenses. *Id.* ¶ 13. On January 5, 2022, the Court held an initial scheduling conference and issued a Civil Case Discovery Plan and Scheduling Order. *Id.* ¶ 14.

### C. History of Settlement Discussions

The Parties are mindful that, as with any litigation, there is significant risk to both sides. For this reason, from the outset of the case, the Parties have engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of early resolution. To that end, the Parties exchanged settlement materials and conducted various

settlement-related phone calls. Ultimately, after Defendant's motion to dismiss had been denied in part, the Parties agreed to participate in a private mediation with The Honorable Joseph P. Farina (Ret.) of JAMS Miami. Fraietta Decl. ¶ 16. In advance of this mediation, the Parties exchanged informal discovery, including the total out-of-pocket amount paid for tuition and fees for the Spring Semester 2020. *Id.* ¶ 17. The Parties also prepared lengthy, detailed mediation statements, and presented comprehensive legal and factual arguments in mediation airing their respective legal arguments and theories on potential damages. *Id.* Given that this information was the same or largely similar to discovery that would be produced in formal discovery related to class certification and summary judgment, the Parties were able to sufficiently assess the strengths and weaknesses of their cases. *Id.*

On March 31, 2022, the Parties participated in a full-day mediation before Judge Farina. *Id.* ¶ 18. The Parties executed a Term Sheet after approximately 9 hours of mediation. *Id.* On June 3, 2022, the Court granted preliminary approval of the Settlement. *Id.* ¶ 28 (citing ECF No. 65).

## II.     KEY TERMS OF THE SETTLEMENT

The key terms of the Class Action Settlement Agreement ("Settlement"), attached as Exhibit A to the Fraietta Declaration, are briefly summarized as follows:

### A.     Class Definition

The "Settlement Class" or "Settlement Class Members" is defined as:

> All students and former students who paid, or on whose behalf payment was made, tuition and fees for educational services to Defendant for the Spring 2020 Semester, and who remained enrolled as of March 1, 2020.[2]

---

[2] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, and attorneys; (3) persons who

5

Settlement ¶ 1.30.

## B.    Monetary Relief In The Form Of A Non-Reversionary Common Fund

Each Settlement Class Member will <u>automatically</u> receive a *pro rata* payment from the Settlement Fund.  The *pro rata* payment for each Settlement Class Member will be equal to that Settlement Class Member's Out-of-Pocket Percentage multiplied by the Available Settlement Fund.  The Notice gave Settlement Class Members the ability to opt via an Election Form to: (i) receive a Cash Award by Venmo or PayPal; (ii) apply their share of the Settlement Fund to future credits should the Settlement Class Member wish to re-enroll or continue enrollment at UT, provided however that credit issued as part of the settlement must be used no later than the start of the Fall 2023 semester (on August 28, 2023) and, if not used by this time, the credit will expire and no other refund or credit will be provided to such Settlement Class Member regardless of whether they actually use such credit; or (iii) direct their share of the Settlement Fund as a gift to The University of Tampa for deposit into a scholarship fund administered by The University of Tampa for the benefit of its students.  In the event a Settlement Class Member did not submit an Election Form, the Settlement Class Member will receive a Cash Award in the form of a check sent to the Settlement Class Member's last known address.  Settlement ¶ 2.1(b). Settlement Class Members will not be required to submit a claim form in order to receive their *pro rata* Cash Awards.

## C.    Release

In exchange for the relief described above, the obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.  Settlement ¶ 3.1.  Upon the Effective Date, the Releasing

---

properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors, or assigns of any such excluded persons.

Parties, and each of them shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them.  Settlement ¶ 3.2.

### D. Notice And Administration Expenses

The Settlement Fund will be used to pay the cost of Settlement Administration Expenses, which includes sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administering the Settlement.  Settlement ¶ 1.32.

### E. Incentive Award, Attorneys' Fees, Costs, And Expenses

In recognition for their efforts on behalf of the Settlement Class, UT has agreed that Plaintiff D'Amario and Plaintiff Dunn may each receive, subject to Court approval, an incentive award of $10,000 from the Settlement fund, as appropriate compensation for their time and effort serving as Class Representatives and as parties to the Action.  UT will not oppose any request limited to this amount.  Settlement ¶ 8.3.  UT has also agreed that Class Counsel may receive from the Settlement Fund, subject to Court approval, attorneys' fees, costs, and expenses not to exceed one-third of the Settlement Fund (or one million one hundred thirty-three thousand three hundred thirty-three dollars and thirty-three cents ($1,133,333.33)).  Settlement ¶ 8.1.  Class Counsel has agreed to petition the Court for no more than this amount.  *Id.*  These awards are subject to this Court's approval, which Plaintiff has moved for separately.  *See* ECF No. 66. That motion is unopposed.  Payment of attorneys' fees, costs, and expenses is due within 10 business days after entry of Final Judgment.  Settlement ¶ 8.2.

### <u>ARGUMENT</u>

## I. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court's Preliminary Approval Order provisionally certified a class for settlement purposes of: "[A]ll students and former students who paid, or on whose behalf payment was

made, tuition and fees for educational services to Defendant for the Spring 2020 Semester, and who remained enrolled as of March 1, 2020." Dkt. 65 ¶ 9 (the "Settlement Class").

Under Federal Rule of Civil Procedure 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that:

> Questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation ommitted).

The Court should now grant final certification because the Settlement Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3). *See Times v. Target Corp.*, 2019 WL 5616867, *1-2 (S.D.N.Y. 2019) (granting plaintiffs' motion for class certification because these requirements are met). Indeed, in granting preliminary approval this Court already determined that class certification for settlement purposes is warranted. *See* Dkt. 65 ¶ 9.

## A. Numerosity

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473,

483 (2d Cir. 1995). Here, the settlement class consists of approximately 9,085 current and former students, so the numerosity requirement is easily satisfied. Fraietta Decl. ¶ 21.

### B. Commonality

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This threshold is satisfied if the question is "capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[A] single [common] question will" satisfy the commonality inquiry. *Id.* at 359. "The claims for relief need not be identical for them to be common." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018). Rather, Rule 23(a)(2) is a "low hurdle," *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014), that may be satisfied by even a single question of law or fact common to the class, *Wal-Mart Stores*, 564 U.S. at 369.

Plaintiffs easily satisfy the "low hurdle" of demonstrating commonality. Plaintiffs believe this Action presents many questions common to the Settlement Class. Plaintiffs assert common questions that include: (a) whether UT breached its implied contract with students by refusing to issue partial refunds for the Spring 2020 Semester despite failing to provide in-person educational services; (b) whether UT provided the services for which the Settlement Class Members allegedly contracted; and (c) whether the Settlement Class Members are entitled to a refund for that portion of the services that was allegedly not delivered. These common questions, which target the same alleged misconduct by UT, satisfy Rule 23(a)(2).

### C. Typicality

The next requirement – typicality – requires that a class representative have claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(2). Typicality is met

here. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. Apr. 29, 2005); *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux*, 987 F.2d at 936-37. Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Here, Plaintiffs allege that UT breached its implied contract with students to provide an in-person educational experience by refusing to issue partial refunds for the Spring 2020 Semester. SAC ¶¶ 1-4. It is Plaintiffs' contention that their claims are typical of the other putative class members. Accordingly, by pursuing their own claims in this matter, Plaintiffs will necessarily advance the interests of the Settlement Class Members, and typicality is therefore satisfied. *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (holding that the typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories").

### D. Adequacy

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy

requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, 2007 WL 1580080, at *65 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

In this case, Plaintiffs – like each and every one of the Settlement Class Members – are students that paid tuition and fees to attend UT for the Spring 2020 Semester. SAC ¶¶ 37-39. Thus, Plaintiffs and the Settlement Class Members have the exact same interest in recovering the damages to which they are allegedly entitled. As such, Plaintiffs do not have any interests antagonistic to those of the proposed Settlement Class Members and their pursuit of this litigation is clear evidence of that.

Likewise, Class Counsel – Bursor & Fisher, P.A. – has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Fraietta Decl. ¶ 33. Class Counsel regularly engages in major complex class action litigation, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. *Id.*; *see also* Fraietta Decl. Ex. B (Firm Resume of Bursor & Fisher, P.A.); *Ebin*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million-dollar verdicts or recoveries in five class action jury trials since 2008.").

Accordingly, since Plaintiffs and Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.      The Proposed Settlement Class Is Ascertainable

Though it does not appear in the text of Rule 23, courts in this Circuit have recognized an "implied requirement of ascertainability." *Ebin*, 297 F.R.D. at 566-67. "The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definitive boundaries." *In re Petrobas Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). Here, the Settlement Class is defined as "all students and former students who paid, or on whose behalf payment was made, tuition and fees for educational services to Defendant for the Spring 2020 Semester, and who remained enrolled as of March 1, 2020." Dkt. 65, ¶ 9. Thus, the ascertainability requirement is met.

### F.      The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently. *Cf. Brown v. Title Ticor Ins. Co.*, 982

F.2d 386, 392 (9th Cir. 1992).  This approach protects class members' due process rights.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).

### 1.     Common Questions Predominate

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Wal-Mart Stores*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  The predominance requirement "is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

In this case, there allegedly was a common course of conduct engaged in by UT.  In these circumstances, courts find, particularly for purposes of settlement, that there is predominance of common questions over individual issues.  *See In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous cases).

### 2.     A Class Action Is A Superior Mechanism For Adjudication

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).[3]

---

[3] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620

Here, Plaintiffs and the Settlement Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by Settlement Class Members arising from the same allegations. Employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement class members' claims.

## II. THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. See Fed. R. Civ. P. 23(c)(2)(B). At its core, all that notice must do is "fairly apprise the

---

("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Petrobas Sec.*, 862 F.3d at 268 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001).

prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) ("*Visa U.S.A.*") (citation omitted).

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)). The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class. *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010). The notice plan here easily meets these standards, as it provided direct notice via a postcard or email to 99.7% of the Settlement Class. *See* Bahry Decl. ¶ 12.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process. *See* Dkt. 65, ¶ 12. The Plan has now been fully carried out by professional settlement administrator JND. Pursuant to the Settlement, Defendant provided JND with a list of 9,085 available names, addresses and emails of potential Settlement Class Members. *See* Bahry Decl. ¶ 6. JND did not identify any duplicate records, so the Class List contained 9,085 unique members. *See id.* ¶ 7. JND successfully delivered the Court-approved notice via email to 8,633 class members and via postcard to 422 class members. *See id.* ¶ 8-11. Accordingly, the Court-approved notice successfully reached 99.7% of the Settlement Class directly. *See id.* ¶ 12.[4] These summary notices also directed Settlement Class Members to the Settlement Website, where they were able to submit claims online; access

---

[4] On June 3, 2022, JND also notified the appropriate state and federal officials pursuant to CAFA. *See* Bahry Decl. ¶¶ 4, 5.

important court filings, including the Motion for Attorneys' Fees and all related documents; and see deadlines and answers to frequently asked questions. *See id.* ¶¶ 13-15.

Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are easily met.

## III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).[5]   To determine whether to approve a settlement, "[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits." *Tiro v. Public House Invs., LLC*, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013).   "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement.   *Frank*, 228 F.R.D. at 184.   "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Visa, U.S.A.*, 396 F.3d at 116 (internal quotations omitted).

Importantly, courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.   "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the compromise of class actions.   *Id.* at 117.   If the settlement was achieved through arms'-length negotiations by experienced counsel, "[a]bsent fraud or collusion … [courts] should be hesitant

---

[5] Effective December 1, 2018, Rule 23(e) was amended.   The 2018 amendment to Rule 23(e) provides factors for the Court to consider for approval of a proposed class action settlement.   *See* Fed. R. Civ. P. 23(e)(2).   The new 23(e)(2) factors overlap with the Second Circuit's *Grinnell* factors, as set forth and discussed below.

to substitute [their] judgment for that of the parties who negotiated the settlement. *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

## A.     The Proposed Settlement Is Procedurally Fair (Fed. R. Civ. P. 23(e)(2)(B))

The circumstances surrounding the Settlement support the finding that the Settlement is procedurally fair. Courts examining the procedural fairness of a settlement do so "in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009).

This Settlement was reached after a full-day mediation session with The Honorable Joseph P. Farina (Ret.), an experienced and renowned mediator to assist them in reaching the proposed Settlement. Following this mediation session, the Parties finalized the settlement through several weeks of additional negotiations and other extensive communications. Fraietta Decl. ¶ 19. And negotiations leading to the Settlement were conducted by highly qualified counsel who respectively sought to obtain the best possible result for their clients. Moreover, the Settlement was reached after a decision on Defendant's Motion to Dismiss and the exchange of relevant information, including the total amount potentially at issue. *See* Fraietta Decl. ¶¶ 4-14 (summary of litigation); *id.* ¶¶ 15-22 (summary of negotiations). In such situations, the Second Circuit adopts "a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ("Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context.").

## B. The Proposed Settlement Is Substantively Fair

In addition to being procedurally fair, the Settlement is also substantively fair, reasonable, and adequate. "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). The nine *Grinnell* factors include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.* at *4 (quoting *Grinnell*, 495 F.2d at 463). However, in reviewing and approving a settlement, "a court need not conclude that all of the *Grinnell* factors weigh in favor of a settlement," rather courts "should consider the totality of these factors in light of the particular circumstances." *Id.* Here, the *Grinnell* factors weigh in favor of final approval.

### 1. Litigation Through Trial Would Be Complex, Costly, And Long (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factor 1)

By reaching a favorable settlement prior to trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and

approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

This case is no exception. As discussed herein, the Parties have engaged in motion practice and informal discovery. Fraietta Decl. ¶ 17. The next steps in the litigation would have been resolution by the Court of Plaintiffs' forthcoming motion for class certification, and Defendant's forthcoming motion for summary judgment. At minimum, these efforts would be costly and time-consuming for the Parties and the Court, and creates risk that a litigation class would not be certified and/or that the Settlement Class Members would recover nothing at all. UT is represented by formidable defense counsel well-versed in tuition refund litigation, and UT has indicated that it would continue to assert numerous defenses on the merits. *See, e.g.*, Answer to Second Amended Complaint (ECF No. 47). Plaintiffs and Class Counsel are also aware that UT would oppose class certification vigorously, and that UT would prepare a competent defense at trial. Looking beyond trial, Plaintiffs are also keenly aware that UT could appeal the merits of any adverse decision, thereby further delaying any potential recovery for the Class.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty whereas litigation does not and could result in defeat for the Class on summary judgment, at trial or on appeal. Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 2. The Reaction Of The Class Is Overwhelmingly Positive (Fed. R. Civ. P. 23(e)(2)(C)(ii) And *Grinnell* Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495

F.2d at 463). "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted). This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (Dkt. 65, ¶¶ 12-14), and direct notice reached 99.7% of the Settlement Class. *See* Fraietta Decl. ¶ 29; Bahry Decl. ¶¶ 4-12. Zero objected to the Settlement, and only two opted out (a mere 0.0002% of the Settlement Class). *See* Bahry Decl. ¶¶ 19, 21, 23. This exceptional participation rate and lack of objections from the Settlement Class leave no question that the class members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness." *See*, e.g., *Hanlon* 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."). Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 3. Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

This factor goes to "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before

negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at \*5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).

Here, Class Counsel are sufficiently well informed of the strengths and weaknesses of the claims, having drafted three separate pleadings and survived, in part, a motion to dismiss. Class Counsel also spoke with potential merits and damages experts concerning the strengths and weaknesses of the case, as well as the strengths and weaknesses of UT's arguments and affirmative defenses. Fraietta Decl. ¶ 17. Moreover, the information exchanged during settlement negotiations permitted Class Counsel to learn the relevant facts and circumstances in an efficient and cost-effective manner. UT provided extensive financial information detailing tuition and fees assessed for the Spring 2020 semester. *Id.* The Parties also exchanged further information through mediation submission, as well as various written correspondence and phone calls. *Id.* ¶ 19. As a result, Class Counsel was well-positioned to evaluate the strengths of Plaintiffs' claims, UT's defenses, and prospects for success. This *Grinnell* factor thus also weighs in favor of final approval.

> ### 4. The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factors 4, 5, And 6)

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages, and maintaining the class action through trial. *In re Vitamin C*, 2012 WL 5289514, at \*5. "'Litigation inherently involves risks.'" *Willix v. Healthfirst, Inc.*, 2011 WL 7584862, at \*4 (E.D.N.Y. Feb. 18, 2011) (quoting *In re*

*PaineWebber*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)).  "One purpose of a settlement is to avoid the uncertainty of a trial on the merits."  *Id.*

Although Plaintiffs believe their case is strong, it is not without risk.  At the time of the settlement, UT was prepared to engage in further fact and expert discovery in anticipation of its forthcoming motion for summary judgment, and had made it clear that it would vigorously contest the certification of a litigation class.  *See* Fraietta Decl. ¶¶ 24-26.  In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).  Indeed, a number of courts have rejected similar cases by granting motions to dismiss or motions for summary judgment, or denying class certification.  *See* Fraietta Decl. ¶ 25 (citing cases).

In the context of this litigation, Plaintiffs and the putative Class face risks in overcoming UT's forthcoming summary judgment motion and certifying a class.  Moreover, further litigation will only delay relief to the Settlement Class Members.  The proposed Settlement alleviates these risks, and provides a substantial benefit to the Settlement Class Members in a timely fashion.

The risk of maintaining the class status through trial is also present.  The Court has not yet certified the proposed Class and such a determination would be reached only after exhaustive class certification briefing is filed.  UT would argue that individual questions preclude class certification.  UT would also argue that a class action is not a superior method to resolve Plaintiffs' claims, and that a class trial would not be manageable.

Were the Court to certify a class, UT would likely challenge certification through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing.  Risk, expense, and delay permeate such a process.  The proposed settlement eliminates this risk, expense, and delay.  These *Grinnell* factors thus favor final approval.

### 5. Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

UT probably could withstand a greater judgment. However, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178, n.9). Thus, at worst, this factor is neutral.

### 6. The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (Fed. R. Civ. P. 23(e)(2)(C)(i) And *Grinnell* Factors 8 And 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (W.D.N.Y. 2005). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Here, the total settlement value is $3.4 million, and Class Counsel projects that each Settlement Class Member is expected to receive several hundred dollars in cash (or credit to be applied towards their education at University of Tampa, should they elect to do so). In addition, Defendant has agreed to pay the costs of service payments to Plaintiffs, notice and administration costs, as well as reasonable attorneys' fees, plus costs and expenses for proposed Class Counsel

from the all-in fund established by the Settlement.  Settlement ¶ 1.32.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable.  Moreover, where – as here – a settlement assures immediate payment of substantial amounts to Settlement Class Members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" the settlement is reasonable under this factor.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, *5 (S.D.N.Y. May 14, 2004)).  Thus, these *Grinnell* factors also weigh in favor of final approval.

* * *

In sum, all of the *Grinnell* factors weigh in favor of approval, or are neutral at worst.  The Settlement on its face is "'fair, adequate, and reasonable, and not a product of collusion.'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)).  Thus, the Court should grant final approval.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of the Settlement and enter the Final Approval Order in the form submitted herewith.

Dated: October 4, 2022                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:____*/s/ Philip L. Fraietta*_____
                Philip L. Fraietta

Philip L. Fraietta
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019

Telephone: (646) 837-7410
Facsimile: (212) 989-9163
E-Mail:  pfraietta@bursor.com
        aleslie@bursor.com

*Class Counsel*